IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DEATLEY CONSTRUCTION CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1052C |
| | ) | (Chief Judge Edward J. Damich ) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR LEAVE TO AMEND ITS ANSWER
TO ASSERT AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Pursuant to Rules 1(a), 7(b), 8(c), 13(e) and (f), and 15(a) and (d) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully requests leave of the Court to amend its answer in this case to assert affirmative defenses and counterclaims based upon the False Claims Act, 31. U.S. C. § 3729 et seq., the antifraud provision of the Contract Disputes Act ("CDA"), 41 U.S.C. § 604, and the Special Pleas in Fraud, pursuant to 28 U.S.C. § 2514. This is the Government's first request for leave to amend its answer. Our proposed amended pleading is attached to this motion.

Nature Of The Case

The case arises out of a contract to improve part of the Flowery Trail Road in the state of Washington. The gravamen of DeAtley's complaint is that the rock crushed for aggregate from the Government-provided source was not suitable for its intended purpose.

II. Statement Of The Facts

On February 9, 2001, the Federal Highway Administration awarded a contract to DeAtley. The contract provided that rock at a specified location was suitable for the production of aggregate needed for the roadbed. DeAtley Crushing, DeAtley's subcontractor crushed

aggregate for the project using rock from the Government-provided source between November 2, 2001, and November 13, 2001. The aggregate was placed in a section of the roadbed in August 2002. The placed aggregate failed to meet the contract gradation specifications and was, therefore, rejected. The Government required that DeAtley remove the aggregate and replace it with aggregate that met the contract specifications. DeAtley Crushing, using rock from another source, crushed replacement aggregate in September 2002. That aggregate was placed in the roadbed, passed the gradation tests, and the project was completed.

On September 18, 2003, DeAtley submitted a certified claim to the contracting officer requesting $164,223.55 for DeAtley and $113,610.00 for DeAtley Crushing for damages due to the costs incurred to remove and replace the rejected aggregate. DeAtley's claim was denied on December 11, 2003.

The amount claimed by DeAtley is overstated in the following respects:

I. DeAtley included amounts for both the initial production and placement of the rejected aggregate and for the production and placement of the replacement aggregate.

A. DeAtley included costs in its certified claim that were incurred during the initial crushing of the aggregate, that is, costs incurred between November 2, 2001, and November 13, 2001. Such costs include costs for both equipment and labor totaling $23,767.34. The same types of costs are claimed for September 2002 in connection with the crushing of the aggregate to replace the rejected aggregate.

The inclusion of costs for work that was not additional work that DeAtley was required to perform as the result of the alleged differing site condition is fraudulent. In effect, DeAtley is claiming costs for work that the Government paid for under the contract. To claim such costs

was clearly done either intentionally or with reckless disregard since even a cursory review of DeAtley's spreadsheets, categorizing the claimed costs by activity and amount, demonstrates that DeAtley is seeking the costs incurred during the twelve days in November during which the rejected aggregate was crushed, as well as for about the same number of days in September during which the replacement aggregate was crushed.

B. DeAtley included in its certified claim labor and equipment costs for placing aggregate on sections of the roadbed on which none of the rejected aggregate had been placed. It is clear that the work involved in removing the rejected aggregate from the roadbed upon which it had been placed, and the placing of the replacement aggregate on that same section of the roadbed, constitutes "additional work" for which DeAtley would be entitled to compensation if DeAtley prevails in this lawsuit. It is, however, equally clear that the placement of aggregate on those sections of the roadbed upon which the rejected aggregate had never been placed does not constitute "additional work." That work had nothing to do with the placement and removal of the rejected aggregate from certain portions of the roadbed. Moreover, that work was paid for under the contract. because that work was paid for under the contract. The only extra work performed by DeAtley was the removal of the rejected aggregate from that portion of the roadbed on which it had been placed and the placing of the replacement aggregate on that same section. The equipment and labor costs improperly included by DeAtley amount to $21,264.35.

II. DeAtley included testing costs that were already paid for by the Government under the contract and testing costs incurred solely to establish its claim.

A. DeAtley used Budginger and Associates to perform the gradation testing of the aggregate to determine whether it met the gradation specifications. Such testing was required to

be performed under the contract and was paid for under the contract. The gradation testing is done when the aggregate is placed on the roadbed. If the aggregate passes the gradation tests, the Government then pays for the costs incurred by DeAtley, and DeAtley Crushing, for the crushing, placement, and testing of the aggregate.

According to the spreadsheet that documented the costs claimed by DeAtley in its certified claim, DeAtley included costs for Budginger performing the gradation test on both the rejected aggregate and on the replacement aggregate. The additional work that DeAtley was required to perform was the testing of the aggregate the second time, that is, the testing of the replacement aggregate. The initial tests were required to be performed under the contract and were paid for by the Government under the contract. To include costs that DeAtley knows were not costs for extra work and that were already paid for by the Government, constitutes fraud or, at a minimum, reckless disregard for the truthfulness of the claim. The initial testing costs amount to $3,247.15.

B. After the aggregate was rejected, DeAtley went back to the roadbed cut from which the rock used to produce the rejected aggregate was taken. DeAtley hired Budginger and Associates to take rock samples from the cut and to perform a durability test on those samples. Such test were not required to be performed under the contract. Such testing was performed by DeAtley in an attempt to support its differing site condition claim. The durability test results were cited by DeAtley in its claim, and at our settlement meeting, as evidence that the Government designated source for the production of aggregate was unsuitable and therefore constitutes a differing site condition. According to the spreadsheet that documented the costs claimed by DeAtley in its certified claim, DeAtley included costs for Budginger performing the

durability tests. The inclusion of the $4,129.75 for such testing was fraudulent or, at a minimum, demonstrates DeAtley's reckless disregard for the truthfulness of its the claim.

In summary, DeAtley's certified claim for $277,843.55 was overstated by $63,164.98.

On March 22, 2005, a settlement meeting was held in Spokane, Washington. In attendance were representatives from DeAtley and DeAtley Crushing and their attorneys. During that meeting, DeAtley was informed that we considered that its claim contained false statements with respect to certain items because those costs were not incurred as the result of the alleged differing site condition. DeAtley has not revised the amount of its claim.

## ARGUMENT

### I. By Certifying A Claim For Costs That Were Not Incurred As The Result Of The Alleged Acts Of The Government, DeAtley Violated The Antifraud Provision Of The CDA, The Special Plea In Fraud Statute And The False Claims Act.

The facts described above support counterclaims based upon the antifraud provision of the CDA, the special plea in fraud statute, 28 U.S.C. § 2514, and the False Claims Act, 31 U.S.C. § 3729 et seq. This Court possesses jurisdiction pursuant to 28 U.S.C. §§ 1503 and 2508 to adjudicate counterclaims raised by the United States, including those arising pursuant to the False Claims Act and for fraud. Brown v. United States, 524 F.2d 693, 703 (Ct. Cl. 1975). Such counterclaims need not be the subject of a contracting officer's final decision to serve as a basis for a Government claim. Martin J. Simko Constr., Inc. v. United States, 852 F.2d 540, 543-45 (Fed. Cir. 1988).

A. The Antifraud Provision Of The CDA Applies To DeAtley's Claim

The antifraud section of the Contract Disputes Act, 41 U.S.C. § 604, provides, in pertinent part:

> If a contractor is unable to support any part of his claim and it is determined that such inability is attributable to misrepresentation of fact or fraud on the part of the contractor, he shall be liable to the Government for an amount equal to such unsupported part of the claim in addition to all costs to the Government attributable to the cost of reviewing said part of his claim.

Pursuant to the antifraud section of the CDA, the Government is entitled to recover the total amount of a fraudulent claim submitted to the Government regardless of whether payment of the claim was made, in addition to the costs incurred in investigating the false claim.[1] Although the CDA does not prescribe a standard of proof, the preponderance of the evidence standard has been applied by this Court. See e.g. UMC Electronics v. United States, 43 Fed. Cl. 776, 795 (1999)(citing Grogan v. Garner, 498 U.S. 279, 287-91 (1991) (establishing the preponderance standard in bankruptcy fraud cases)); Al Munford v. United States, 34 Fed. Cl. 62, 67 (1995). Here, DeAtley submitted a certified claim to the Government alleging entitlement to $63,164.98 in costs that were not incurred in connection with the allegedly extra work performed by DeAtley in connection with the Government's rejection of the aggregate placed upon a section of the roadbed in August 2002. Accordingly, pursuant to the CDA, the United States is entitled to recover $63,164.98, plus the Government cost of reviewing the claim.

---

[1] The CDA antifraud section remedy was enacted to complement False Claims Act recovery to provide for affirmative recovery of amounts claimed in addition to the False Claims Act civil penalty in situations where no Government payment was made. See S. Rep. No. 1118, 95th Cong., 2d Sess. 20 (1978), reprinted in, 1978 U.S.C.C.A.N. 5235, 5254.

B. The Special Plea In Fraud Statute Applies To DeAtley's Claim

Section 2514, title 28, United States Code, provides:

> A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.
>
> In such cases the United States Court of Federal Claims shall specifically find such fraud or attempt and render judgment of forfeiture.

The Federal Circuit has held that, to prevail pursuant to this statute, the Government must prove by clear and convincing evidence that the "claimant (1) knew the claim was false and (2) intended to deceive the government by submitting it." Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1042 (Fed. Cir. 1994) (citing McCarthy v. United States, 670 F.2d 996, 1004, 229 Ct. Cl. 361 (1982)). Fraud pursuant to 28 U.S.C. § 2514 consists of "knowingly or recklessly making false statements with intent to deceive." Daff v. United States, 31 Fed. Cl. 682, 688 (1994), aff'd, 78 F.3d 1566 (1996) (citing Ingalls Shipbuilding, Inc. v. United States, 21 Cl. Ct. 117, 122 (1990)).

Here, DeAtley submitted a certified claim to the Government alleging entitlement to $63,164.98 in costs that were not incurred in connection with the allegedly extra work performed by DeAtley in connection with the Government's rejection of the aggregate placed upon a section of the roadbed in August 2002.

Mistaken false statements do not warrant relief pursuant to the statute. Where a claimant, such as DeAtley here, however, persists in pursuing a claim it knows to be false, the defense of mistake is unfounded and the claimant's intent to deceive is established. See

Al Munford, Inc. v. United States, 34 Fed. Cl. 62, 67 (1995), vacated on other grounds, 86 F.3d 1178 (Fed. Cir. 1996) (rejecting summary judgment because "plaintiff's subsequent admissions that it made a mistake and that the amounts contained in its claim were no longer valid provided some minimal evidence . . . that plaintiff did not actually intend to deceive the government"). DeAtley continues to pursue its claim even though it was advised eight months ago that its claim included costs that were in no way related to the allegations in its complaint. From such conduct, it can be inferred that DeAtley knowingly made or recklessly made false statement with the intent to deceive.

Although the $63,164.98 is only part of DeAtley's claim, its entire claim is subject to forfeiture pursuant to the special plea in fraud statute, 28 U.S.C. § 2514. As this Court held in Supermex, Inc. v. United States, 35 Fed. Cl. 29, 40 (1996):

> There is no suggestion in the statute that a contract can be divided up into performance sectors to allow payment of some claims on a corrupted contract while other claims on the same contract are forfeited.

The rule is set forth fully in Brown Construction Trades, Inc. v. United States, 23 Cl. Ct. 214, 216 (1991):

> The Court of Claims has ruled that where fraud is committed in the course of a contract to which the suit pertains, it may not isolate the affected part and allow suit to proceed on the remainder. The practice of a fraud on part of a contract condemns the whole. The rule is set out in Little v. United States, 138 Ct. Cl. 773, 778, 152 F. Supp. 84, 87-88 (1957):
>
> It is true that the forfeiture statute [28 U.S.C. § 2514] was not intended to forfeit an otherwise valid claim of a claimant merely because, in some other unrelated transaction, he had defrauded the Government. But where, as in the present case, fraud was committed in regard to the very contract upon which the suit is

> brought, this court does not have the right to divide the contract and allow recovery on part of it. Since plaintiff's claims are based entirely upon contract V3020V-241, a contract under which he practiced fraud against the Government, all of his claims under that contract will be forfeited pursuant to 28 U.S.C. § 2514.
>
> Thus, 28 U.S.C. § 2514 requires the forfeiture of all claims arising under a contract tainted by fraud against the Government. See also New York Mkt. Gardeners' Ass'n v. United States, 43 Ct. Cl. 114, 136 (1908).

Quoted in Supermex, 35 Fed. Cl. at 40. See Ab-Tech Construction, Inc. v. United States, 31 Fed. Cl. 429, 435-36 (1994), aff'd, 57 F.3d 1084 (Fed. Cir. 1995).

Here, DeAtley submitted a claim in the amount of $63,164.98 for costs that are clearly not associated with its contention that the rock crushed for aggregate from the Government-provided source was not suitable for its intended purpose. Moreover, the improper inclusion of such costs was readily apparent from merely looking at the dates on which such costs were incurred, and virtually all of the claimed costs had already been paid by the Government. Accordingly, forfeiture of DeAtley's entire claim is clearly warranted.

C. DeAtley's Conduct Constitutes A False Claim

The False Claims Act, as amended in 1999, provides for civil penalties of $5,500 to $11,000 for each false claim submitted to the Government, regardless of whether payment was made. The False Claims Act, 31 U.S.C. § 3729(a), requires that the Government prove that the claimant defendant knowingly presented a false or fraudulent claim for approval; or that the claimant knowingly makes or uses a false record or statement to get a false or fraudulent claim paid or approved. 31 U.S.C. § 3729 et seq., as amended by Debt Collection and Improvement Act of 1996, Pub. L. 104-134, Title 3, Ch. 10, Section 31001(s), April 26, 1996, 110 Stat. 1321-

358, (effective September 29, 1999 for violations occurring after that date).

Pursuant to the False Claims Act, the filing of a false claim must have been "knowing." For purposes of the Act, "knowing" or "knowingly" means that a person (1) has actual knowledge of the information, (2) acts in deliberate ignorance of the truth or falsity of the information, or (3) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). The statute expressly provides that the Government need not prove specific intent to defraud.

While it is clear that DeAtley's false claims were made "knowingly," at a minimum DeAtley deliberately ignored the truth or it recklessly disregarded the truth.

D. Recovery Based Upon All Three Statutes Is Cumulative

The legislative history of the CDA makes clear that the Government's remedies pursuant to the Special Plea in Fraud, the False Claims Act, and the antifraud provision of the CDA are cumulative and not in the alternative. Specifically, the Senate report explaining the antifraud provision states:

> This provision is intended to be separate and distinct from the rights now possessed by the Government in legislation such as the False Claims Act . . . or the Forfeiture Statute . . . . That is, section 4(b) [the antifraud provision, codified at 41 U.S.C. § 604] is not intended in any way to diminish the rights now afforded to the Government under current legislation. . . . Section 4(b) will afford the Government a separate and additional remedy of recovering an amount equal to the fraudulent or misrepresented amount.

S. Rep. No. 95-1118, 95th Cong., 2d Sess. 20 (1978), reprinted in 1978 U.S.C.C.A.N. 5235 (emphasis added).

## II. The Government Should Be Permitted To Amend Its Answer To Assert Affirmative Defenses And Counterclaims Pursuant To The Antifraud Provision Of The CDA, The False Claims Act, And The Special Pleas In Fraud Statute,

In order to assert affirmative defenses and a counterclaim pursuant to the antifraud provision of the CDA, the special plea in fraud statute, and the False Claims Act, the Government must amend its answer. RCFC 13(e) and (f). An amendment is permitted pursuant to RCFC 15(a), which provides that a party may amend its own pleading more than 20 days after it was served only by leave of the court or by written consent of the adverse party and that "leave shall be freely given when justice so requires." RCFC 15(a); accord First Nationwide Bank v. United States, 48 Fed. Cl. 248, 254 (2000). The determination of whether to grant a motion for leave to amend a pleading is within the discretion of the Court, but outright refusal to grant leave without any reason to justify the denial is not an exercise of discretion. Foman v. Davis, 371 U.S. 178, 182 (1962). Applying this test, this Court should "deny a motion to amend . . . only for substantial and legally sufficient reasons." St. Paul Fire & Marine Ins. Co. v United States, 24 Cl. Ct. 518, 520 (1991).

Following the March 2005 settlement meeting, the Government fully expected that DeAtley would amend its complaint to accurately reflect the costs it incurred as the result of the alleged acts of the Government as set forth in its claim. This DeAtley has failed to do. Accordingly, pursuant to the facts of this case, the Government should be permitted to amend its answer to assert counterclaims pursuant to the Antifraud Provision of the CDA, the False Claims Act, and the Special Pleas In Fraud Statute.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant our motion for leave to amend its answer in this case to assert an affirmative defense and counterclaims based upon the Antifraud Provision of the CDA, the False Claims Act, and the Special Pleas In Fraud Statute.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street, NW
Washington, D.C. 20530
(202) 307-0252
(202) 307-0972 (Fax)

December 22, 2005

Attorneys for Defendant