EXHIBIT 10

Exhibit 12
Date: 8/24/05
Rider & Associates
800-869-0864

# DeAtley Crushing Company

4307 Snake River Avenue • P.O. Box 759 • Lewiston, Idaho 83501 • 208-743-6550 • Fax 208-743-6474

RECEIVED
FEB 28 2003

February 26, 2003

M. A. DeAtley Construction Company
Attn: Mr. Craig T. Owens
P O Box 490
Clarkston, Wa. 99403

**RE: Flowery Trail / Project #DTFH70-01-C-00011**
**Agg Base "D" / WFLHD Source**

Dear Craig:

After our joint meeting with WFLHD on in Chewelah on the 14th, we would offer some follow up comments. We'd like to thank M.A. DeAtley Construction for setting up the meeting and allowing both M.A. DeAtley Construction and DeAtley Crushing Company the opportunity to show WFLHD the evidence regarding the source face to face. Sadly, we are not surprised at the outcome of this meeting. It has become apparent that the WFLHD staff operates under the guise that they can use as they see fit, or ignore when it's to their benefit, the contract guidelines and clear Special Contract Requirements, as well as the Federal Highway Administration Field Materials Manual. Mr. Coe flatly refused to answer direct questions put to him on numerous occasions. As was stated previously by DeAtley Crushing Company, we do not believe that WFLHD will acknowledge the truth or treat the contractor fairly unless forced to do so through a claim by M.A. DeAtley Construction.

We would like to recap the meeting points that we see as all important. All parties are in agreement that the stockpiled materials have broken down since being produced and stockpiled. Quite simply, the gradation has changed throughout the sieve ranges. This is evidenced by the comparison of the gradation verification tests done during or shortly after production, and the battery of tests performed on the same materials a year later. While Brent Coe did not appear to want to hear the proof, he admitted himself at the meeting that the aggregates in pile had broken down. This was heard by all in attendance. WFLHD was provided with the reasons why testing finished products by use of the Sulfate Soundness test method as a way to determine if the source meets contract requirements is not reliable or proper procedure, not the least important of which would be the fact

that the Special Contract Requirements clearly identify that the material is to be taken from the source and NOT from stockpiles of finished product. A representative from Buddinger and Associates, an independent laboratory, provided a clear analogy of the differences between "source testing" and testing of finished products.

After the discussion about what materials were to be used, and where the materials should be retrieved from, to ensure proper source testing, WFLHD then changed its position somewhat. At that point, Linda and Brent stated that WFLHD was "hanging its hat on the test results from the two test borings of the source". These test results apparently sufficiently indicated to WFLHD that the materials did meet, and would continue to meet, all contract source compliance requirements. After WFLHD said they were hanging their hat on the previous boring results, Brent was asked directly if WFLHD is absolutely responsible for making sure that the source met all contract requirements all the way through production of aggregates. Mr. Coe then correctly replied that "yes, WFLHD is responsible for the entire source". One fact has not changed since this debate started. The Source failed the Sodium Sulfate Soundness test.

We would like to offer M.A. DeAtley the following information derived from and quoted exactly as stated in the Federal Highway Administration Field Materials Manual.

*"1.0 POLICY STATEMENT*

***…….The sampling and testing methods contained in this manual will be used for all projects awarded under the Standard Specifications for Construction of Roads and Bridges on Federal Highway Projects, (FP-85 and later editions), unless otherwise specified in the Special Contract Requirements."***

*"4.0 MATERIAL SOURCES*

***…….When the material source is shown on the plans or described in the special contract requirements, the Government assumes responsibility that, with reasonable performance, the Contractor will be able to obtain sufficient acceptable material…..***

***…….The Government assumes the responsibilities for such characteristics as soundness, abrasion, stripping resistance of the aggregate and the quantity of the source…..***

***…….During crushing operations the Project Engineer should submit samples of aggregate to confirm the quality of the material and to make certain that the material still meets the requirements for soundness, abrasion, stripping, etc…..***

***…….If a designated source does not contain a sufficient quantity of quality material, the Government is responsible for providing another source…..***

*.......The Contractor will be compensated for increased costs incurred in producing material from a new source upon failure of the designated source. This additional compensation may include the cost of equipment moves and setups, additional haul, and additional costs, if any, producing the material......*

As you know, WFLHD's engineers did not retrieve and test any source materials during crushing operations as is required to ensure that the source provides quality material throughout. What is more alarming is the fact that WFLHD didn't follow through with its own self imposed obligation to ensure availability of quality source material even after it was reported to them that the source had failed a source compliance test. The situation degrades from alarming to unbelievable when a person understands that after being notified that the source failed, and then being requested, in writing, to jointly sample the source on numerous occasions, WFLHD has refused to do just that for over six months.

It is clear that WFLHD is not operating within its own rules, guidelines, or contract requirements. We see no reason to believe that WFLHD will willingly change its course in this instance; therefore we believe the only way that the contractors will be fairly compensated will be through the filing of a claim by M.A. DeAtley.

You can reach me at our Lewiston office should you have any questions.

Sincerely,
DeAtley Crushing Company

Greg Graybill
Administrator