IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M. A. DEATLEY CONSTRUCTION CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1052C |
| | ) | (Chief Judge Edward J. Damich ) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS

For its answer to the complaint, defendant admits, denies and alleges as follows:

1. The allegations contained in paragraph 1 are admitted.

2. The allegations contained in paragraph 2 are admitted.

3. The allegations contained in paragraph 3 are admitted.

4. The allegations contained in paragraph 4 are admitted to the extent supported by the contract cited, which is the best evidence of its terms.

5. The allegations contained in paragraph 5 are denied for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

6. The allegations contained in the first sentence of paragraph 6 are admitted except to deny that plaintiff was using a "WFLHD provided source," as that term is used in the contract. The allegations contained in the second sentence of paragraph 6 are denied except to admit that the WFLHD performed testing on the Aggregate D base. The allegations contained in the third sentence of paragraph 6 are deneid except to the extent supported by the contract, which is the best evidence of its contents.

7. The allegations in paragraph 7 are denied.

8. The allegations contained in the first sentence of paragraph 8 are admitted except to deny

that the materials were placed on a "temporary roadway." The allegations contained in the second sentence of paragraph 8 are denied.

9. The allegations contained in the first and third sentences of paragraph 9 are denied. The allegations contained in the second sentence of paragraph 9 are denied for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

10. The allegations contained in the first sentence of paragraph 10 are denied for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. The allegations contained in the second, third, and fourth sentences of paragraph 10 are denied.

11. The allegations contained in paragraph 11 are denied.

12. The allegations contained in the first sentence of paragraph 12 are denied for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. The allegations contained in the second and third sentences of paragraph 12 are denied except to admit that DeAtley notified the Government of certain test results.

13. The allegation that representatives from DeAtley, DeAtley Crushing, and Budinger met with representatives from WFLHD on February 14, 2003 to discuss the Grading D material is admitted; the remaining allegations in paragraph 13 are denied.

14. The allegations in paragraph 14 are admitted except to state that DeAtley's claim was filed on September 23, 2003, not on September 18, 2003.

15. The allegations in paragraph 15 are admitted.

16. The allegation in paragraph 16 are admitted except to state that the project number, not the claim number, is "WA PFH 158-1(2)."

17. The allegations contained in paragraph 17 are conclusions of law to which no response is

required; to the extent that they may be deemed allegations of fact, they are denied.

18. Defendant incorporates by reference its responses contained in paragraphs 1 through 17 of its answer as though fully set forth here.

19. The allegations contained in paragraph 19 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

20. The allegations in paragraph 20 are denied.

21. The allegations in paragraph 21 are denied.

22. The allegations in paragraph 22 are denied.

23. The allegations in paragraph 23 are denied.

24. Defendant incorporates by reference its responses contained in paragraphs 1 through 23 of its answer as though fully set forth here.

25. To the extent that plaintiff implies that all of the specifications were design specifications, the allegations in paragraph 25 are denied; while there were some design specifications, most of the specifications were performance specifications.

26. The allegations contained in paragraph 26 are conclusions of law to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

27. The allegations in paragraph 27 are denied.

28. The allegations in paragraph 28 are denied.

29. Defendant incorporates by reference its responses contained in paragraphs 1 through 28 of its answer as though fully set forth here.

30. The allegations in paragraph 30 are denied.

31. The allegations in paragraph 31 are denied.

32. The allegations in paragraph 32 are denied.

33. The allegations in paragraph 33 are denied.

34. Defendant incorporates by reference its responses contained in paragraphs 1 through 33 of its answer as though fully set forth here.

35. The allegations in paragraph 35 are denied.

36. The allegations in paragraph 36 are denied.

37. The allegations in paragraph 37 are denied.

38. The allegations in paragraph 38 are denied.

39. Defendant incorporates by reference its responses contained in paragraphs 1 through 38 of its answer as though fully set forth here.

40. The allegations in paragraph 40 are denied.

41. The allegations in paragraph 41 are denied.

42. Defendant incorporates by reference its responses contained in paragraphs 1 through 41 of its answer as though fully set forth here.

43. The allegations in paragraph 43 are denied.

44. The allegations in paragraph 44 are denied.

45. The allegations in paragraph 45 are denied.

46. The allegations in paragraph 46 are denied.

47. The allegations in paragraph 47 are denied.

48. The allegations in paragraph 48 are denied.

49. The allegations in paragraph 49 are denied.

50. The allegations in paragraph 50 are denied.

51. The allegations in paragraph 51 are denied.

Defendant denies each and every allegation not previously admitted or denied.

Defendant denies the plaintiff is entitled to the relief set forth in the prayer for relief immediately following paragraph 51, or to any relief whatsoever.

AFFIRMATIVE DEFENSES

52. Plaintiff's claim is barred by illegality as a result of submitting a false claim.

SPECIAL DEFENSE BY WAY OF COUNTERCLAIM

53. This counterclaim arises pursuant to the forfeiture statute, 28 U.S.C. § 2514, the antifraud provision of the Contract Disputes Act, 41 U.S.C. § 604, and the False Claims Act, 31 U.S.C. §§ 3729-3733. The Court possesses jurisdiction pursuant to 28 U.S.C. §§ 1503 and 2508.

54. Defendant and counterclaim plaintiff is the United States.

55. Plaintiff and counterclaim defendant is M. A. DeAtley Construction Co. ("DeAtley").

Factual Background

56. On February 9, 2001, the Federal Highway Administration awarded a contract to M. A. DeAtley Construction, Inc., to construct and re-pave a portion of the Flowery Trail in Washington state. The contract provided that rock at a specified location was suitable for the production of aggregate needed for the roadbed.

57. DeAtley hired DeAtley Crushing to crush the aggregate for the project using rock from the Government-provided source.

58. The aggregate was crushed by DeAtley Crushing and stockpiled by DeAtley and DeAtley Crushing in November 2001. In August 2002, DeAtley placed the aggregate from the stockpiles on the roadbed.

59. The aggregate placed in the roadbed failed to meet the contract gradation specifications and was, therefore, rejected. The Government required that DeAtley remove the aggregate and replace it with aggregate that met the contract specifications.

60. In September 2002, DeAtley crushed aggregate from a different source. That aggregate, when placed upon the roadbed, met the contract specifications, and the project was completed. The Governments paid DeAtley the full amount of the contract price.

61. On September 18, 2003, DeAtley submitted a certified claim to the contracting officer requesting $164,223.55 for DeAtley and $113,610.00 for DeAtley Crushing for damages due to the costs incurred to remove and replace the rejected aggregate.

62. DeAtley's claim was denied on December 11, 2003.

63. The amount claimed by DeAtley is overstated to the extent that DeAtley included amounts for both the initial production and placement of the rejected aggregate totaling $23,767.34, and for the production and placement of the replacement aggregate.

a. DeAtley included costs in its certified claim that were incurred during the initial crushing of the aggregate that was rejected, that is, costs incurred between November 2, 2001, and November 13, 2001.

b. Such costs include costs for both equipment and labor totaling $23,767.34.

c. DeAtley also included costs in its certified claim that were incurred during the crushing of the replacement aggregate, that is, costs incurred from approximately September 1, 2002, and September 15, 2002. Such costs include costs for both equipment and labor.

d. Those costs incurred in September 2002 constitute added costs to which DeAtley

would be entitled if DeAtley prevails upon its differing site condition claim. The inclusion of costs for work that was not additional work, however, that is, for work that DeAtley was required to perform under the contract, that is, the work performed in November 2001, is fraudulent.

e. In effect, DeAtley is claiming costs for work that the government paid for under the contract. To claim such costs was clearly done either intentionally or with reckless disregard since even a cursory review of DeAtley's spreadsheets categorizing the claimed costs by activity and amount, demonstrates that DeAtley is seeking the costs incurred during the twelve days in November during which the rejected aggregate was crushed, as well as for about the same number of days in September during which the replacement aggregate was crushed.

64. The amount claimed by DeAtley is overstated to the extent that DeAtley included in its certified claim labor and equipment costs for placing aggregate on sections of the roadbed on which none of the rejected aggregate had been placed.

a. The work involved in removing the rejected aggregate from that section of the roadbed upon which it had been placed, and the placing of the replacement aggregate on that same section of the roadbed, constitutes "additional work" for which DeAtley would be entitled to compensation if DeAtley prevails on its differing site condition claim.

b. The placement of aggregate on those sections of the roadbed upon which the rejected aggregate had never been placed does not constitute "additional work." That work had nothing to do with the placement and removal of the rejected aggregate from certain portions of the roadbed.

c. The only extra work performed by DeAtley was the removal of the rejected

aggregate from that portion of the roadbed upon which it had been placed and the placing of the replacement aggregate on that same section.

d. The equipment and labor costs fraudulently included by DeAtley for placing the replacement aggregate on portions of the roadbed upon which the rejected aggregate had not been placed amount to $32,020.74.

e. In effect, DeAtley is claiming costs for work that the government paid for under the contract. To claim such costs was clearly done either intentionally or with reckless disregard since even a cursory review of DeAtley's spreadsheets categorizing the claimed costs by activity and amount, demonstrates that DeAtley is seeking the costs incurred to place aggregate on portions of the roadbed upon which the rejected aggregate had never been placed.

65. DeAtley included testing costs that were already paid for by the Government under the contract.

a. DeAtley used Budginger and Associates to perform the gradation testing of the aggregate to determine whether it met the gradation specifications.

b. Such testing was required to be performed under the contract and was paid for under the contract.

c. The gradation testing is done when the aggregate is placed on the roadbed.

d. If the aggregate passes the gradation tests, the government then pays for the costs incurred by DeAtley, and DeAtley Crushing, for the crushing, placement, and testing of the aggregate.

e. According to the spreadsheet that documented the costs claimed by DeAtley in its certified claim, DeAtley included costs for Budginger performing the gradation test on both

the rejected aggregate and on the replacement aggregate. The additional work that DeAtley was required to perform was the testing of the aggregate the second time, that is, the testing of the replacement aggregate. The initial test were required to be performed under the contract and were paid for by the the government under the contract. To include costs that DeAtley knows were not costs for extra work and that were already paid for by the government, constitutes fraud or, at a minimum, reckless disregard for the truthfulness of the claim. The initial testing costs amount to $3,247.15.

66. DeAtley included testing costs that were incurred solely to establish its claim.

a. After the aggregate was rejected, DeAtley went back to the roadbed cut from which the rock used to produce the rejected aggregate was taken.

b. DeAtley hired Budginger and Associates to take rock samples from the cut and to perform a durability test on those samples.

c. Such test were not required to be performed under the contract; such testing was performed by DeAtley in an attempt to support its differing site condition claim. The durability test results were cited by DeAtley in its claim, and at our settlement meeting, as evidence that the government designated source for the production of aggregate was unsuitable and therefore constitutes a differing site condition.

d. According to the spreadsheet that documented the costs claimed by DeAtley in its certified claim, DeAtley included costs for Budginger performing the durability tests. The inclusion of the $4,129.75 for such testing was fraudulent or, at a minimum, demonstrates DeAtley's reckless disregard for the truthfulness of its the claim.

67. On March 22, 2005, a settlement meeting was held in Spokane, Washington.

a. In attendance were representatives from DeAtley and DeAtley Crushing and their attorneys.

b. During that meeting, DeAtley was informed that we considered that its claim contained false statements with respect to certain items because those costs were not incurred as the result of the alleged differing site condition.

c. DeAtley has not revised the amount of its claim.

68. DeAtley's certified claim for $277,843.55 is overstated by $63,164.98.

DeAtley's False Or Fraudulent Claims

69. DeAtley's claim is inaccurate and false or fraudulent.

70. Deatley knowingly and deliberately certified entitlement to $63,164.98. in costs that were not incurred as the result of the alleged differing site condition.

Count I

Forfeiture Of Fraudulent Claims, 28 U.S.C. § 2514

71. The United States incorporates by reference the allegations set forth in paragraphs 57 through 70 above.

72. DeAtley practiced or attempted to practice fraud against the United States in the proof, statement, establishment, or allowance of the claims identified in the paragraphs above. Namely, DeAtley falsified its claims against the United States when it presented its claim to the contracting officer and when it presented its claim to this Court for costs with the intent to cause the Government to pay DeAtley more than the amount to which DeAtley knows it is entitled pursuant to the contract if it establishes at trial the liability of the Government.

77. Therefore, DeAtley is liable for the forfeiture of its claim, in its entirety, pursuant to 28 U.S.C. § 2514.

Count II

Contract Disputes Act, 41 U.S.C. § 604

73. The United States incorporates by reference the allegations set forth in paragraphs 57 through 72 above.

79. DeAtley is unable to support portions of its claim as alleged above due to a misrepresentation of fact or fraud.

80. Therefore, DeAtley is liable to the United States pursuant to the Contract Disputes Act, 41 U.S.C. § 604, for such unsupported portions of its claims, plus the Government's costs attributable to reviewing such parts of its claims.

Count III

False Claims Act – Presentation of False Claims, 31 U.S.C. § 3729(a)(1)

81. The United States incorporates by reference the allegations set forth in paragraphs 57 through 72 above.

82. For purposes of obtaining payment or approval, DeAtley knowingly presented, or caused to be presented, false or fraudulent claims to officers or employees of the United States.

83. Therefore, DeAtley is liable pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(1), for a civil penalty of not less than $5,500 and not more than $11,000 for each claim presented.

Prayer For Relief

WHEREFORE, the United States requests that judgment be entered in its favor and against DeAtley as follows:

(a) on Count I (Forfeiture of Fraudulent Claims), for forfeiture of Plaintiff's entire claim;

(b) on Count II (Contract Disputes Act), for damages in the amount of $63,164.98, plus the Government's cost of reviewing such claims;

(c) on Count III (False Claims Act – Presentation of False Claims), for such civil penalties as are allowable by law;

(f) and for such other and further relief as the Court may deem appropriate.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit,
8th floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-0252
(202) 307-0972 (Fax)

January 31, 2006

Attorneys for Defendant