activities.

2. Controls - Each SWPPP shall include a description of appropriate control measures (i.e., BMPs) that will be implemented as part of the construction activity to control pollutants in storm water discharges. The SWPPP must clearly describe for each major activity identified in Part IV.D.1.b: (a) Appropriate control measures and the general timing (or sequence) during the construction process that the measures will be implemented; and (b) which permittee is responsible for implementation (e.g., perimeter controls for one portion of the site will be installed by Contractor A after the clearing and grubbing necessary for installation of the measure, but before the clearing and grubbing for the remaining portions of the site; and perimeter controls will be actively maintained by Contractor B until final stabilization of those portions of the site up-gradient of the perimeter control; and temporary perimeter controls will be removed by the owner after final stabilization). The description and implementation of control measures shall address the following minimum components;

a. Erosion and Sediment Controls.

(1) Short and Long Term Goals and Criteria.

(a) The construction-phase erosion and sediment controls should be designed to retain sediment on site to the extent practicable.

(b) All control measures must be properly selected, installed, and maintained in accordance with the manufacturers specifications and good engineering practices. If periodic inspections or other information indicates a control has been used inappropriately, or incorrectly, the permittee must replace or modify the control for site situations.

(c) If sediment escapes the construction site, off-site accumulations of sediment must be removed at a frequency sufficient to minimize offsite (e.g., fugitive sediment in street could be washed into storm sewers by the next rain and/or pose a safety hazard to users of public streets).

(d) Sediment must be removed from sediment traps or sedimentation ponds when design capacity has been reduced by 50%.

(e) Litter, construction debris, and construction chemicals exposed to storm water shall be prevented from becoming a pollutant source for storm water discharges (e.g., screening outfalls, picked up daily).

(f) Offsite material storage areas (also including overburden and stockpiles of dirt, borrow areas, etc.) used solely by the permitted project are considered a part of the project and shall be addressed in the SWPPP.

(2) Stabilization Practices. The SWPPP must include a description of interim and permanent stabilization practices for the site, including a schedule of when the practices will be implemented. Site plans should ensure that existing vegetation is



M.A. DeATLEY 01862

000327

preserved where attainable and that disturbed portions of the site are stabilized. Stabilization practices may include but are not limited to: establishment of temporary vegetation, establishment of permanent vegetation, mulching, geotextiles, sod stabilization, vegetative buffer strips, protection of trees, preservation of mature vegetation, and other appropriate measures. Use of impervious surfaces for stabilization should be avoided.

The following records shall be maintained and attached to the SWPPP: the dates when major grading activities occur; the dates when construction activities temporarily or permanently cease on a portion of the site; and the dates when stabilization measures are initiated.

Except as provided in Parts IV.D.2.a.(2)(a), (b), and (c) below, stabilization measures shall be initiated as soon as practicable in portions of the site where construction activities have temporarily or permanently ceased, but in no case more than 14 days after the construction activity in that portion of the site has temporarily or permanently ceased.

(a) Where the initiation of stabilization measures by the 14th day after construction activity temporary or permanently ceased is precluded by snow cover or frozen ground conditions, stabilization measures shall be initiated as soon as practicable.

(b) Where construction activity on a portion of the site is temporarily ceased, and earth disturbing activities will be resumed within 21 days, temporary stabilization measures do not have to be initiated on that portion of site.

(c) In arid areas (areas with an average rainfall of 0 to 10 inches), semiarid areas (areas with an average annual rainfall of 10 to 20 inches), and areas experiencing droughts where the initiation of stabilization measures by the 14th day after construction activity has temporarily or permanently ceased is precluded by seasonably arid conditions, stabilization measures shall be initiated as soon as practicable.

(3) Structural Practices. The SWPPP must include a description of structural practices to divert flows from exposed soils, store flows or otherwise limit runoff and the discharge of pollutants from exposed areas of the site to the degree attainable. Structural practices may include but are not limited to: silt fences, earth dikes, drainage swales, sediment traps, check dams, subsurface drains, pipe slope drains, level spreaders, storm drain inlet protection, rock outlet protection, reinforced soil retaining systems, gabions, and temporary or permanent sediment basins. Placement of structural practices in floodplains should be avoided to the degree attainable. The installation of these devices may be subject to section 404 of the CWA.

(a) For common drainage locations that serve an area with ten (10) or more acres disturbed at one time, a temporary (or permanent) sediment

basin that provides storage for a calculated volume of runoff from a 2 year, 24 hour storm from each disturbed acre drained, or equivalent control measures, shall be provided where attainable until final stabilization of the site. Where no such calculation has been performed, a temporary (or permanent) sediment basin providing 3,600 cubic feet of storage per acre drained, or equivalent control measures, shall be provided where attainable until final stabilization of the site. When computing the number of acres draining into a common location it is not necessary to include flows from offsite areas and flows from onsite areas that are either undisturbed or have undergone final stabilization where such flows are diverted around both the disturbed area and the sediment basin.

In determining whether installing a sediment basin is attainable, the permittee may consider factors such as site soils, slope, available area on site, etc. In any event, the permittee must consider public safety, especially as it relates to children, as a design factor for the sediment basin and alternative sediment controls shall be used where site limitations would preclude a safe design. For drainage locations which serve ten (10) or more disturbed acres at one time and where a temporary sediment basin or equivalent controls is not attainable, smaller sediment basins and/or sediment traps should be used. Where neither the sediment basin nor equivalent controls are attainable due to site limitations, silt fences, vegetative buffer strips, or equivalent sediment controls are required for all down slope boundaries of the construction area and for those side slope boundaries deemed appropriate as dictated by individual site conditions. EPA encourages the use of a combination of sediment and erosion control measures in order to achieve maximum pollutant removal.

(b) For drainage locations serving less than 10 acres, smaller sediment basins and/or sediment traps should be used. At a minimum, silt fences, vegetative buffer strips, or equivalent sediment controls are required for all down slope boundaries (and for those side slope boundaries deemed appropriate as dictated by individual site conditions) of the construction area unless a sediment basin providing storage for a calculated volume of runoff from a 2 year, 24 hour storm or 3,600 cubic feet of storage per acre drained is provided. EPA encourages the use of a combination of sediment and erosion control measures in order to achieve maximum pollutant removal.

b. Storm Water Management - A description of measures that will be installed during the construction process to control pollutants in storm water discharges that will occur after construction operations have been completed must be included in the SWPPP. Structural measures should be placed on upland soils to the degree attainable. The installation of these devices may also require a separate permit under section 404 of the CWA. Permittees are only responsible for the installation and maintenance of storm water management measures prior to final stabilization of the site, and are not responsible for maintenance after storm water discharges associated with construction activity have been eliminated from the site. However, post-construction storm water BMPs that discharge



M.A. DeATLEY 01864

pollutants from point sources once construction is completed, may in themselves, need authorization under a separate NPDES permit.

(1) Such practices may include but are not limited to: storm water detention structures (including wet ponds); storm water retention structures; flow attenuation by use of open vegetated swales and natural depressions; infiltration of runoff onsite; and sequential systems (which combine several practices). The SWPPP shall include an explanation of the technical basis used to select the practices to control pollution where flows exceed predevelopment levels.

(2) Velocity dissipation devices shall be placed at discharge locations and along the length of any outfall channel to provide a non-erosive flow velocity from the structure to a water course so that the natural physical and biological characteristics and functions are maintained and protected (e.g. no significant changes in the hydrological regime of the receiving water).

c. Other Controls.

(1) No solid materials, including building materials, shall be discharged to waters of the United States, except as authorized by a permit issued under section 404 of the CWA.

(2) Off-site vehicle tracking of sediments and the generation of dust shall be minimized.

(3) The SWPPP shall be consistent with applicable State, Tribal and/or local waste disposal, sanitary sewer or septic system regulations to the extent these are located within the permitted area.

(4) The SWPPP shall include a description of construction and waste materials expected to be stored on-site with updates as appropriate. The SWPPP shall also include a description of controls to reduce pollutants from these materials including storage practices to minimize exposure of the materials to storm water, and spill prevention and response.

(5) The SWPPP shall include a description of pollutant sources from areas other than construction (including storm water discharges from dedicated asphalt plants and dedicated concrete plants), and a description of controls and measures that will be implemented at those sites to minimize pollutant discharges.

(6) The SWPPP shall include a description of measures necessary to protect listed endangered or threatened species, or critical habitat, including any terms or conditions that are imposed under the eligibility requirements of Part I.B.3.e.(4) of this permit. Failure to describe and implement such measures will result in storm water discharges from construction activities that are ineligible for coverage under this permit.

d. Approved State, Tribal or Local Plans.

M.A. DeATLEY 01865

(1) Permittees which discharge storm water associated with construction activities must ensure their storm water pollution prevention plan is consistent with requirements specified in applicable sediment and erosion site plans or site permits, or storm water management site plans or site permits approved by State, Tribal, or local officials.

(2) Storm water pollution prevention plans must be updated as necessary to remain consistent with any changes applicable to protecting surface water resources in sediment erosion site plans or site permits, or storm water management site plans or site permits approved by State, Tribal or local officials for which the permittee receives written notice.

3. Maintenance - All erosion and sediment control measures and other protective measures identified in the SWPPP must be maintained in effective operating condition. If site inspections required by Part IV.D.4. identify BMPs that are not operating effectively, maintenance shall be performed before the next anticipated storm event, or as necessary to maintain the continued effectiveness of storm water controls. If maintenance prior to the next anticipated storm event is impracticable, maintenance must be scheduled and accomplished as soon as practicable.

4. Inspections - Qualified personnel (provided by the permittee or cooperatively by multiple permittees) shall inspect disturbed areas of the construction site that have not been finally stabilized, areas used for storage of materials that are exposed to precipitation, structural control measures, and locations where vehicles enter or exit the site, at least once every fourteen (14) calendar days and within 24 hours of the end of a storm event of 0.5 inches or greater. Where sites have been finally or temporarily stabilized, runoff is unlikely due to winter conditions (e.g., site is covered with snow, ice, or frozen ground exists), or during seasonal arid periods in arid areas (areas with an average annual rainfall of 0 to 10 inches) and semi-arid areas (areas with an average annual rainfall of 10 to 20 inches) such inspections shall be conducted at least once every month.

Permittees are eligible for a waiver of monthly inspection requirements until one month before thawing conditions are expected to result in a discharge if all of the following requirements are met: (1) The project is located in an area where frozen conditions are anticipated to continue for extended periods of time (i.e., more than one month); (2) land disturbance activities have been suspended; and; 3) the beginning and ending dates of the waiver period are documented in the SWPPP.

a. Disturbed areas and areas used for storage of materials that are exposed to precipitation shall be inspected for evidence of, or the potential for, pollutants entering the drainage system. Sediment and erosion control measures identified in the SWPPP shall be observed to ensure that they are operating correctly. Where discharge locations or points are accessible, they shall be inspected to ascertain whether erosion control measures are effective in preventing significant impacts to receiving waters. Where discharge locations are inaccessible, nearby downstream locations shall be inspected to the extent that such inspections are practicable. Locations where vehicles enter or exit the site shall be inspected for evidence of offsite sediment tracking.

b. Based on the results of the inspection, the SWPPP shall be modified as necessary (e.g., show additional controls on map required by Part IV.D.1; revise description of controls required by Part IV.D.2) to include additional or modified BMPs designed to correct problems identified. Revisions to the SWPPP shall be completed within 7 calendar days following the inspection. If existing BMPs need to be modified or if additional BMPs are necessary, implementation shall be completed before the next anticipated storm event. If implementation before the next anticipated storm event is impracticable, they shall be implemented as soon as practicable.

c. A report summarizing the scope of the inspection, name(s) and qualifications of personnel making the inspection, the date(s) of the inspection, and major observations relating to the implementation of the SWPPP shall be made and retained as part of the SWPPP for at least three years from the date that the site is finally stabilized. Major observations should include: the location(s) of discharges of sediment or other pollutants from the site; location(s) of BMPs that need to be maintained; location(s) of BMPs that failed to operate as designed or proved inadequate for a particular location; and location(s) where additional BMPs are needed that did not exist at the time of inspection. Actions taken in accordance with Part IV.D.4.b of this permit shall be made and retained as part of the storm water pollution prevention plan for at least three years from the date that the site is finally stabilized. Such reports shall identify any incidents of non-compliance. Where a report does not identify any incidents of non-compliance, the report shall contain a certification that the facility is in compliance with the storm water pollution prevention plan and this permit. The report shall be signed in accordance with Part VI.G of this permit.

5. Non-Storm Water Discharges - Except for flows from fire fighting activities, sources of non-storm water listed in Part III.A.2 or 3 of this permit that are combined with storm water discharges associated with construction activity must be identified in the SWPPP. The SWPPP shall identify and ensure the implementation of appropriate pollution prevention measures for the non-storm water component(s) of the discharge.

## Part V. Retention of Records

A. Documents - The permittee shall retain copies of storm water pollution prevention plans and all reports required by this permit, and records of all data used to complete the Notice of Intent to be covered by this permit, for a period of at least three years from the date that the site is finally stabilized. This period may be extended by request of the Director at any time.

B. Accessibility - The permittee shall retain a copy of the storm water pollution prevention plan required by this permit (including a copy of the permit language) at the construction site (or other local location accessible to the Director, a State, Tribal or local agency approving sediment and erosion plans, grading plans, or storm water management plans; local government officials; or the operator of a municipal separate storm sewer receiving discharges from the site) from the date of project initiation to the date of final stabilization. Permittees with day-to-day operational control over SWPPP implementation shall have a copy of the SWPPP available at a central location on-site for the use of all operators and those identified as having responsibilities under the SWPPP whenever they are on the construction site.

C. Addresses - Except for the submittal of NOIs and NOTs (see Parts II.C and VIII.B, respectively), all written correspondence concerning discharges in any State, Indian Country land or from any Federal facility covered under this permit and directed to the EPA, including the submittal of individual permit applications, shall be sent to the address of the appropriate EPA Regional Office listed below:

Region 10: AK, WA, ID (except see Region 9 for Duck Valley Reservation lands), OR (except see Region 9 for Fort McDermitt Reservation)

United States EPA Region 10, Office of Water OW-130, Storm Water Staff, 1200 6th Avenue, Seattle, WA 98101 Part VI. Standard Permit Conditions

**Part VI. Standard Permit Conditions**

A. Duty to Comply

1. The Permittee Must Comply With All Conditions of This Permit - Any permit noncompliance constitutes a violation of CWA and is grounds for reinforcement action; for permit termination, revocation and reissuance, or modification; or for denial of a permit renewal application.

2. Penalties for Violations of Permit Conditions - The Director will adjust the civil and administrative penalties listed below in accordance with the Civil Monetary Penalty Inflation Adjustment Rule Federal Register: December 31, 1996, Volume 61, Number 252, pages 69359-69366, as corrected, March 20, 1997, Volume 62, Number 54, pages 13514-13517) as mandated by the Debt Collection Improvement Act of 1996 for inflation on a periodic basis. This rule allows EPA's penalties to keep pace with inflation. The Agency is required to review its penalties at least once every four years thereafter and to adjust them as necessary for inflation according to a specified formula. The civil and administrative penalties listed below were adjusted for inflation starting in 1996.

a. Criminal.

(1) Negligent Violations. The CWA provides that any person who negligently violates permit conditions implementing sections 301, 302, 306, 307, 308, 318, or 405 of the Act is subject to a fine of not less than $2,500 nor more than $25,000 per day of violation, or by imprisonment for not more than 1 year, or both.

(2) Knowing Violations. The CWA provides that any person who knowingly violates permit conditions implementing sections 301, 302, 306, 307, 308, 318, or 405 of the Act is subject to a fine of not less than $5,000 nor more than $50,000 per day of violation, or by imprisonment for not more than 3 years, or both.

(3) Knowing Endangerment. The CWA provides that any person who knowingly violates permit conditions implementing sections 301, 302, 306, 307, 308, 318, or 405 of the Act and who knows at that time he is placing another person in imminent danger of death or serious bodily injury is subject to a fine of not more





M.A. DeATLEY 01868

000333

than $250,000, or by imprisonment for not more than 15 years, or both.

(4) False Statement. The CWA provides that any person who knowingly makes any false material statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under the Act or who knowingly falsifies, tampers with, or renders inaccurate, any monitoring device or method required to be maintained under the Act, shall upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than two years, or by both. If a conviction is for a violation committed after a first conviction of such person under this paragraph, punishment shall be by a fine of not more than $20,000 per day of violation, or by imprisonment of not more than four years, or by both. (See section 309(c)(4) of the Clean Water Act).

b. Civil Penalties. The CWA provides that any person who violates a permit condition implementing sections 301, 302, 306, 307, 308, 318, or 405 of the Act is subject to a civil penalty not to exceed $27,500 per day for each violation.

c. Administrative Penalties. The CWA provides that any person who violates a permit condition implementing sections 301, 302, 306, 307, 308, 318, or 405 of the Act is subject to an administrative penalty, as follows:

(1) Class I Penalty. Not to exceed $11,000 violation nor shall the maximum amount exceed $27,500.

(2) Class II Penalty. Not to exceed $11,000 per day for each day during which the violation continues nor shall the maximum amount exceed $137,500.

B. Continuation of the Expired General Permit - If this permit is not reissued or replaced prior to the expiration date, it will be administratively continued in accordance with the Administrative Procedures Act and remain in force and effect. Any permittee who was granted permit coverage prior to the expiration date will automatically remain covered by the continued permit until the earlier of:

1. Reissuance or replacement of this permit, at which time the permittee must comply with the Notice of Intent conditions of the new permit to maintain authorization to discharge; or

2. The permittee's submittal of a Notice of Termination; or

3. Issuance of an individual permit for the permittee's discharges; or

4. A formal permit decision by the Director not to reissue this general permit, at which time the permittee must seek coverage under an alternative general permit or an individual permit.

C. Need to Halt or Reduce Activity Not a Defense - It shall not be a defense for a permittee in an enforcement action that it would have been necessary to halt or reduce the permitted activity in

order to maintain compliance with the conditions of this permit.

D. Duty to Mitigate - The permittee shall take all reasonable steps to minimize or prevent any discharge in violation of this permit which has a reasonable likelihood of adversely affecting human health or the environment.

E. Duty to Provide Information - The permittee shall furnish to the Director or an authorized representative of the Director any information which is requested to determine compliance with this permit or other information.

F. Other Information - When the permittee becomes aware that he or she failed to submit any relevant facts or submitted incorrect information in the Notice of Intent or in any other report to the Director, he or she shall promptly submit such facts or information.

G. Signatory Requirements - All Notices of Intent, Notices of Termination, storm water pollution prevention plans, reports, certifications or information either submitted to the Director or the operator of a large or medium municipal separate storm sewer system, or that this permit requires be maintained by the permittee, shall be signed as follows:

1. All Notices of Intent and Notices of Termination shall be signed as follows:

a. For a corporation: by a responsible corporate officer. For the purpose of this section, a responsible corporate officer means: a president, secretary, treasurer, or vice-president of the corporation in charge of a principal business function, or any other person who performs similar policy or decision-making functions for the corporation; or the manager of one or more manufacturing, production or operating facilities employing more than 250 persons or having gross annual sales or expenditures exceeding $25,000,000 (in second-quarter 1980 dollars) if authority to sign documents has been assigned to or delegated to the manager in accordance with corporate procedures;

b. For a partnership or sole proprietorship: by a general partner or the proprietor, respectively; or

c. For a municipality, State, Federal, or other public agency: by either a principal executive officer or ranking elected official. For purposes of this section, a principal executive officer of a Federal agency includes (1) the chief executive officer of the agency, or (2) senior executive officer having responsibility for the overall operations of a principal geographic unit of the agency (e.g., Regional Administrator of EPA).

2. All reports required by this permit and other information requested by the Director or authorized representative of the Director shall be signed by a person described above or by a duly authorized representative of that person. A person is a duly authorized representative only if:

a. The authorization is made in writing by a person described above and submitted to the Director.

b. The authorization specifies either an individual or position having

responsibility for the overall operation of the regulated facility or activity, such as the position of manager, operator, superintendent, or position of equivalent responsibility or an individual or position having overall responsibility for environmental matters for the company. (A duly authorized representative may thus be either a named individual or any individual occupying a named position).

c. Changes to Authorization. If an authorization under Part II.B is no longer accurate because a different operator has responsibility for the overall operation of the construction site, a new Notice of Intent satisfying the requirements of Part II.B must be submitted to the Director prior to or together with any reports, information, or applications to be signed by an authorized representative. The change in authorization must be submitted within the time frame specified in Part II.A.3, and sent to the address specified in Part II.C.

d. Certification. Any person signing documents under Part VI.G shall make the following certification:

"I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gathered and evaluated the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

H. Penalties for Falsification of Reports - Section 309(c)(4) of the Clean Water Act provides that any person who knowingly makes any false material statement, representation, or certification in any record or other document submitted or required to be maintained under this permit, including reports of compliance or noncompliance shall, upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than two years, or by both.

I. Oil and Hazardous Substance Liability - Nothing in this permit shall be construed to preclude the institution of any legal action or relieve the permittee from any responsibilities, liabilities, or penalties to which the permittee is or may be subject under section 311 of the CWA or section 106 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA).

J. Property Rights - The issuance of this permit does not convey any property rights of any sort, nor any exclusive privileges, nor does it authorize any injury to private property nor any invasion of personal rights, nor any infringement of Federal, State or local laws or regulations.

K. Severability - The provisions of this permit are severable, and if any provision of this permit, or the application of any provision of this permit to any circumstance, is held invalid, the application of such provision to other circumstances, and the remainder of this permit shall not be affected thereby.

L. Requiring an Individual Permit or an Alternative General Permit

1. The Director may require any person authorized by this permit to apply for and/or obtain either an individual NPDES permit or an alternative NPDES general permit. Any interested person may petition the Director to take action under this paragraph. Where the Director requires a permittee authorized to discharge under this permit to apply for an individual NPDES permit, the Director shall notify the permittee in writing that a permit application is required. This notification shall include a brief statement of the reasons for this decision, an application form, a statement setting a deadline for the permittee to file the application, and a statement that on the effective date of issuance or denial of the individual NPDES permit or the alternative general permit as it applies to the individual permittee, coverage under this general permit shall automatically terminate. Applications shall be submitted to the appropriate Regional Office indicated in Part V.C of this permit. The Director may grant additional time to submit the application upon request of the applicant. If a permittee fails to submit in a timely manner an individual NPDES permit application as required by the Director under this paragraph, then the applicability of this permit to the individual NPDES permittee is automatically terminated at the end of the day specified by the Director for application submittal.

2. Any permittee authorized by this permit may request to be excluded from the coverage of this permit by applying for an individual permit. In such cases, the permittee shall submit an individual application in accordance with the requirements of 40 CFR 122.26(c)(1)(ii), with reasons supporting the request, to the Director at the address for the appropriate Regional Office indicated in Part V.C of this permit. The request may be granted by issuance of any individual permit or an alternative general permit if the reasons cited by the permittee are adequate to support the request.

3. When an individual NPDES permit is issued to a permittee otherwise subject to this permit, or the permittee is authorized to discharge under an alternative NPDES general permit, the applicability of this permit to the individual NPDES permittee is automatically terminated on the effective date of the individual permit or the date of authorization of coverage under the alternative general permit, whichever the case may be. When an individual NPDES permit is denied to an owner or operator otherwise subject to this permit, or the owner or operator is denied for coverage under an alternative NPDES general permit, the applicability of this permit to the individual NPDES permittee is automatically terminated on the date of such denial, unless otherwise specified by the Director.

M. State/Tribal Environmental Laws

1. Nothing in this permit shall be construed to preclude the institution of any legal action or relieve the permittee from any responsibilities, liabilities, or penalties established pursuant to any applicable State/Tribal law or regulation under authority preserved by section 510 of the Act.

2. No condition of this permit shall release the permittee from any responsibility or requirements under other environmental statutes or regulations.

N. Proper Operation and Maintenance - The permittee shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are

installed or used by the permittee to achieve compliance with the conditions of this permit and with the requirements of storm water pollution prevention plans. Proper operation and maintenance also includes adequate laboratory controls and appropriate quality assurance procedures. Proper operation and maintenance requires the operation of backup or auxiliary facilities or similar systems, installed by a permittee only when necessary to achieve compliance with the conditions of this permit.

O. Inspection and Entry - The permittee shall allow the Director or an authorized representative of EPA, the State/Tribe, or, in the case of a construction site which discharges through a municipal separate storm sewer, an authorized representative of the municipal owner/operator or the separate storm sewer receiving the discharge, upon the presentation of credentials and other documents as may be required by law, to:

1. Enter upon the permittee's premises where a regulated facility or activity is located or conducted or where records must be kept under the conditions of this permit;

2. Have access to and copy at reasonable times, any records that must be kept under the conditions of this permit; and

3. Inspect at reasonable times any facilities or equipment (including monitoring and control equipment).

P. Permit Actions - This permit may be modified, revoked and reissued, or terminated for cause. The filing of a request by the permittee for a permit modification, revocation and reissuance, or termination, or a notification of planned changes or anticipated noncompliance does not stay any permit condition.

**Part VII. Reopener Clause**

A. If there is evidence indicating that the storm water discharges authorized by this permit cause, have the reasonable potential to cause or contribute to, a violation of a water quality standard, the permittee may be required to obtain an individual permit or an alternative general permit in accordance with Part I.C of this permit, or the permit may be modified to include different limitations and/or requirements.

B. Permit modification or revocation will be conducted according to 40 CFR 122.62, 122.63, 122.64 and 124.5.

C. EPA may propose a modification to this permit after further discussions between the Agency and the Advisory Council on Historic Preservation for the protection of historic properties.

**Part VIII. Termination of Coverage**

A. Notice of Termination - Permittees must submit a completed Notice of Termination (NOT) that is signed in accordance with Part VI.G of this permit when one or more of the conditions contained in Part I.D.2. (Terminating Coverage) have been met at a construction project. The

NOT form found in Addendum D will be used unless it has been replaced by a revised version by the Director. The Notice of Termination shall include the following information:

1. The NPDES permit number for the storm water discharge identified by the Notice of Termination;

2. An indication of whether the storm water discharges associated with construction activity have been eliminated (i.e., regulated discharges of storm water are being terminated) or the permittee is no longer an operator at the site;

3. The name, address and telephone number of the permittee submitting the Notice of Termination;

4. The name of the project and street address (or a description of location if no street address is available) of the construction site for which the notification is submitted;

5. The latitude and longitude of the construction site; and

6. The following certification, signed in accordance with Part VI.G (signatory requirements) of this permit. For construction projects with more than one permittee and/or operator, the permittee need only make this certification for those portions of the construction site where the permittee was authorized under this permit and not for areas where the permittee was not an operator:

"I certify under penalty of law that all storm water discharges associated with industrial activity from the identified facility that authorized by a general permit have been eliminated or that I am no longer the operator of the facility or construction site. I understand that by submitting this notice of termination, I am no longer authorized to discharge storm water associated with industrial activity under this general permit, and that discharging pollutants in storm water associated with industrial activity to waters of the United States is unlawful under the Clean Water Act where the discharge is not authorized by a NPDES permit. I also understand that the submittal of this Notice of Termination does not release an operator from liability for any violations of this permit or the Clean Water Act."

For the purposes of this certification, elimination of storm water discharges associated with construction activity means that all disturbed soils at the portion of the construction site where the operator had control have been finally stabilized (as defined in Part IX.I) and temporary erosion and sediment control measures have been removed or will be removed at an appropriate time to ensure final stabilization is maintained, or that all storm water discharges associated with construction activities from the identified site that are authorized by a NPDES general permit have otherwise been eliminated from the portion of the construction site where the operator had control.

B. Addresses - All Notices of termination, signed in accordance with Part VI.G of this permit, are to be submitted using the form provided by the Director (or a photocopy thereof), to the address specified on the NOT form.

**Part IX. Definitions**

A. Best Management Practices (BMPs) means schedules of activities, prohibitions of practices, maintenance procedures, and other management practices to prevent or reduce the discharge of pollutants to waters of the United States. BMPs also include treatment requirements, operating procedures, and practice to control plant site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage.

B. Control Measure as used in this permit, refers to any Best management Practice or other method used to prevent or reduce the discharge of pollutants to waters of the United States.

C. Commencement of Construction the initial disturbance of soils associated with clearing, grading, or excavating activities or other construction activities.

D. CWA means the Clean Water Act or the Federal Water Pollution Control Act, 33 U.S.C. section 1251 et seq.

E. Director means the Regional Administrator of the Environmental Protection Agency or an authorized representative.

F. Discharge when used without qualification means the "discharge of a pollutant."

G. Discharge of Storm Water Associated with Construction Activity as used in this permit, refers to a discharge of pollutants in storm water runoff from areas where soil disturbing activities (e.g., clearing, grading, or excavation), construction materials or equipment storage or maintenance (e.g., fill piles, borrow area, concrete truck washout, fueling), or other industrial storm water directly related to the construction process (e.g., concrete or asphalt batch plants) are located.

H. Facility or Activity means any NPDES "point source" or any other facility or activity (including land or appurtenances thereto) that is subject to regulation under the NPDES program.

I. Final Stabilization means that either:

1. All soil disturbing activities at the site have been completed and a uniform (e.g., evenly distributed, without large bare areas) perennial vegetative cover with a density of 70% of the native background vegetative cover for the area has been established on all unpaved areas and areas not covered by permanent structures, or equivalent permanent stabilization measures (such as the use of riprap, gabions, or geotextiles) have been employed. In such parts of the country, background native vegetation will cover less than 100% of the ground (e.g., arid areas, beaches). Establishing at least 70% of the natural cover of the native vegetation meets the vegetative cover criteria for final stabilization (e.g., if the native vegetation covers 50% of the ground, 70% of 50% would require 35% total cover for final stabilization; on a beach with no natural vegetation, no stabilization is required); or

2. For individual lots in residential construction by either: (a) The homebuilder completing final stabilization as specified above, or (b) the homebuilder establishing



M.A. DeATLEY 01875



000340