# In the United States Court of Federal Claims

No. 04-1052 C
(Filed: June 22, 2006)

| | | |
|---|---|---|
| **M.A. DeATLEY CONSTRUCTION, INC.**, Plaintiff, | | Motion to dismiss under RCFC 12(b)(6); Notice pleading under RCFC 8; Breach of contract; Defective Specifications; Differing Site Conditions; Constructive Change; Economic Waste Doctrine; Attorneys' Fees under the EAJA |
| v. | | |
| **THE UNITED STATES**, Defendant. | | |

## OPINION AND ORDER

*John C. Black*, Spokane, WA, counsel of record for Plaintiff.

*Leslie Cayer Ohta*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., counsel of record for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Bryant G. Snee*, Assistant Director.

**DAMICH**, Chief Judge.

## I. Introduction

Plaintiff M.A. DeAtley Construction, Inc. ("DeAtley") filed a six-count complaint against the United States Department of Transportation, Federal Highway Administration, Western Federal Lands Highway Division ("Government") alleging breach of contract and five other contract-related claims. On November 28, 2005, Defendant filed a motion to dismiss five of the six counts for failure to state a claim and for lack of jurisdiction pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

## II. Background

On February 9, 2001, the Government awarded Plaintiff a contract to reconstruct a portion of the Flowery Trail Road in the state of Washington. Compl. ¶ 4 (citing Contract No. DTFH70-01-C-00011). As part of the reconstruction process, the contract required Plaintiff to crush rock and then to lay the crushed rock (known as aggregate) to serve as a foundation for the road. Pl.'s Resp. at 2-3. The Government selected an optional source for Plaintiff to use in the aggregate production. *Id.* (citing Contract § 105.05). The contract provided that the aggregate produced must meet certain standards to ensure a compacted and durable foundation for the pavement. *Id.* at 4 (citing Contract § 703.05).

Relying upon the Government's assurances that the designated aggregate source complied with contract specifications, Plaintiff utilized it and completed the rock crushing in the fall of 2001. *Id.* at 9-10. During the winter, Plaintiff alleges that it stored the aggregate in stockpiles in accordance with industry standards. *Id.* at 13; Compl. ¶ 7. In August of 2002, Plaintiff began laying the aggregate. Compl. ¶¶ 7-8. While laying the aggregate, Plaintiff discovered that it had degraded to such an extent that it failed to satisfy contract standards. *Id.* ¶ 12. After informing the Government of the aggregate's deficiency, Plaintiff offered to provide the Government with a credit rather than replace the deficient aggregate. *Id.* ¶ 10. After declining Plaintiff's offer, the Government instructed Plaintiff to remove the aggregate and replace it with new aggregate. *Id.* ¶¶ 10, 12; Pl.'s Resp. at 14. After completing the replacement, Plaintiff filed a claim with the contracting officer seeking $277,833.55, for the costs associated with the additional work. Compl. ¶ 14. The contracting officer denied Plaintiff's claim on December 11, 2003. *Id.* ¶ 15.

On June 22, 2004, Plaintiff filed a six-count complaint against the Government alleging breach of contract, defective specifications, differing site conditions, constructive change, failure to mitigate, and unjust enrichment/quantum meruit. Compl. ¶¶ 18-51. At its core, Plaintiff's suit is based on its belief that the Government breached the contract by designating poor-quality rock that could not be utilized for its intended purpose–the road reconstruction.

Defendant filed a motion to dismiss Plaintiff's claims under RCFC 12(b)(6) arguing, in large part, that [as] "the gravamen of DeAtley's complaint is a differing site condition, that is, that the rock from the Government-provided source was unsuitable for its intended purpose, those counts alleging breach of contract (Count 1), defective specifications (Count 2), constructive change (Count 4), and failure to mitigate (Count 5) should be dismissed for failure to state a claim upon which relief can be granted." Def.'s Mot. at 3. Defendant does not challenge Count 3 wherein Plaintiff alleges differing site conditions. Def.'s Reply at 2-3 (stating that "DeAtley has set forth a legally cognizable claim for a differing site condition . . ."). In addition, Defendant argues that the court lacks jurisdiction over Plaintiff's prayer for interest in

an amount greater than that provided under the Contract Disputes Act and Plaintiff's prayer for attorneys' fees prior to the entry of final judgment in Plaintiff's favor.[1]

In its response to Defendant's motion, Plaintiff withdrew its unjust enrichment/quantum meruit claim (Count 6). Pl.'s Resp. at 1, n.1. Plaintiff also conceded that its prayer for interest in the amount of 12% per annum may exceed the amount established by the Secretary of the Treasury under the Contract Disputes Act and now "only seeks interest that is allowable by law." *Id.* at 20.

## III. Discussion

### A. Standard of Review

When reviewing a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, the court's review is limited. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (stating that "it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test"). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In making this determination, the court "must accept as true all the factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant." *See Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). In *Conley v. Gibson*, the Supreme Court described the approach to be taken in ascertaining the sufficiency of a claim under the rules of notice pleading:

> [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the

---

[1]In its complaint, Plaintiff's prayer for relief states,"[j]udgment *to include* the award of Plaintiff's reasonable attorney fees." Compl. at 10 (emphasis added). Although Plaintiff may have added this phrase simply to act as notice of its intent to seek attorneys' fees under the Equal Access to Justice Act ("EAJA"), Defendant is technically correct that the final judgment cannot include the award of attorney fees, since EAJA requires the prevailing party to apply for attorney fees *after* the entry of final judgment. *See* 28 U.S.C. § 2412(d)(1)(A)-(B). Accordingly, Plaintiff's request for attorneys' fees is premature at this time and will be dismissed without prejudice.

> simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a *proper decision on the merits*.

355 U.S. at 47-48 (emphasis added). Furthermore, in the context of a motion to dismiss, the Federal Circuit in *Gould, Inc. v. United States*, 935 F.2d 1271, 1276 (Fed. Cir. 1991), recognized that notice pleading under RCFC 8(a)(2) only requires "a short and plain statement of the claim," in holding that, although the contractor failed to allege that Government's contract specifications were misleading, the complaint was sufficient under notice pleading to support a claim of superior knowledge.

**B. Count 1: Breach of Contract**

In Count 1, Plaintiff alleges that the Government breached several of its contractual duties including: the duty to provide source material in accordance with contract specifications, the duty to conduct source testing, and the implied covenant of good faith and fair dealing. Compl. ¶¶ 19-22.

Defendant does not challenge the legal sufficiency of Plaintiff's Count 1 claims by showing that Plaintiff has failed to offer facts in support thereof, but instead argues that since Count 1 is aimed at the unsuitable rock designated by the Government, Plaintiff's differing site conditions claim (Count 3), which is based on the same allegations, obviates the need for this separate count. Def.'s Mot. at 5.

In its response, Plaintiff asserts that Count 1 is not limited to a claim based on differing site conditions, and to the extent it overlaps with Count 3, that, by itself, does not merit dismissal. Pl.'s Resp. at 1, 23-24. Plaintiff argues that Defendant's motion should be denied because it has sufficiently stated a breach of contract claim–a valid contract exists, the Government breached several of its duties, and it suffered damages as a result. *Id.* at 21.

Underlying Defendant's position is the notion that a claimant may only set forth a single claim for each alleged improper act even though several legally distinct causes of action may provide redress under the circumstances. *See* Def.'s Mot. at 5. Here, Defendant requests the dismissal of Plaintiff's contract count because its differing site conditions count addresses the same wrong. However, these are distinct causes of action. *See San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1563 (Fed. Cir. 1997) (discussing the elements of a breach of contract claim); *Comtrol, Inc. v. United States*, 294 F.3d 1357, 1362 (Fed. Cir. 2002) (discussing the elements for a type I differing site conditions claim). In addition,

Defendant does not offer any authority where a court has *actually* employed such a draconian measure.[2]

Absent controlling authority to the contrary, Defendant's assertion seems to contradict basic principles of pleading articulated in RCFC 8(a) which expressly provides, "[r]elief in the alternative or of *several different types* may be demanded." (Emphasis added). The rule further provides, "[a] party may set forth *two or more statements* of a claim . . . alternately or hypothetically, either in one count . . . or in *separate* counts . . . . When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." RCFC 8(e)(2) (emphases added). In addition, the rule instructs the court to construe all pleadings to do "substantial justice." RCFC 8(f). Hence, the court does not believe Plaintiff must forego one claim *in lieu* of another where both are sufficiently stated. Rather, the rules encourage Plaintiff to put forth all of his claims and to the extent they are all meritorious, the single recovery rule safeguards Defendant. Even if dismissal was warranted, Defendant's argument does not address the additional claims present in Count 1, including breach of the duty to conduct source testing and breach of the implied covenant of good faith and fair dealing. *See* Def.'s Mot. at 5. Accordingly, in construing Plaintiff's claims to do "substantial justice," Defendant's motion is DENIED as to Count 1. RCFC 8(f).

### C. Count 2: Defective Specifications

In Count 2, Plaintiff sets forth a defective specifications claim. Compl. ¶¶ 24-28. Under this doctrine, where the "government uses specifications in a contract, there is an accompanying implied warranty that these specifications are free from errors." *See Robins Maint., Inc. v. United States*, 265 F.3d 1254, 1257 (Fed. Cir. 2001) (citing *United States v. Spearin*, 248 U.S. 132, 137 (1918)). Plaintiff argues that its defective specifications claim is sufficiently stated because the Government provided it with specifications, it followed those specifications, and it did not achieve a satisfactory result. Compl. ¶¶ 24-28; Pl.'s Resp. at 24.

Defendant does not challenge the legal sufficiency of the defective specifications claim, but rather argues that "[a]lthough differing site conditions and defective specifications claims are

[2]Defendant argues that because a contract clause covers Plaintiff's Count 1 claim, Plaintiff cannot also set forth a separate breach of contract claim. Def.'s Mot. at 5 (citing *PCL Const. Serv., Inc. v. United States*, 47 Fed. Cl. 745, 752 (2000)). Defendant's reliance on *PCL* is misplaced. The *PCL* court did *not* hold as Defendant suggests. In fact, Defendant's argument is merely a recitation of the argument made by the Defendant in *PCL*–a position not adopted or even specifically addressed by the court. *See PCL*, 47 Fed. Cl. at 752. Ultimately, the *PCL* court, after conducting a trial and reviewing voluminous post-trial briefings (unlike the current posture), held that "Plaintiff failed to demonstrate breach of contract." *Id.* at 812. Despite Defendant's assertions to the contrary, the court did not hold that a claimant may not assert both a defective specifications claim and a breach of contract claim based on the same allegations.

distinct in theory, they collapse into a single claim where [as here] the alleged defect in the specification is the failure of the Government-provided source to provide suitable rock from which the aggregate was crushed." Def.'s Mot. at 5-6 (citing *Comtrol*, 294 F.3d at 1362). Defendant argues that since the two claims collapse into one, dismissal of Count 2 is appropriate.

In its response, Plaintiff agrees that *Comtrol* represents the correct state of the law. Pl.'s Resp. at 24. However, Plaintiff asserts that its "claim for defective specifications is not based *solely* on differing site conditions." *Id.* at 25 (emphasis added). In addition to that defect (the poor-quality rock), Plaintiff also asserts that the specifications were defective because they "did not allow any tolerance for the fine sieve." *Id.* Specifically, Plaintiff alleges that since the Government knew that it designated an aggregate source that was comprised of "highly weathered fractured material," the Government's gradation specifications should have "taken into account the material degradation of the rock." Id. Since the specifications did not allow for any degradation, when the designated rock presented with a higher than expected increase in fine material, it fell short of the contract specifications. *Id.* Therefore, Plaintiff argues that since its defective specifications claim (Count 2) is distinct from its differing site conditions count (Count 3), Defendant's motion should be denied.

Plaintiff's differing site conditions and defective specifications claims both arise from its encounter with the allegedly deficient aggregate source designated by the Government. Pl.'s Resp. at 25. Although the claims are related, Plaintiff alleges a distinct basis for its defective specifications claim. *See* Compl. ¶¶ 24-33; Pl.'s Resp. at 24-25; Pl.'s Resp. at 4 (citing Contract § 703-2A). That is, Plaintiff alleges that the specifications were also defective because they did not allow any tolerance for the fine sieve. As a result, and due to the material degradation of the rock, the produced aggregate failed the relevant tests. Pl.'s Resp. at 24-25.

Although far from crystal clear, Plaintiff's point appears to be that a road builder would normally expect a range in the size of the material that comprises the aggregate. To accommodate these variables, the Government's specifications should have taken the natural degradation process into account by providing that where the size of the aggregate material was within a particular range, the material would be acceptable, but the contractor's payment would be reduced. To the contrary, Plaintiff alleges that the contract, at issue, capped the allowable material at 10% and specified no tolerances. According to the Plaintiff, the contract further provides that where no tolerances are specified, "the work will be accepted based on customary manufacturing and construction tolerances." Pl.'s Resp. at 4. In sum, the Plaintiff seems to be arguing that allowing for tolerances is the customary practice in road-building. Therefore, the Government's failure to specify tolerances and its decision to hold Plaintiff to exact requirements, amounted to a defect in the specifications.[3] Notably, Defendant did not address

---

[3]The court notes that Plaintiff's brief on the defective specifications claim was not at all clear. There was little explanation of the role of aggregate material size in road-building. For example, Plaintiff seemed to assume that the court would know what a "mix design range for

this alleged defect in its Reply.[4] In taking Plaintiff's allegations as true and resolving all inferences in its favor, the court finds that Plaintiff's argument does appear to constitute a defective specifications claim, distinct from its differing site conditions claim. Thus, Plaintiff's Count 2 and Count 3 claims are not "so intertwined as to constitute a single claim." *Comtrol*, 294 F.3d at 1362.[5] Therefore, Defendant's motion is DENIED as to Count 2.

**D. Count 4: Constructive Change**

In Count 4, Plaintiff alleges that the Government constructively changed the contract "when the project engineer instructed DeAtley to remove the stockpiled [aggregate] . . . and replace it with new material." Compl. ¶ 35. As a result, it suffered delays, disruptions, and additional costs to its planned performance. *Id.* ¶ 36.

Unlike with Counts 1 and 2, Defendant *does* challenge the legal sufficiency of Plaintiff's constructive change claim. Defendant argues that to establish a constructive change, Plaintiff must show that the work the Government required was outside the scope of the contract. Def.'s Mot. at 6 (citing *CTA Inc., v. United States*, 44 Fed. Cl. 684, 696 (1999)). According to Defendant, since the contract required Plaintiff to replace or correct work that the Government deemed nonconforming, the additional work provided by Plaintiff in replacing the aggregate was not outside the scope of the contract and, thus, does not constitute a constructive change. *Id.* (citing the Federal Acquisition Regulation at 48 C.F.R. § 52.246-12).

---

each sieve size of aggregate" was. Pl.'s Resp. at 4. The court, however, is confident that, eventually, it was able to grasp Plaintiff's point, especially to the degree needed to judge a motion to dismiss.

[4]Defendant generally asserts that it declines to address the legal issues raised by Plaintiff in its response which were not initially raised in its complaint. Def.'s Reply at 3 n.2. According to Defendant, Plaintiff's defective specifications claim based on the Government's failure to allow any tolerances was not present in its complaint. *Id.* Count 2 of the complaint states, "[t]he Government provided design specifications on the project." Compl. ¶ 25. "The Government impliedly warranted that such specifications, when followed, would produce a satisfactory result." *Id.* ¶ 26. "DeAtley followed the defective specifications and was unable to produce a satisfactory result, which was a breach of the Government's warranty." *Id.* ¶ 27. The allegations contained in Count 2 sufficiently apprise Defendant of Plaintiff's defective specifications claims, and Defendant had the opportunity to address these claims in its Reply. Although Count 2 does not specifically address the precise nature of the defective specifications, such specificity is not required under notice pleading. *Conley*, 355 U.S. at 47-48.

[5]The court notes that *Comtrol* was at a different stage in the litigation and involved a motion for summary judgment rather than a motion to dismiss, as here. 294 F.3d at 1361-62.

In its response, Plaintiff asserts that the Government's reliance on the Federal Acquisition Regulation is misplaced because that provision applies to corrective work that is necessitated by the contractor's failures–unlike here. Pl.'s Resp. at 27. According to Plaintiff, because of failures on the Government's part (failing to apply tolerances, perform durability testing, or designate competent rock), it was forced to complete work outside the scope of the contract. *Id.* at 26. Plaintiff argues that because it need only proffer facts which if proven show that "(1) the Government directed a change outside the scope of the contract; and (2) the Government's fault caused the need for additional work," it has sufficiently stated a claim. *Id.* at 25-26 (citing *Flink/Vulcan v. United States*, 63 Fed. Cl. 292, 303 (2004)).

"A constructive change occurs where a contractor performs work beyond the contract requirements, without a formal order under the Changes Clause, either due to an informal order from, or through the fault of, the government." *See Navcom Def. Elec., Inc. v. England*, 53 Fed. Appx. 897, 900 (Fed. Cir. 2002) (citing *Ets-Hokin Corp. v. United States*, 190 Ct. Cl. 668, 420 F.2d 716, 720 (1970)); *Len Co. & Assocs. v. United States*, 181 Ct. Cl. 29, 385 F.2d 438, 443 (1967). Therefore, in order to state a claim, Plaintiff must put forth facts which if established satisfy the following two components: (1) the change component–where the contractor performs additional work *outside the scope of the contract,* and (2) the order or fault component. *See Flink/Vulcan*, 63 Fed. Cl. at 303; *CTA*, 44 Fed. Cl. at 696.

Where the Government acknowledges that it *required* the *additional work,* but contends that it was necessitated due to the contractor's nonconforming workproduct–the issue boils down to who was at fault. *See* Def.'s Mot. at 2 (stating that "[t]he Government *required* that DeAtley remove the aggregate and replace it . . .") (emphasis added); *id.* at 6 (stating that the work performed by Plaintiff constituted "*additional work*") (emphasis added). If Plaintiff's failures caused the need for the additional work, then such work *was not* outside the scope of the contract because the Government possesses the right to insist on strict compliance. *See Granite Constr. Co., v. United States*, 962 F.2d 998, 1006-07 (Fed. Cir. 1992) (stating that "[w]e recognize that the government generally has the right to insist on performance in strict compliance with the contract specifications and may require a contractor to correct nonconforming work"). However, if the additional work was necessitated by the Government's failures, then such work *was* outside the scope of the contract giving rise to a constructive change claim. *See Aydin Corp. (West) v. Widnall*, 61 F.3d 1571, 1577 (Fed. Cir. 1995) (stating that "[w]here it requires a constructive change in a contract, the Government must fairly compensate the contractor for the costs of the change") (citations omitted); s*ee also Flink/Vulcan*, 63 Fed. Cl. at 303 (stating that "if the Government otherwise *caused* the contractor to incur additional work, a constructive change arises for that work performed outside of the scope of the contract"). Accordingly, if Plaintiff can ultimately prove that the Government was at fault, as alleged, then it would prevail on its constructive change claim. In taking Plaintiff's allegations as true, the court finds that Plaintiff has sufficiently stated a claim. Therefore, Defendant's motion is DENIED as to Count 4.

**E. Count 5: Failure to Mitigate or Economic Waste**

In Count 5, Plaintiff alleges that the Government failed to mitigate damages by "unreasonably rejecting the delivered material and ordering [it] to replace the material." Compl. ¶ 40. Although labeled as a failure to mitigate claim, in essence, Plaintiff's claim is one under the economic waste doctrine. Pl.'s Resp. at 28.

Defendant argues that Count 5 should be dismissed for failure to state a claim because "[f]ailure to mitigate is an affirmative defense that is raised to reduce the amount of damages." Def.'s Mot. at 7. In recognition of the substance of Plaintiff's economic waste claim, however, Defendant asserts that "the Government undisputedly has the right to insist upon compliance with contract specifications except in the presence of substantial performance involving *economic waste*." *Id.* (citing *Granite Constr. Co., v. United States*, 962 F.2d 998, 1007 (Fed. Cir. 1992)) (emphasis added), *cert. denied*, 506 U.S. 1048 (1993). Aside from recognizing the economic waste exception, Defendant does not address why it should not apply here. *See id.*

In its response, Plaintiff asserts that, although Count 5 may be mislabeled, the Federal Circuit has recognized the substance of its claim–and it mirrors one of economic waste. Pl.'s Resp. at 28 (citing *Granite*, 962 F.2d at 1007). Plaintiff argues that *Granite* stands for the proposition that a contractor is allowed an equitable adjustment in the contract price if the Government unreasonably insists on strict compliance with contract specifications without providing a rational basis for rejecting the contractor's proposed repairs. *Id.* Plaintiff asserts that it is due an equitable adjustment because the Government caused it to suffer damages by unreasonably rejecting the delivered aggregate and by ordering it to replace the material. *Id.*

Although Defendant is correct in that failure to mitigate is an affirmative defense, the substance of Plaintiff's Count 5 allegations demonstrate that it is a claim for economic waste, and the court is not inclined to dismiss a cognizable claim based solely on an improper label where its substance is correct. Compl. ¶¶ 39-41. *See Conley v. Gibson*, 355 U.S. at 47-48 (recognizing the leniency associated with notice pleading and stating that courts should construe pleadings "to facilitate a proper decision on the merits"). This is especially so where, as here, the substance of the claim is so readily identifiable that Defendant could discern Plaintiff's intent. Def.'s Mot. at 7. Accordingly, the court will recharacterize Plaintiff's "failure to mitigate" claim so that its label corresponds to its legal substance–hence, economic waste.

The Federal Circuit has stated that "the government generally has the right to insist on performance in strict compliance with the contract specifications and may require a contractor to correct nonconforming work." *Granite*, 962 F.2d at 1006-07 (citations omitted). After recognizing this general principle, however, the court stated "that the government should not be permitted to direct the replacement of work in situations where the cost of correction is economically wasteful and the work is otherwise adequate for its intended purpose. In such cases, the government is *only* entitled to a downward adjustment in the contract price." *Id.* at 1007 (emphasis added). In light of its finding that the contractor's product "substantially

complied with the specifications," the court held that the government's actions in requiring the contractor to remove and replace the previously installed waterstop resulted in "economic waste." *Id.* at 1007-08.

In considering the rationale employed in *Granite*, the court finds that Plaintiff's economic waste claim is sufficient to survive Defendant's motion. Plaintiff alleges that it produced the deficient aggregate from the government designated source and then installed it. Upon learning of the aggregate's deficiency, Plaintiff offered to provide the Government with a credit to compensate it for the deficient aggregate. Compl. ¶ 10. Plaintiff further alleges that the Government acted "unreasonably" in "rejecting the delivered material." *Id.* ¶ 40. Moreover, Plaintiff suffered damages as a result of the Government's insistence on strict compliance. *Id.* ¶ 41. In taking Plaintiff's allegations as true, Plaintiff has sufficiently stated a claim for economic waste. Accordingly, Defendant's motion is DENIED as to Count 5.

**IV. Conclusion**

In view of the foregoing, the court hereby ORDERS the following:

1. Defendant's Motion to Dismiss is DENIED as to Counts 1, 2, 4, and 5;

2. In light of Plaintiff's withdrawal of Count 6, Defendant's Motion to Dismiss Count 6 is DENIED as moot;.

3. Defendant's Motion to Dismiss Plaintiff's prayer for attorneys' fees is GRANTED. In light of the premature nature of Plaintiff's request for attorneys' fees under the EAJA, it is dismissed without prejudice;

4. Defendant's Motion to Dismiss Plaintiff's prayer for prejudgment interest is GRANTED to the extent Plaintiff seeks interest above the rate provided by law.

s/Edward J. Damich
EDWARD J. DAMICH
Chief Judge