IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M. A. DEATLEY CONSTRUCTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1052C |
| | ) | (Chief Judge Edward J. Damich ) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL STATEMENT
CONCERNING PLAINTIFF'S MOTION TO REOPEN DISCOVERY

Pursuant to this Court's July 10, 2006 order, defendant respectfully submits this supplemental statement setting forth the basis for each of its allegations in its counterclaims and affirmative defenses.

As a preliminary matter, the parties have conferred regarding M. A. DeAtley Construction, Inc's ("DeAtley") pending motion to re-open discovery for the limited purpose of discovering the facts underlying defendant's counter-claims. It is the understanding of Government counsel that counsel for DeAtley has accepted her representations that the Government's counterclaims are based upon DeAtley's certified claim and related contract documents and that the Government will not be calling any Government employee to testify about the merits of the counterclaim, other than, perhaps, agency counsel, whose testimony will be limited to outlining the facts as contained in DeAtley's certified claim. Any testimony elicited regarding this matter from DeAtley's employees will be done through cross-examination.

The factual allegations contained in our counterclaims,[1] and the bases thereof, are

[1] All substantive allegations and contentions contained in our counterclaims are addressed following the same paragraph numbering, including the errors in paragraph

set forth below. DeAtley has copies of all of the documents relied upon by the Government. A copy of the contract has already been provided to the Court. All additional documents referenced in this statement are being provided as attachments to this statement.

> 56. On February 9, 2001, the Federal Highway Administration awarded a contract to M. A. DeAtley Construction, Inc., to construct and re-pave a portion of the Flowery Trail in Washington state. The contract provided that Rock at a specified location was suitable for the production of aggregate needed for the roadbed.

The basis for the allegations contained in paragraph 56 is the contract.

> 57. DeAtley hired DeAtley Crushing to crush the aggregate for the project using rock from the Government-provided source.

The basis for the allegations contained in paragraph 57 are paragraphs 5 and 6 of DeAtley's complaint. DeAtley has admitted the truth of these allegations.

> 58. The aggregate was crushed by DeAtley Crushing and stockpiled by DeAtley and DeAtley Crushing in November 2001. In August 2002, DeAtley placed the aggregate from the stockpiles on the roadbed.

The basis for the allegations contained in paragraph 58 are paragraphs 6, 7, and 8 of DeAtley's complaint. DeAtley has admitted the truth of these allegations.

> 59. The aggregate placed in the roadbed failed to meet the contract gradation specifications and was, therefore, rejected. The Government required that DeAtley remove the aggregate and replace it with aggregate that met the contract specifications.

---

numbering.

The basis for the allegations contained in paragraph 59 are the test results appended to the Contracting Officer's Decision ("COFD") and the August 21, 2002 letter from the Government to DeAtley. DeAtley has admitted the truth of these allegations.

> 60. In September 2002, DeAtley crushed aggregate from a different source. That aggregate, when placed upon the roadbed, met the contract specifications, and the project was completed. The Governments paid DeAtley the full amount of the contract price.

The basis for the allegations contained in the first sentence of paragraph 60 is the Contractor Daily Quality Control Reports dated September 3, 2002, through September 9, 2002, and DeAtley Crushing Company's September 6, 2002 letter, all of which are attached to DeAtley's Claim. DeAtley has admitted the truth of these allegations. The basis for the allegation in the second sentence of paragraph 60, that the aggregate met contract specifications, is Budinger & Associates Laboratory Summary, pages 2, 3, and 5. DeAtley has admitted the truth of these allegations. The basis for the allegation in the second sentence of paragraph 60, that the project was completed, is a December 13, 2002 letter from the Government to DeAtley. DeAtley has admitted the truth of this allegation. The basis for the allegations in the third sentence of paragraph 60 is the Final Pay Estimate.

> 61. On September 18, 2003, DeAtley submitted a certified claim to the contracting officer requesting $164,223.55 for DeAtley and $113,610.00 for DeAtley Crushing for damages due to the costs incurred to remove and replace the rejected aggregate.

The basis for the allegations in paragraph 61 is DeAtley's Claim. DeAtley has

admitted the truth of these allegations.

62. DeAtley's claim was denied on December 11, 2003.

The basis for the allegation in paragraph 62 is the COFD. DeAtley has admitted the truth of this allegation.

63. The amount claimed by DeAtley is overstated to the extent that DeAtley included amounts for both the initial production and placement of the rejected aggregate totaling $23,767.34, and for the production and placement of the replacement aggregate.

a. DeAtley included costs in its certified claim that were incurred during the initial crushing of the aggregate that was rejected, that is, costs incurred between November 2, 2001, and November 13, 2001.

b. Such costs include costs for both equipment and labor totaling $23,767.34.

c. DeAtley also included costs in its certified claim that were incurred during the crushing of the replacement aggregate, that is, costs incurred from approximately September 1, 2002, and September 15, 2002. Such costs include costs for both equipment and labor.

d. Those costs incurred in September 2002 constitute added costs to which DeAtley would be entitled if DeAtley prevails upon its differing site condition claim. The inclusion of costs for work that was not additional work, however, that is, for work that DeAtley was required to perform under the contract, that is, the work performed in November 2001, is fraudulent.

e. In effect, DeAtley is claiming costs for work that the government paid for under the contract. To claim such costs was clearly done either intentionally or with reckless disregard since even a cursory review of DeAtley's spreadsheets categorizing the claimed costs by activity and

amount, demonstrates that DeAtley is seeking the costs incurred during the twelve days in November during which the rejected aggregate was crushed, as well as for about the same number of days in September during which the replacement aggregate was crushed.

The basis for the allegations contained in paragraph 63 are the seven pages bearing the notation at the bottom of the pages "Deatley Crushing Invoice Agg D," attached to DeAtley's Claim behind the first tab.

64. The amount claimed by DeAtley is overstated to the extent that DeAtley included in its certified claim labor and equipment costs for placing aggregate on sections of the roadbed on which none of the rejected aggregate had been placed.

a. The work involved in removing the rejected aggregate from that section of the roadbed upon which it had been placed, and the placing of the replacement aggregate on that same section of the roadbed, constitutes "additional work" for which DeAtley would be entitled to compensation if DeAtley prevails on its differing site condition claim.

b. The placement of aggregate on those sections of the roadbed upon which the rejected aggregate had never been placed does not constitute "additional work." That work had nothing to do with the placement and removal of the rejected aggregate from certain portions of the roadbed.

c. The only extra work performed by DeAtley was the removal of the rejected aggregate from that portion of the roadbed upon which it had been placed and the placing of the replacement aggregate on that same section.

d. The equipment and labor costs fraudulently included by DeAtley for placing the replacement aggregate on portions of the roadbed upon which the rejected aggregate had not been placed amount to $32,020.74.

e. In effect, DeAtley is claiming costs for work that the

government paid for under the contract. To claim such costs was clearly done either intentionally or with reckless disregard since even a cursory review of DeAtley's spreadsheets categorizing the claimed costs by activity and amount, demonstrates that DeAtley is seeking the costs incurred to place aggregate on portions of the roadbed upon which the rejected aggregate had never been placed.

The basis for the allegations contained in paragraph 64 are the seven pages bearing the notation at the bottom of the pages "Deatley Crushing Invoice Agg D," attached to DeAtley's Claim behind the first tab, and the Contractor Daily Record of Construction Operations for the period from August 28, 2002, through September 18, 2002, attached to DeAtley's Claim.

65. DeAtley included testing costs that were already paid for by the Government under the contract.

a. DeAtley used Budginger and Associates to perform the gradation testing of the aggregate to determine whether it met the gradation specifications.

b. Such testing was required to be performed under the contract and was paid for under the contract.

c. The gradation testing is done when the aggregate is placed on the roadbed.

d. If the aggregate passes the gradation tests, the government then pays for the costs incurred by DeAtley, and DeAtley Crushing, for the crushing, placement, and testing of the aggregate.

e. According to the spreadsheet that documented the costs claimed by DeAtley in its certified claim, DeAtley included costs for Budginger performing the gradation test on both the rejected aggregate and on the replacement aggregate.

> The additional work that DeAtley was required to perform was the testing of the aggregate the second time, that is, the testing of the replacement aggregate. The initial test were required to be performed under the contract and were paid for by the the government under the contract. To include costs that DeAtley knows were not costs for extra work and that were already paid for by the government, constitutes fraud or, at a minimum, reckless disregard for the truthfulness of the claim. The initial testing costs amount to $3,247.15.

The first sentence of contained in paragraph 65 is simply a summary sentence. The basis for the allegations in subparagraph a. is DeAtley's Flowery Trail Road Quality Control Plan, the Contractor Daily Quality Control Reports dated August 19, 2002, August 20, 2002, September 5, 2002, September 7, 2002, September 9, 2002, and September 12, 2002, and the Test Data, all of which are attached to the Claim. The basis for the allegations in subparagraph b, that the contract required the testing, is the contract, specifically A-10, Section 154.03 of FP-96 and SCR 154.03, and Table 301-1 on page F-27 of the Special Contract Requirements. The basis for the allegations in subparagraph b, that the testing was paid for under the contract, is the Final Pay Estimate. The basis for the allegation in subparagraph c. is the contract, specifically, Table 301-1 on page F-27 of the Special Contract Requirements. The basis for the allegations in subparagraph d. is the contract, specifically Section 301.08 of the Special Contract Requirements, Table 703-2A of the Special Contract Requirements, and Sections 109.05 and 301.10 of the FP-96. The basis for the allegations in subparagraph e is the spreadsheet on the tenth page of the tab entitled "Request CO Decision September 18, 2003" attached to DeAtley's Claim.[2]

---

[2] The Government notes that the stated dollar amount is in error, as it inadvertently reflects the cost of the second testing. The correct amount, in adding

66. DeAtley included testing costs that were incurred solely to establish its claim.

a. After the aggregate was rejected, DeAtley went back to the roadbed cut from which the rock used to produce the rejected aggregate was taken.

b. DeAtley hired Budginger and Associates to take rock samples from the cut and to perform a durability test on those samples.

c. Such test were not required to be performed under the contract; such testing was performed by DeAtley in an attempt to support its differing site condition claim. The durability test results were cited by DeAtley in its claim, and at our settlement meeting, as evidence that the government designated source for the production of aggregate was unsuitable and therefore constitutes a differing site condition.

d. According to the spreadsheet that documented the costs claimed by DeAtley in its certified claim, DeAtley included costs for Budginger performing the durability tests. The inclusion of the $4,129.75 for such testing was fraudulent or, at a minimum, demonstrates DeAtley's reckless disregard for the truthfulness of its claim.

The first sentence contained in paragraph 66 is simply a summary sentence. The bases for the allegations in subparagraphs a. and b. are the undated letter from Budinger & Associates, located behind the "Professional Opinions" tab attached to DeAtley's Claim, the deposition testimony of Michael Osborn, 121:1-123:8, and the November 11, 2002 letter from DeAtley Crushing Company to the Government, attached in the "Correspondence Contractors-WFLHD" tab attached to DeAtley's Claim. The basis for the allegations in the first clause of subparagraph c. is the Contract, specifically Table 301-1. The basis for the

---

together the amounts for testing set forth on the tenth page prior to the recrushing, and also the overhead and profit markup added separately by DeAtley, is $2,567.30.

allegations in the second clause of subparagraph c is the deposition of Michael Osborn, 58:22-59:3; 121:1-123:8. The basis of the allegations in the second sentence of subparagraph c is the Claim, specifically the third paragraph of the Claim letter. The basis for the allegations in subparagraph d is the spreadsheet attached as the tenth page behind the tab "Request CO Decision September 18, 2003" to the Claim, and specifically by adding together all of the costs under the date "thru cut."

67. On March 22, 2005, a settlement meeting was held in Spokane, Washington.

a. In attendance were representatives from DeAtley and DeAtley Crushing and their attorneys.

b. During that meeting, DeAtley was informed that we considered that its claim contained false statements with respect to certain items because those costs were not incurred as the result of the alleged differing site condition.

c. DeAtley has not revised the amount of its claim.

The allegations contained in paragraph 67 are believed to be undisputed based upon conversations between Government counsel and counsel for DeAtley. If there is a dispute concerning theses facts, the Government will call agency counsel to testify to them.

68. DeAtley's certified claim for $277,843.55 is overstated by $63,164.98.

The basis for the allegations contained in paragraph 68 is the Claim submitted by DeAtley and the summation of the amounts set forth in paragraphs 63, 64, 65, and 66 ($23,767.34 + $32,020.74 + $3,247.15 + $4,129.75 = $63,164.98).

69. DeAtley's claim is inaccurate and false or fraudulent.

The Government is seeking a judicial determination that, based upon the evidence to

be presented at trial, DeAtley's claim is inaccurate and false or fraudulent.

70. Deatley knowingly and deliberately certified entitlement to $63,164.98. in costs that were not incurred as the result of the alleged differing site condition.

The Government is seeking a judicial determination that, based upon the evidence to be presented at trial, DeAtley's claim is inaccurate and false or fraudulent.

72. DeAtley practiced or attempted to practice fraud against the United States in the proof, statement, establishment, or allowance of the claims identified in the paragraphs above. Namely, DeAtley falsified its claims against the United States when it presented its claim to the contracting officer and when it presented its claim to this Court for costs with the intent to cause the Government to pay DeAtley more than the amount to which DeAtley knows it is entitled pursuant to the contract if it establishes at trial the liability of the Government.

The Government is seeking a judicial determination that, based upon the evidence to be presented at trial, DeAtley's claim is inaccurate and false or fraudulent.

77. Therefore, DeAtley is liable for the forfeiture of its claim, in its entirety, pursuant to 28 U.S.C. § 2514.

The Government is seeking a judicial determination that, based upon the evidence to be presented at trial, DeAtley's claim is inaccurate and false or fraudulent.

79. DeAtley is unable to support portions of its claim as alleged above due to a misrepresentation of fact or fraud.

The Government is seeking a judicial determination that, based upon the evidence to be presented at trial, DeAtley's claim is inaccurate and false or fraudulent.

80. Therefore, DeAtley is liable to the United States pursuant to the Contract Disputes Act, 41 U.S.C. § 604, for such unsupported portions of its claims, plus the Government's costs attributable to reviewing such parts

of its claims.

The Government is seeking a judicial determination that, based upon the evidence to be presented at trial, DeAtley's claim is inaccurate and false or fraudulent.

82. For purposes of obtaining payment or approval, DeAtley knowingly presented, or caused to be presented, false or fraudulent claims to officers or employees of the United States.

The Government is seeking a judicial determination that, based upon the evidence to be presented at trial, DeAtley's claim is inaccurate and false or fraudulent.

83. Therefore, DeAtley is liable pursuant to the False Claims Act, 31 U.S.C. § 3729(a)(1),for a civil penalty of not less than $5,500 and not more than $11,000 for each claim presented.

The Government is seeking a judicial determination that, based upon the evidence to be presented at trial, DeAtley's claim is inaccurate and false or fraudulent.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

<u>OF COUNSEL</u>

TIM BINDER
Division Counsel

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney

U.S. Dept. of Transportation
Federal Highway Administration
610 East Fifth Street
Vancouver, WA 98661-3801
360-619-7976

Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street, NW
Washington, D.C. 20530
202-307-0252
202-307-0972 (Fax)

July 21, 2006

Attorneys for Defendant