IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| M.A DeATLEY CONSTRUCTION, INC., Plaintiff, | Case No. FILED JUN 2 2 2004 |
| v. | 04-1052C |
| UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF TRANSPORTATION; UNITED STATES FEDERAL HIGHWAY ADMINISTRATION, WESTERN FEDERAL LANDS HIGHWAY DIVISION, Defendant. | **COMPLAINT** |

M.A. DeAtley Construction, Inc. ("DeAtley") for its Complaint in the above-captioned action, alleges as follows:

## I. <u>NATURE OF THE CASE</u>

1. This case involves the construction of the Flowery Trail Road Project, involving DeAtley and its subcontractor DeAtley Crushing, for the United States Department of Transportation, United States Federal Highway Administration, and the Western Federal Lands Highway Division ("WFLHD").

## II. THE PARTIES

2. DeAtley is a Washington corporation with its principle office and place of business in Clarkston, Washington. DeAtley is engaged in the business of construction services and delivery.

3. Defendant is the United States of America, United States Department of Transportation, United States Federal Highway Administration, Western Federal Lands Highway Division.

## III. FACTS

4. On February 9, 2001, DeAtley was awarded Contract No. DTFH70-01-C-00011 (the "Flowery Trail Project Contract" or "Contract") to reconstruct a portion of Flowery Trail Road. The contract included crushing of 21,500 metric tons Aggregate D base for the Project.

5. DeAtley entered into a subcontract with DeAtley Crushing Company, wherein DeAtley Crushing agreed to produce the specified materials.

6. On November 02, 2001, DeAtley, through DeAtley Crushing, commenced production of the aggregate for item Aggregate D base utilizing the WFLHD provided source. During the crushing, the material was sampled and tested by DeAtley, an independent testing laboratory, and WFLHD's laboratory, which each confirmed that the percent passing the #200 sieve of representative samples was between 7.5-8.5%. The contract specification was a 10% maximum.

7. DeAtley placed the material in stockpiles in accordance with Standard Specifications for Construction of Roads and Bridges on Federal Highway Projects FP-96 section 307 and subsections 307.03 and 307.04. The materials remained in stockpiles from November 14, 2001 through August 19, 2002.

8. On August 19, 2002 DeAtley began the placement of the Aggregate D base on the temporary roadway. Samples of materials placed on the roadway showed an amount of material passing the #200 sieve slightly higher than contract specifications (maximum 10%).

9. On August 22, 2002, WFLHD shut down the Aggregate D base placement due to a failing test result of the gradation of the material. DeAtley and Budinger & Associates ("Budinger"), who DeAtley hired as an independent Quality Assurance Contractor, retrieved samples from WFLHD's provided source material for testing. DeAtley asked WFLHD to be present at the sampling, but WFLHD refused.

10. On August 28, 2002, DeAtley Crushing notified DeAtley that the materials produced during November 2001 were within gradation tolerances when the materials left the crushing plant. DeAtley, in a good faith effort to keep the project progressing, made an offer to provide credit to WFLHD in the amount of $21,425.00, which is 25% of the contract price for the Aggregate D base material. WFLHD refused to accept this offer. WFLHD ordered DeAtley to remove the material off the roadway and to deliver new material.

11. On August 29, 2002, DeAtley began removing the rejected Aggregate D base and hauling it to a waste area.

12. On August 30, 2002, DeAtley received the results of the tests ran on the source material. The results showed that the material from the Government's designated source significantly failed the Sodium Sulfate Soundness test, which showed a loss greatly in excess of the specified maximum. DeAtley notified the Government of these test results and again asked them to reconsider their direction to recrush the material, since the cause of the material degrading beyond specified limits was due to poor source material.

13. On February 14, 2003, representatives from DeAtley, DeAtley Crushing, and Budinger met with representatives from WFLHD to discuss the issue of WFLHD's source material failing the Sodium Sulfate Soundness test. WFLHD referred DeAtley to the original Geotechinical testing reports on the source material and they were "standing behind" those reports.

14. On September 18, 2003, DeAtley filed its claim seeking compensation in the amount of $277,833.55 and requested for a Contracting Officer's Decision.

15. On December 11, 2003, the Contracting Officer issued its final decision denying DeAtley's request.

## IV. JURISDICTION AND VENUE

16. This suit is being filed to appeal Final Contracting Officer's Decision WA PFH 158-1(2).

17. This Court has jurisdiction over this action pursuant to 41 USC §609(a)(2). Venue of this action lies in this Court per the provisions of 41 USC §609 et. seq.

## V. CLAIMS

### COUNT I

**(Breach of Contract)**

18. DeAtley realleges paragraphs 1 through 17 as if set forth in their entirety.

19. The Government is charged with a duty to provide a source of materials, if one is provided, that will allow production of a product within the specifications. The Government further has the obligation to perform certain source testing on material sources to ensure that the material sources meet contract quality requirements. The Government is also charged with the obligation to act in good faith and to cooperate with the contractor, so as not to interfere with the contractor's performance.

20. The Government breached its duty to provide a source material in accordance with the specifications set forth in the contract.

21. The Government breached its duty to cooperate by wrongfully rejecting Aggregate D base material offered by DeAtley in accordance with the contract.

22. The Government breached the covenant of good faith and fair dealing, damaging DeAtley thereby.

23. These breaches caused damage to DeAtley in an amount to be proven at time of trial, plus interest.

**COUNT II**

**(Defective Specifications)**

24. DeAtley realleges paragraphs 1 through 23 as if set forth in their entirety.

25. The Government provided design specifications on the project.

26. The Government impliedly warranted that such specifications, when followed, would produce a satisfactory result.

27. DeAtley followed the defective specifications and was unable to produce a satisfactory result, which was a breach of the Government's warranty.

28. DeAtley incurred costs as a result of following the defective specifications and the Government failed to pay such costs, damaging DeAtley thereby, in an amount to be proven at time of trial, including interest.

**COUNT III**

**(Differing Site Conditions)**

29. DeAtley realleges paragraphs 1 through 28 as if set forth in their entirety.

30. DeAtley encountered subsurface physical conditions differing materially from those indicated in the contract.

31. The differing site condition could not have been ascertained by a reasonable pre-bid inspection because it was a subsurface physical condition to be determined by a laboratory test.

32. The specifications misrepresented the conditions actually encountered.

33. DeAtley is entitled to an equitable adjustment in contract price under the Changed Conditions Clause of the contract, in an amount to be determined at time of trial, plus interest.

**COUNT IV**

**(Constructive Change)**

34. DeAtley realleges paragraphs 1 through 33 as if set forth in their entirety.

35. The Government constructively changed the contract specifications when the project engineer instructed DeAtley to remove the stockpiled Aggregate D base material and replace it with new material.

36. DeAtley suffered delays, disruptions and additional costs to its planned performance due to the constructive changes and is entitled to equitable adjustments to the contract price under the Changes Clause of the contract.

37. DeAtley notified the Government about the effects of these constructive changes within the appropriate time.

38. DeAtley was damaged by the Government's conduct in an amount to be determined at trial.

**COUNT V**

**(Failure to Mitigate Damages)**

39. DeAtley realleges paragraphs 1 through 38 as if set forth in their entirety.

40. The Government failed to mitigate damages by unreasonably rejecting the delivered material and ordering DeAtley to replace the material.

41. DeAtley was damaged as a result of this failure in an amount to be determined at trial.

**COUNT VI**

**(Quantum Meruit/Unjust Enrichment)**

42. DeAtley realleges paragraphs 1 through 41 as if set forth in their entirety.

43. DeAtley had fully performed up to the time the Government halted production and delivery of Aggregate D base material.

44. The Government has failed and refused, upon demand, to reimburse and pay DeAtley the reasonable value of the work performed by DeAtley.

45. During the course of DeAtley's performance of work on the project, the acts and omission of the Government, materially changed and altered the original contract work requirement reasonably anticipated by DeAtley.

46. The nature and quality of the breaches by the Government substantially and materially altered the original performance requirements of DeAtley such that the

contract as a whole has been breached entitling DeAtley to be compensated for the fair and reasonable value of its labor, material and services.

47. The Government's failure to pay DeAtley constitutes a benefit or enrichment to the Government at the expense of DeAtley.

48. Such enrichment is unjust and contrary to equity.

49. As a result of DeAtley's performance, and the Government's failure to pay, the Government has been unjustly enriched in an amount to be proven at trial, plus interest.

50. The allegations in this Complaint further demonstrate that DeAtley is entitled to the reasonable value of the services performed under a quantum meruit theory of recovery, the amount to be proven at trial, plus interest.

51. Either under unjust enrichment or quantum meruit theories of recovery, DeAtley is entitled to recovery in the form of restitution in an amount to be proven at trial, plus interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1. That this Court enter a judgment in an amount to be determined at trial against Defendant for the amounts owing.

2. Judgment to include the award of prejudgment interest at the rate of twelve percent (12%) per annum on the principle amount owed.

3. Judgment to include the award of Plaintiff's reasonable attorney fees.

4. Such other and further relief as the Court deems just and equitable.

DATED this 18 day of June, 2004.

DUNN & BLACK, P.S.

JOHN C. BLACK
10 N. Post Suite 200
Spokane, WA 99201-0653
Telephone: (509) 455-8711
Fax: (509) 455-8734