M.A. DEATLEY
CONSTRUCTION, INC.

P.O. Box 490 • Clarkston, WA 99403 • 509-751-1580 • Fax 509-751-1922

December 4, 2002

Linda M Persoon, Project Engineer
Federal Highway Administration
P.O. Box 1220
107 W. Main
Chewelah, WA 99109

Ref: W A PFH 158-1(2) Flowery Trail Road

Dear Linda,

We are forwarding a letter M.A.DeAtley received today from DeAtley Crushing with concerns to the Source Compliance Testing. M.A.DeAtley shares the same concerns addressed in DeAtley Crushings letter.

M.A.DeAtley can be reached in our Clarkston office if you have any questions.

Sincerely,

M.A.DeAtley Construction Inc.

Craig T. Owens
Project Manager

Cc: Brent Coe

# DeAtley Crushing Company

4307 Snake River Avenue • P.O. Box 759 • Lewiston, Idaho 83501 • 208-743-6550 • Fax 208-743-6474

December 4, 2002

RECEIVED
DEC - 6 2002

M. A. DeAtley Construction Company
Attn: Mr. Craig T. Owens
P O Box 490
Clarkston, Wa. 99403

**RE: Flowery Trail / Project #DTFH70-01-C-00011**
**Source Compliance Testing / WFLHD Source**

Dear Craig:

As you know, representatives from MA DeAtley Construction, DeAtley Crushing Company, and Buddinger & Associates, who is M.A. DeAtley Construction's contracted Quality Assurance Engineers for the project, retrieved representative samples from the WFLHD Provided Source on August 22, 2002. These samples were retrieved from the area that was mined by DeAtley Crushing Company to produce the Base "D" materials for the project. The samples were tested to identify if, in fact, the WFLHD provided source materials met all of the "Contract Source Compliance Requirements" set forth to ensure that the contractor has sufficient materials available to produce finished materials that meet all other contract requirements. It was clearly identified through this testing that the source materials do not meet the requirements as the materials failed the Sodium Sulfate Test (AASHTO T 104).

After an extended period of time during which WFLHD has refused to meet and take true representative samples from the source area that was mined, M.A. DeAtley Construction has notified DeAtley Crushing Company, in letter of 11-26-02, that WFLHD's Linda Persoon had indicated WFLHD was running tests on some selective samples from some of the aggregate stockpiles. DeAtley Crushing Company strongly opposes this and would suggest to M.A. DeAtley Construction that the only reliable and acceptable test results for the source must come from the "source", and in the area mined. To truly identify the quality of the entire source, WFLHD would need to take numerous representative samples from the source and have all sample results show that the entire source does meet contract requirements. It is our understanding that, prior to offering this source for use on the project, WFLHD utilized only limited bore samples to test the source materials for contract compliance rather than doing any sort of real source investigation to ensure quality materials throughout the source. The possibility of WFLHD having "some" tests that meet contract requirements does not remove the fact that, at the very least, a portion of the actual source materials fail to meet contract requirements.

WFLHD provided this source to M.A. DeAtley Construction for use on this project, and in turn has the responsibility of ensuring that the "SOURCE" consistently yields materials meeting all source compliance requirements. It is not acceptable that WFLHD provide a source that yields some materials meeting contract requirements and some materials that do not meet contract requirements and in turn demands that M.A. DeAtley provide ALL materials meeting ALL contract requirements, regardless of whether or not all of the actual source materials meet those same contract requirements. It is our belief that, should WFLHD try to indicate that the source does in fact meet all contract requirements based on their selective stockpile tests, M.A. DeAtley should not recognize WFLHD's test results as representative because they cannot possibly represent the whole source, nor can they refute the failing tests already performed on actual source materials by your Quality Assurance Contractor. It is also our belief that WFLHD should fully compensate M.A. DeAtley Construction for all costs associated with the removal of this wrongfully rejected material as well as pay for all original aggregates produced plus all replacement aggregates.

You can reach me at our Lewiston office should you have any questions.

Sincerely,
DeAtley Crushing Company

Greg Graybill
Administrator

U.S. Department
of Transportation
**Federal Highway Administration**

FLOWERY TRAIL ROAD
WA PFH 158-1(2)
107 W Main
Chewelah, WA 99109
(509) 935-7175
FAX (509) 935-7188

Date: December 10, 2002

Refer to: DAC 14
Quality testing at rock source

Craig Owens, Project Manager
M. A. DeAtley Construction, Inc.
P.O. Box 490
Clarkston, WA 99403

WA PFH 158-1(2)
Flowery Trail Road
Contract Number DTFH70-01-C-00011

RE: DeAtley Crushing claim – Sodium Soundness testing results

Dear Mr. Owens:

The letter you forwarded from DeAtley Crushing, dated December 4, 2002, states M.A.DeAtley and DeAtley Crushing "retrieved representative samples from the WFLHD Provided Source on August 22, 2002. …It was clearly identified through this testing that the source materials do not meet the requirements as the materials failed the Sodium Sulfate Test (AASHTO T 104)."

The contract names two "government-provided optional sources", Section 105.02 (a)(1). Gletty Pit is listed as available for select borrow and the other source is listed as available for surfacing material. "Material for use in the production of aggregates under Sections 309 and 401 may be obtained from the future rock cut between Stations 11+760 and 11+880 (Rock Quarry Source). Under Section 105.05 Use of Material Found in the Work, the contract does identify rock material located between Stations 18+700 and 18+900 as having been tested to meet the quality requirements for aggregates under Sections 301 and 309.

The contract documents (Geotechnical Report No 2-99) identify the two borings from which quality testing was done prior to the contract award. This document identifies the area as having deeper overburden thickness to competent rock than the areas either ahead or back on line. The rock bedding and jointing discontinuities are identified as erratic. The cross section of the boring locations does show 9 m of overburden over the competent rock. During construction I

found this report to be accurate. We were down 9 m into the cut when production of select topping, base, and select granular backfill material began. There was some blasting required on knobs of rock, but much of the material was excavated with a dozer. When production was done in 2001, we were 0-6 m above design grade.

In order to test a representative sample of the material crushed, the WFL lab ran tests on split production samples collected throughout production. I chose three samples, one each from the beginning, middle, and end of production.

| Sample # | Product | Date produced/sampled | Sodium Soundness (T104) |
|---|---|---|---|
| 2 | Select Topping | 11/01/01 | 6.68 |
| 9 | Base | 11/07/01 | 3.35 |
| 1 | Select Granular Backfill | 11/15/01 | 2.98 |

The more competent rock was found with increased depth. In the end the very hard rock near the bottom of the excavation required 100% blasting and was utilized as slope armor in 2002.

M.A. DeAtley chose not to use the government-provided optional source at Sta 11+760 to 11+880. Quality testing was done on the rock from Station 18+700 to 18+900 prior to bidding. The contract does not require the contractor to use this source, nor does it preclude the contractor from using any of the other rock cuts on the project with proper testing. The choice to use this location was the contractors.

M.A. DeAtley did take productions samples from the belt during crushing. As required they did provide split samples to WFL. These samples represent the material crushed and are the ones we submitted for Sodium Soundness testing. I do not consider samples taken outside the roadway prism after construction to represent the material crushed.

Linda Persoon
Linda Persoon
Project Engineer

cc: Central files, Brent Coe
Project files

M.A. DEATLEY
CONSTRUCTION, INC.

P.O. Box 490 • Clarkston, WA 99403 • 509-751-1580 • Fax 509-751-1922

December 12, 2002

Linda M Persoon, Project Engineer
Federal Highway Administration
P.O. Box 1220
107 W. Main
Chewelah, WA 99109

Ref: W A PFH 158-1(2) Flowery Trail Road

Dear Linda,

We are forwarding a letter M.A.DeAtley received today from DeAtley Crushing with concerns to the Source Compliance Testing. M.A.DeAtley shares the same concerns addressed in DeAtley Crushing's letter.

M.A.DeAtley would like to set up a meeting with WFLHD and DeAtley Crushing to follow up with the potential claim and questions that arise on the source compliance issue.

M.A.DeAtley can be reached in our Clarkston office if you have any questions.

Sincerely,

M.A.DeAtley Construction Inc.

Craig T. Owens
Project Manager

Cc: Brent Coe

# DeAtley Crushing Company

4307 Snake River Avenue • P.O. Box 759 • Lewiston, Idaho 83501 • 208-743-6550 • Fax 208-743-6474

RECEIVED
DEC 13 2002

December 12, 2002

M. A. DeAtley Construction Company
Attn: Mr. Craig T. Owens
P O Box 490
Clarkston, Wa. 99403

**RE: Flowery Trail / Project #DTFH70-01-C-00011**
**Source Compliance Testing / WFLHD Source**

Dear Craig:

DeAtley Crushing Company is in receipt of a copy of the WFLHD letter of 12-10-02, authored by Linda Persoon, regarding Sodium Sulfate tests results on select materials from last years production of Base "D" aggregate. This comes as no surprise to us as both M.A. DeAtley Construction and DeAtley Crushing Company had anticipated what WFLHD would do. Again, WFLHD has attempted to avoid the real area of concern, which is the source. Simply put, WFLHD's results could not possibly be held as representative of the entire source, cannot refute the failure of actual source materials, and therefore, are meaningless. The samples retrieved on August 22nd and tested by Buddinger were taken from the exact area that was mined for production of the rejected aggregates. This cannot be refuted by WFLHD. WFLHD's refusal to accept its responsibility to assure the availability of quality materials throughout the government provided source and implying that M.A. DeAtley Construction was not forced to use this particular source is unacceptable. WFLHD's comments do not change the <u>fact</u> that WFLHD did provide the source.

While it is not the contractor's responsibility to explain why a material may, or may not, pass a specific source compliance test, we will offer speculation as to why the aggregate produced last year could possibly test different than actual materials tested directly from the actual source. As you know, the Sodium Sulfate Test (AASHTO T 104) is a weathering test designed to identify an aggregate sources' materials ability to withstand weathering, and the failing Sodium Sulfate test results would explain why the stockpiled materials have broken down or degraded somewhat over the winter and therefore having a marginally out of specification amount passing the #200 sieve. As previously stated, this test is a "source test". Materials are taken from the source and then, in laboratory conditions, broken down to differing size ranges which expose cracks, fissures, voids, or permeable pore spaces of the materials as found at the source. The material is then immediately exposed to the Sodium Sulfate chemical and wet/dry cycles, which is intended to replicate in a short period of time, due to the harshness of the chemical exposure, what will happen to the material while exposed to weathering, or differing conditions over time, the most severe being freeze thaw

cycles. Any aggregates tested from last years crushing would have been exposed to differing degrees of conditions or exposure for over a year now. Without knowing the full mineralogy of the aggregates, which would require at the very least a full petrographic analysis, one would have no way to determine if the breakdown or expansion meant to be simulated by the Sodium Sulfate test has already occurred in aggregates produced last year. It is clearly possible that the effects on, or expansion of, the aggregates' exposed cracks, fissures, voids, or permeable pore spaces meant to be simulated by the test have already occurred, at least to some degree, due to over a year of exposure to differing conditions and possibly more importantly the fact that all of these cracks, fissures, voids, or permeable pore spaces have been open and exposed for over a year. This is why the test is designed to be done on only source materials and why the materials are to be broken down in laboratory conditions and immediately exposed to the chemical and cycle test procedure.

We must remember that your contracted Quality Assurance Engineers, Buddinger & Associates, tested the aggregate after production, and verified that the materials did in fact meet all gradation specifications coming off the crushing plant. There has to be some explanation as to the change in the stockpiled aggregate from last year's production to the condition of the rock at present, that being an increase in fines; or breakdown. Buddinger & Associates test results from last year in conjunction with test results a year later prove that the materials have changed, or broken down for some reason.

WFLHD enjoyed the benefit of bidding prices reflecting a savings to the government do to the fact that materials that were required to be removed to achieve a road cut would be utilized in the construction of the road and in turn avoid bid prices reflecting the costly removal of this material, as well as the added trucking and production costs associated with getting the materials elsewhere. WFLHD is not dealing in good faith when it refuses to accept responsibility for its source, or attempts to indicate that the source is fine, while flatly ignoring the fact that the "source test" failed. WFLHD cannot justify accepting the anticipated cost savings associated with the use of this source; while at the same time expect the contractor to suffer financially because of the poor quality of the source. We believe M.A. DeAtley Construction should accept nothing less than full compensation from WFLHD for all costs associated with the materials produced, used, and/or rejected from this WFLHD source. DeAtley Crushing Company will provide full cooperation and assistance in prosecuting any potential claim by M.A. DeAtley Construction against the government.

You can reach me at our Lewiston office should you have any questions.

Sincerely,
DeAtley Crushing Company

Greg Graybill
Administrator

U.S. Department
of Transportation
**Federal Highway
Administration**

FLOWERY TRAIL ROAD
WA PFH 158-1(2)
105 S 3rd St East
Chewelah, WA 99109
(509) 935-7175
FAX (509) 935-7188

Date: December 19, 2002

Refer to: DAC 149
Crushing claim

Craig Owens, Project Manager
M. A. DeAtley Construction, Inc.
P.O. Box 490
Clarkston, WA 99403

WA PFH 158-1(2)
Flowery Trail Road
Contract Number DTFH70-01-C-00011

RE: DeAtley Crushing claim – Sodium Soundness testing results

Dear Mr. Owens:

On December 16, 2002 I received your letter dated December 12, 2002 forwarding Greg Craybill's letter of the same date from DeAtley Crushing.

When base material was crushed in 2001 your quality control manager, Dusty Forsman worked with WFL to see that Budinger's personnel did collect production samples and give splits to WFL for assurance testing. During this time Forsman did maintain a flowchart as required by the contract. As test results became available we shared concerns when material was outside the gradation specification limits.

Production of 30101 Aggregate Base, Grading D took place on November 2, 5, 6, 7, 8, 9, and 12 under challenging weather conditions. Testing results document problems getting both the 9.5 mm and 4.75 mm sieves in spec. There was a wide range of values on these two sieves as the material was produced both below and above the allowable gradation range. Putting Budinger's testing results (18 samples taken) into QL Pay shows a pay factor of 0.82. The 4.75 mm sieve rated a 0.82 pay factor and the 9.5 mm sieve rated a 0.84 pay factor.

While screens were adjusted during production to find a balance for the upper sieves the 75 um sieve was consistently in the upper allowable range. The 75um sieve mean in QL Pay for Budinger's 18 tests is 7.93. On 9 samples sent into Vancouver for assurance testing the mean is

8.54 % passing the 75 um sieve. While the amount retained on the 75 um sieve was relatively consistent, it was in the upper allowable range (10.0 maximum).

In August DeAtley Construction superintendent spoke of building a pad to stockpile crushed materials from Sta 23+340 to 23+560. Later this idea was abandoned and they spoke of stockpiling in the area closed for the winter, Sta 20+680 to Sta 21+560. In the end the crushed material was stockpiled in a windrow a kilometer long on the roadway. The large area of the stockpile floor was muddy due to the rain at the time of crushing. The stockpile was exposed to splashed mud first from the construction equipment and later from general traffic. No attempt was made to cover the stockpile.

When acceptance testing was done this year, the first five samples (Lot 1) had a mean of 10.59 on the quality assurance testing (Budinger tested 12.42 on their splits).

It is my contention that the 30101 Aggregate Base, Grading D, crushed in 2001 failed to meet the requirements of 10% maximum on the 75 um sieve during on the grade acceptance testing because of poor stockpiling techniques resulting in contamination after the material was crushed in the upper range of the maximum allowable gradation.

Linda Persoon

Project Engineer

cc: Central files, Brent Coe
Project files

**M.A. DEATLEY CONSTRUCTION, INC.**

P.O. Box 490 • Clarkston, WA 99403 • 509-751-1580 • Fax 509-751-1922

December 20, 2002

Brian Wilsey, Vice President
DeAtley Crushing Company
P.O. Box 759
Lewiston, Idaho 83501

Ref: W A PFH 158-1(2) Flowery Trail Road

Dear Brian;

We are forwarding the letter we received from the FHWA dated December 20, 2002. We would like DeAtley Crushing to respond to gradation and testing paragraphs. M.A.DeAtley will respond to the stockpile paragraph.

This should help prove your case since all the gradations have changed from last November when the material was produced. If you look at the production gradations from last November and compare them to the gradations taken off the roadway there are differences in the upper gradations also. Hopefully with this research and documentation you can prove that the material broke down through the winter.

The FHWA did not address the issue that DeAtley Crushing addressed in your last correspondence. We had also asked for a meeting between DeAtley Crushing, M.A.DeAtley and the FHWA to discuss this potential claim with no response.

When you respond we will submitt both letters of response and request another meeting with the FHWA.

Sincerely,

M.A.DeAtley Construction Inc.

Craig T. Owens
Project Manager

# DeAtley Crushing Company

4307 Snake River Avenue • P.O. Box 759 • Lewiston, Idaho 83501 • 208-743-6550 • Fax 208-743-6474

December 23, 2002

M. A. DeAtley Construction Company
Attn: Mr. Craig T. Owens
P O Box 490
Clarkston, Wa. 99403

**RE: Flowery Trail / Project #DTFH70-01-C-00011**
**Agg Base "D" / WFLHD Source**

Dear Craig:

DeAtley Crushing Company is in receipt of a copy of the WFLHD letter of 12-19-02, authored by Linda Persoon, regarding the Aggregate Base Grading "D" produced last year for the above mentioned project. Again, Linda avoids the real area of concern, which is the source of the materials. This WFLHD provided source has failed the Sodium Sulfate Test (AASHTO T-104) which is a required source compliance test to insure quality materials are available to the contractor.

WFLHD has clearly acknowledged the fact that the materials produced by DeAtley Crushing Company from this source did, in fact, meet contract gradation specifications. WFLHD has also clearly acknowledged the fact that the materials have showed a considerable change over the winter with regards to the gradation of the materials. A look at the gradation of the materials initially placed on the roadway shows a change in the gradation of the material from the upper sieves on down. We do not have any knowledge of how M.A. DeAtley Construction may, or may not have, taken care of the stockpiles after we produced the materials. Of more concern is that WFLHD is again purposely avoiding the fact that the source they provided does not guarantee materials that assure M.A. DeAtley Construction the opportunity to meet contract specifications on the roadway.

You can reach me at our Lewiston office should you have any questions.

Sincerely,
DeAtley Crushing Company

Greg Graybill
Administrator