**M.A. DEATLEY CONSTRUCTION, INC.**

P.O. Box 490 • Clarkston, WA 99403 • 509-751-1580 • Fax 509-751-1922

~~Sent~~ FAXED 9/6/02

September 5, 2002

Linda M. Persoon
P.O. Box 1220
107 W. Main
Chewelah, WA 99109

Dear Linda,

In accordance with the Contract Clauses, specifically 52.236-2, Differing Site Conditions, and per our sub-contractor DeAtley Crushings request for compensation and intent to file claim, I am forwarding their letter to you.

Please be aware that any costs incurred by M. A. DeAtley Construction due to the differing site conditions, and all delays caused by these conditions, is also included in the same intent to file claim, and will be seeking compensation and additional working days.

Sincerely, SS. for

Craig T. Owens

Craig T. Owens
Project Manager

cc: Brent Coe

• An Equal Opportunity Employer •

97

M.A. DEATLEY
CONSTRUCTION, INC.

P.O. Box 490 • Clarkston, WA 99403 • 509-751-1580 • Fax 509-751-1922

September 10, 2002

DeAtley Crushing Company
Attn: Brian Wilsey
3661 Snake River Avenue
P.O. Box 758
Lewiston, Idaho 83501

Ref: W A PFH 158-1(2) Flowery Trail Road

Dear Brian,

In response to your letter of September 6, 2002 sent to M. A. DeAtley Construction, I will update you on the latest. Your second paragraph concerning the area that you were crushing at, and the understanding that a verbal agreement had been given by Brent Coe is no longer an issue. The source has been approved.

We have notified the WFLHD of your intent to file claim, and forwarded your letter of September 3, 2002 to Linda Persoon and Brent Coe. If you have invoices or costs that you want us to forward to them, please submit them to us.

Please contact us if we can be of any help to you.

Sincerely,

Steve Smithstman
M.A.DeAtley Construction Inc.
Project Administrator



98

Faxed 9/11/02

September 11, 2002

Linda M Persoon, Project Engineer
Federal Highway Administration
P.O. Box 1220
107 W. Main
Chewelah, WA 99109

Ref: W A PFH 158-1(2) Flowery Trail Road

Dear Linda,

We are forwarding to you a letter from DeAtley Crushing along with their invoice for work completed

This is in reference to their letter of September 3, 2002 and our letter of September 5, 2002, notifying you of intent to file claim.

Sincerely,

M.A.DeAtley Construction Inc.

Steve Smithsrman
Project Administrator

99

U.S. Department
of Transportation
**Federal Highway Administration**

FLOWERY TRAIL ROAD
WA PFH 158-1(2)
P.O. Box 1220
Chewelah, WA 99109
(509) 935-7175
FAX (509) 935-7188

Facsimile:

Date: October 15, 2002

Attn: Craig Owens
M. A. DeAtley Construction, Inc.
P.O. Box 490
Clarkston, WA 99403
Cc: Mike Osburn, DeAtley Crushing

Refer to: DAC135
Pay Factor Results

WA PFH 158-1(2)
Flowery Trail Road
Contract Number DTFH70-01-C-00011

Dear Mr. Owens:

We are still waiting on the original test results for the following samples:

Item 40101, Hot Asphalt Concrete Pavement Class B, Grading C
Samples 1 – 16

Item 30101, Aggregate Base, Grading D
Lot 3, Samples 5 – 13

Attached are the contractor test results and pay factors for Items 30101, 30901, 40101. We are using the faxed copies for missing originals at this time.

If you have any questions, please call this office.

Linda Persoon
Linda Persoon
Project Engineer

cc: Central files, Brent Coe
Corr. To Contractor
DeAtley Crushing

100

Tue Oct 15 09:13:16 2002 Western Federal Lands Highway Division

Project Name: Flowery Trail (2) Item Number: 30101
Project Number: WA PFH 158-1(2) Lot Number: 3
Project ID: DTFH70-01-C-00011 Lab: Engr's Field ~~Lab~~

| Quality Charac- teristic | TV | Allowable Devia- tion | Category | Mean | Standard Devia- tion | Est. no. Samples | Actual no. Samples | Quality Level | Current Pay Factor |
|---|---|---|---|---|---|---|---|---|---|
| 9.5mm | 67.06 | 7 | 1 | 67.06 | 5.258 | 17 | 17 | 18 | 0.97 |
| 4.75mm | 41.57 | 6 | 1 | 41.57 | 5.331 | 17 | 17 | 26 | 0.91 |
| 425µm | 14.32 | 4 | 2 | 14.32 | 2.327 | 17 | 17 | 8 | 1.00 |
| 75µm | 8.09 | | | 8.09 | 1.192 | 17 | 17 | ------ | ------ |
| SE/P | 1.000 | min | 1 | 1.86 | 0.134 | 17 | 17 | 0 | 1.05 |
| % FRAC | 50 | min | 1 | 94.14 | 2.955 | 17 | 15 | 0 | 1.05 |
| SE | 35 | | | 61.47 | 3.955 | 17 | 17 | ------ | ------ |

Current Pay Factor: 0.91
Projected Pay Factor Based On Quality Level: 0.91

Warning: Corrective Action Recommended

101

# DeAtley Crushing Company

4307 Snake River Avenue • P.O. Box 759 • Lewiston, Idaho 83501 • 208-743-6550 • Fax 208-743-6474

November 11, 2002

RECEIVED NOV 11 2002

COPY

U.S. Department of Transportation
Attn: Linda Persoon, Project Engineer
107 West Main
Chewelah, Wa. 99109

**RE: Flowery Trail / Project #DTFH70-01-C-00011**
**Additional Base "D" Agg / WFLHD Source Failure**

Ms Persoon:

DeAtley Crushing Company was requested, by M.A. DeAtley Construction, to perform production of additional Agg Base "D" aggregates at the 49 Degrees North facility that were used for the above mentioned project. DeAtley Crushing Company produced the requested 22,000 MG of additional materials. Per M.A. DeAtley Construction's request we provided invoice on September 11, 2002, in the amount of $113,610.00. We now notify WFLHD that we have not received payment for this service.

Due to conversations last week between Mike Osburn, of DeAtley Crushing Company, and yourself, we are concerned that our prime contractor, M.A. DeAtley Construction, may not be fully protecting our rights to recover our combined additional costs. M.A. DeAtley Construction obviously incurred substantial costs associated with the rejection of the original aggregates that were produced from WFLHD's source, which has failed at least one of the "Contract Source Compliance Requirements". We have invoiced M.A. DeAtley, as previously indicated, but have received neither payment nor any legitimate correspondence that would explain the lack of payment. We do not intend that WFLHD take any possible lack of activity by our prime contractor, M.A. DeAtley, as an indication that we, DeAtley Crushing Company, waive our rights to recover in the event that WFLHD, for whatever reason, does not follow through with its obligation to pay for this additional work.

As you know, representatives from M.A. DeAtley Construction, DeAtley Crushing Company, and Buddinger & Associates retrieved representative samples from the WFLHD Provided Source on August 22, 2002. These samples were retrieved from the area that was mined by DeAtley Crushing Company to produce the rejected Base "D" materials for the project. The samples were tested to identify if, in fact, the source materials met all of the "Contract Source Compliance Requirements" set forth to ensure that the contractor has sufficient materials available to produce finished materials

102

that meet all other contract requirements. It was clearly identified through this testing that the source materials do not meet the requirements as the materials failed the Sodium Sulfate Test (AASHTO T 104). This is clearly as a case of "Differing Site Conditions" as it is WFLHD's responsibility to provide the contractor materials in sufficient quantity and quality to complete the project within the remaining contract guidelines and requirements. Obviously the contractor can not be held accountable for the failure of the government to provide source materials that consistently meet all contract requirements. It is fair and equitable that the government provides full payment for any work brought about due to the use of this government provided source which does not meet the contract requirements.

M.A. DeAtley Construction verbally notified DeAtley Crushing Company, on September 10, 2002, that WFLHD representatives had indicated that they wanted to go to the source and retrieve further samples for testing. DeAtley Crushing Company notified Buddinger & Associates and has awaited word from M.A. DeAtley or WFLHD as to when to meet at the source to collectively retrieve samples. Through phone conversations between M.A. DeAtley Construction and Mike Osburn of DeAtley Crushing Company, it has been indicated that WFLHD has decided not to retrieve further samples from the source in question. As I understand, you indicated in your conversation with Mike Osburn on 11-6-02, that WFLHD was going to run some tests on select samples of the finished product. We would remind you that "Source Tests" are to be taken from the "Source", as stated in the contract documents, and as we had offered to due collectively with the government back in early September. It should be noted that the possibility of some materials meeting Contract Source Compliance Requirements and other materials not meeting those requirements is possible. This, however, is not the responsibility of the contractor. It is the governments (WFLHD's) obligation to ensure that consistent quantity and quality of materials are available for use by the contractor when the government provides the source of materials.
We properly notified M.A. DeAtley that the source did not meet the contract requirements on 9-03-2002. M.A. DeAtley Construction indicates that it notified WFLHD that the source failed to meet contract requirements. We have seen absolutely no correspondence from WFLHD or M.A. DeAtley Construction regarding the failing source or our payment.

Please provide payment for our services or a detailed explanation as to why the government has not paid for the extra work brought about by this change in conditions at the WFLHD source.

Sincerely,
DeAtley Crushing Company

Greg Graybill
Administrator

Cc: M.A DeAtley

103

COPY

M.A. DEATLEY
CONSTRUCTION, INC.

P.O. Box 490 • Clarkston, WA 99403 • 509-751-1580 • Fax 509-751-1922

12-2-02
TO Linda
Brent Coe

November 26, 2002

Linda M Persoon, Project Engineer
Federal Highway Administration
P.O. Box 1220
107 W. Main
Chewelah, WA 99109

MAILED
12-03-02 to Linda

Ref: W A PFH 158-1(2) Flowery Trail Road

Dear Linda,

Please be advised these are the costs incurred by M.A.DeAtley Construction due to the differing site conditions. As we informed you in the September 5, 2002 letter we would be attaching these costs to the same intent to file claim our sub-contractor DeAtley Crushing is requesting compensation for. We will also be looking for additional working days.

You will find the information broken out by the day and item and should be easy to follow.

Sincerely,

M.A.DeAtley Construction Inc.

Craig T. Owens
Project Manager

Cc Brent Coe



104

M.A. DEATLEY
CONSTRUCTION, INC.
P.O. Box 490 • Clarkston, WA 99403 • 509-751-1580 • Fax 509-751-1922

December 4, 2002

Linda M Persoon, Project Engineer
Federal Highway Administration
P.O. Box 1220
107 W. Main
Chewelah, WA 99109

Ref: W A PFH 158-1(2) Flowery Trail Road

Dear Linda,

We are forwarding a letter M.A.DeAtley received today from DeAtley Crushing with concerns to the Source Compliance Testing. M.A.DeAtley shares the same concerns addressed in DeAtley Crushings letter.

M.A.DeAtley can be reached in our Clarkston office if you have any questions.

Sincerely,

M.A.DeAtley Construction Inc.

Craig T. Owens
Project Manager

Cc: Brent Coe

• An Equal Opportunity Employer •

# DeAtley Crushing Company

4307 Snake River Avenue • P.O. Box 759 • Lewiston, Idaho 83501 • 208-743-6550 • Fax 208-743-6474

RECEIVED
-6

December 4, 2002

M. A. DeAtley Construction Company
Attn: Mr. Craig T. Owens
P O Box 490
Clarkston, Wa. 99403

**RE: Flowery Trail / Project #DTFH70-01-C-00011**
**Source Compliance Testing / WFLHD Source**

Dear Craig:

As you know, representatives from MA DeAtley Construction, DeAtley Crushing Company, and Buddinger & Associates, who is M.A. DeAtley Construction's contracted Quality Assurance Engineers for the project, retrieved representative samples from the WFLHD Provided Source on August 22, 2002. These samples were retrieved from the area that was mined by DeAtley Crushing Company to produce the Base "D" materials for the project. The samples were tested to identify if, in fact, the WFLHD provided source materials met all of the "Contract Source Compliance Requirements" set forth to ensure that the contractor has sufficient materials available to produce finished materials that meet all other contract requirements. It was clearly identified through this testing that the source materials do not meet the requirements as the materials failed the Sodium Sulfate Test (AASHTO T 104).

After an extended period of time during which WFLHD has refused to meet and take true representative samples from the source area that was mined, M.A. DeAtley Construction has notified DeAtley Crushing Company, in letter of 11-26-02, that WFLHD's Linda Persoon had indicated WFLHD was running tests on some selective samples from some of the aggregate stockpiles. DeAtley Crushing Company strongly opposes this and would suggest to M.A. DeAtley Construction that the only reliable and acceptable test results for the source must come from the "source", and in the area mined. To truly identify the quality of the entire source, WFLHD would need to take numerous representative samples from the source and have all sample results show that the entire source does meet contract requirements. It is our understanding that, prior to offering this source for use on the project, WFLHD utilized only limited bore samples to test the source materials for contract compliance rather than doing any sort of real source investigation to ensure quality materials throughout the source. The possibility of WFLHD having "some" tests that meet contract requirements does not remove the fact that, at the very least, a portion of the actual source materials fail to meet contract requirements.

106

WFLHD provided this source to M.A. DeAtley Construction for use on this project, and in turn has the responsibility of ensuring that the "SOURCE" consistently yields materials meeting all source compliance requirements. It is not acceptable that WFLHD provide a source that yields some materials meeting contract requirements and some materials that do ~~not meet~~ contract requirements and in turn demands that M.A. DeAtley provide ALL materials meeting ALL contract requirements, regardless of whether or not all of the actual source materials meet those same contract requirements. It is our belief that, should WFLHD try to indicate that the source does in fact meet all contract requirements based on their selective stockpile tests, M.A. DeAtley should not recognize WFLHD's test results as representative because they cannot possibly represent the whole source, nor can they refute the failing tests already performed on actual source materials by your Quality Assurance Contractor. It is also our belief that WFLHD should fully compensate M.A. DeAtley Construction for all costs associated with the removal of this wrongfully rejected material as well as pay for all original aggregates produced plus all replacement aggregates.

You can reach me at our Lewiston office should you have any questions.

Sincerely,
DeAtley Crushing Company

Greg Graybill
Administrator

107

U.S. Department
of Transportation
**Federal Highway Administration**

FLOWERY TRAIL ROAD
WA PFH 158-1(2)
107 W Main
Chewelah, WA 99109
(509) 935-7175
FAX (509) 935-7188

Date: December 10, 2002

Refer to: DAC 14
Quality testing at rock source

Craig Owens, Project Manager
M. A. DeAtley Construction, Inc.
P.O. Box 490
Clarkston, WA 99403

WA PFH 158-1(2)
Flowery Trail Road
Contract Number DTFH70-01-C-00011

RE: DeAtley Crushing claim – Sodium Soundness testing results

Dear Mr. Owens:

The letter you forwarded from DeAtley Crushing, dated December 4, 2002, states M.A.DeAtley and DeAtley Crushing "retrieved representative samples from the WFLHD Provided Source on August 22, 2002. ...It was clearly identified through this testing that the source materials do not meet the requirements as the materials failed the Sodium Sulfate Test (AASHTO T 104)."

The contract names two "government-provided optional sources", Section 105.02 (a)(1). Gletty Pit is listed as available for select borrow and the other source is listed as available for surfacing material. "Material for use in the production of aggregates under Sections 309 and 401 may be obtained from the future rock cut between Stations 11+760 and 11+880 (Rock Quarry Source). Under Section 105.05 Use of Material Found in the Work, the contract does identify rock material located between Stations 18+700 and 18+900 as having been tested to meet the quality requirements for aggregates under Sections 301 and 309.

The contract documents (Geotechnical Report No 2-99) identify the two borings from which quality testing was done prior to the contract award. This document identifies the area as having deeper overburden thickness to competent rock than the areas either ahead or back on line. The rock bedding and jointing discontinuities are identified as erratic. The cross section of the boring locations does show 9 m of overburden over the competent rock. During construction I

108

found this report to be accurate. We were down 9 m into the cut when production of select topping, base, and select granular backfill material began. There was some blasting required on knobs of rock, but much of the material was excavated with a dozer. When production was done in 2001, we were 0-6 m above design grade.

In order to test a representative sample of the material crushed, the WFL lab ran tests on split production samples collected throughout production. I chose three samples, one each from the beginning, middle, and end of production.

| Sample # | Product | Date produced/sampled | Sodium Soundness (T104) |
|---|---|---|---|
| 2 | Select Topping | 11/01/01 | 6.68 |
| 9 | Base | 11/07/01 | 3.35 |
| 1 | Select Granular Backfill | 11/15/01 | 2.98 |

The more competent rock was found with increased depth. In the end the very hard rock near the bottom of the excavation required 100% blasting and was utilized as slope armor in 2002.

M.A. DeAtley chose not to use the government-provided optional source at Sta 11+760 to 11+880. Quality testing was done on the rock from Station 18+700 to 18+900 prior to bidding. The contract does not require the contractor to use this source, nor does it preclude the contractor from using any of the other rock cuts on the project with proper testing. The choice to use this location was the contractors.

M.A. DeAtley did take productions samples from the belt during crushing. As required they did provide split samples to WFL. These samples represent the material crushed and are the ones we submitted for Sodium Soundness testing. I do not consider samples taken outside the roadway prism after construction to represent the material crushed.

Linda Persoon
[signature]
Project Engineer

cc: Central files, Brent Coe
Project files

109

**M.A. DEATLEY CONSTRUCTION, INC.**

P.O. Box 490 • Clarkston, WA 99403 • 509-751-1580 • Fax 509-751-1922

December 12, 2002

Linda M Persoon, Project Engineer
Federal Highway Administration
P.O. Box 1220
107 W. Main
Chewelah, WA 99109

Ref: W A PFH 158-1(2) Flowery Trail Road

Dear Linda,

We are forwarding a letter M.A.DeAtley received today from DeAtley Crushing with concerns to the Source Compliance Testing. M.A.DeAtley shares the same concerns addressed in DeAtley Crushing's letter.

M.A.DeAtley would like to set up a meeting with WFLHD and DeAtley Crushing to follow up with the potential claim and questions that arise on the source compliance issue.

M.A.DeAtley can be reached in our Clarkston office if you have any questions.

Sincerely,

M.A.DeAtley Construction Inc.

Craig T. Owens
Project Manager

Cc: Brent Coe



110

# DeAtley Crushing Company

4307 Snake River Avenue • P.O. Box 759 • Lewiston, Idaho 83501 • 208-743-6550 • Fax 208-743-6474

RECEIVED

December 12, 2002

M. A. DeAtley Construction Company
Attn: Mr. Craig T. Owens
P O Box 490
Clarkston, Wa. 99403

**RE: Flowery Trail / Project #DTFH70-01-C-00011**
**Source Compliance Testing / WFLHD Source**

Dear Craig:

DeAtley Crushing Company is in receipt of a copy of the WFLHD letter of 12-10-02, authored by Linda Persoon, regarding Sodium Sulfate tests results on select materials from last years production of Base "D" aggregate. This comes as no surprise to us as both M.A. DeAtley Construction and DeAtley Crushing Company had anticipated what WFLHD would do. Again, WFLHD has attempted to avoid the real area of concern, which is the source. Simply put, WFLHD's results could not possibly be held as representative of the entire source, cannot refute the failure of actual source materials, and therefore, are meaningless. The samples retrieved on August 22nd and tested by Buddinger were taken from the exact area that was mined for production of the rejected aggregates. This cannot be refuted by WFLHD. WFLHD's refusal to accept its responsibility to assure the availability of quality materials throughout the government provided source and implying that M.A. DeAtley Construction was not forced to use this particular source is unacceptable. WFLHD's comments do not change the <u>fact</u> that WFLHD did provide the source.

While it is not the contractor's responsibility to explain why a material may, or may not, pass a specific source compliance test, we will offer speculation as to why the aggregate produced last year could possibly test different than actual materials tested directly from the actual source. As you know, the Sodium Sulfate Test (AASHTO T 104) is a weathering test designed to identify an aggregate sources' materials ability to withstand weathering, and the failing Sodium Sulfate test results would explain why the stockpiled materials have broken down or degraded somewhat over the winter and therefore having a marginally out of specification amount passing the #200 sieve. As previously stated, this test is a "source test". Materials are taken from the source and then, in laboratory conditions, broken down to differing size ranges which expose cracks, fissures, voids, or permeable pore spaces of the materials as found at the source. The material is then immediately exposed to the Sodium Sulfate chemical and wet/dry cycles, which is intended to replicate in a short period of time, due to the harshness of the chemical exposure, what will happen to the material while exposed to weathering, or differing conditions over time, the most severe being freeze thaw

cycles. Any aggregates tested from last years crushing would have been exposed to differing degrees of conditions or exposure for over a year now. Without knowing the full mineralogy of the aggregates, which would require at the very least a full petrographic analysis, one would have no way to determine if the breakdown or expansion meant to be simulated by the Sodium Sulfate test has already occurred in aggregates produced last year. It is clearly possible that the effects on, or expansion of, the aggregates' exposed cracks, fissures, voids, or permeable pore spaces meant to be simulated by the test have already occurred, at least to some degree, due to over a year of exposure to differing conditions and possibly more importantly the fact that all of these cracks, fissures, voids, or permeable pore spaces have been open and exposed for over a year. This is why the test is designed to be done on only source materials and why the materials are to be broken down in laboratory conditions and immediately exposed to the chemical and cycle test procedure.

We must remember that your contracted Quality Assurance Engineers, Buddinger & Associates, tested the aggregate after production, and verified that the materials did in fact meet all gradation specifications coming off the crushing plant. There has to be some explanation as to the change in the stockpiled aggregate from last year's production to the condition of the rock at present, that being an increase in fines; or breakdown. Buddinger & Associates test results from last year in conjunction with test results a year later prove that the materials have changed, or broken down for some reason.

WFLHD enjoyed the benefit of bidding prices reflecting a savings to the government do to the fact that materials that were required to be removed to achieve a road cut would be utilized in the construction of the road and in turn avoid bid prices reflecting the costly removal of this material, as well as the added trucking and production costs associated with getting the materials elsewhere. WFLHD is not dealing in good faith when it refuses to accept responsibility for its source, or attempts to indicate that the source is fine, while flatly ignoring the fact that the "source test" failed. WFLHD cannot justify accepting the anticipated cost savings associated with the use of this source; while at the same time expect the contractor to suffer financially because of the poor quality of the source. We believe M.A. DeAtley Construction should accept nothing less than full compensation from WFLHD for all costs associated with the materials produced, used, and/or rejected from this WFLHD source. DeAtley Crushing Company will provide full cooperation and assistance in prosecuting any potential claim by M.A. DeAtley Construction against the government.

You can reach me at our Lewiston office should you have any questions.

Sincerely,
DeAtley Crushing Company

Greg Graybill
Administrator

112

U.S. Department
of Transportation
**Federal Highway Administration**

FLOWERY TRAIL ROAD
WA PFH 158-1(2)
105 S 3rd St East
Chewelah, WA 99109
(509) 935-7175
FAX (509) 935-7188

Date: December 19, 2002

Refer to: DAC 149
Crushing claim

Craig Owens, Project Manager
M. A. DeAtley Construction, Inc.
P.O. Box 490
Clarkston, WA 99403

WA PFH 158-1(2)
Flowery Trail Road
Contract Number DTFH70-01-C-00011

RE: DeAtley Crushing claim – Sodium Soundness testing results

Dear Mr. Owens:

On December 16, 2002 I received your letter dated December 12, 2002 forwarding Greg Craybill's letter of the same date from DeAtley Crushing.

When base material was crushed in 2001 your quality control manager, Dusty Forsman worked with WFL to see that Budinger's personnel did collect production samples and give splits to WFL for assurance testing. During this time Forsman did maintain a flowchart as required by the contract. As test results became available we shared concerns when material was outside the gradation specification limits.

Production of 30101 Aggregate Base, Grading D took place on November 2, 5, 6, 7, 8, 9, and 12 under challenging weather conditions. Testing results document problems getting both the 9.5 mm and 4.75 mm sieves in spec. There was a wide range of values on these two sieves as the material was produced both below and above the allowable gradation range. Putting Budinger's testing results (18 samples taken) into QL Pay shows a pay factor of 0.82. The 4.75 mm sieve rated a 0.82 pay factor and the 9.5 mm sieve rated a 0.84 pay factor.

While screens were adjusted during production to find a balance for the upper sieves the 75 um sieve was consistently in the upper allowable range. The 75um sieve mean in QL Pay for Budinger's 18 tests is 7.93. On 9 samples sent into Vancouver for assurance testing the mean is

113

8.54 % passing the 75 um sieve. While the amount retained on the 75 um sieve was relatively consistent, it was in the upper allowable range (10.0 maximum).

In August DeAtley Construction superintendent spoke of building a pad to stockpile crushed materials from Sta 23+340 to 23+560. Later this idea was abandoned and they spoke of stockpiling in the area closed for the winter, Sta 20+680 to Sta 21+560. In the end the crushed material was stockpiled in a windrow a kilometer long on the roadway. The large area of the stockpile floor was muddy due to the rain at the time of crushing. The stockpile was exposed to splashed mud first from the construction equipment and later from general traffic. No attempt was made to cover the stockpile.

When acceptance testing was done this year, the first five samples (Lot 1) had a mean of 10.59 on the quality assurance testing (Budinger tested 12.42 on their splits).

It is my contention that the 30101 Aggregate Base, Grading D, crushed in 2001 failed to meet the requirements of 10% maximum on the 75 um sieve during on the grade acceptance testing because of poor stockpiling techniques resulting in contamination after the material was crushed in the upper range of the maximum allowable gradation.

Linda Persoon
Project Engineer

cc: Central files, Brent Coe
Project files

114

M.A. DEATLEY
CONSTRUCTION, INC.

P.O. Box 490 • Clarkston, WA 99403 • 509-751-1580 • Fax 509-751-1922

December 20, 2002

Brian Wilsey, Vice President
DeAtley Crushing Company
P.O. Box 759
Lewiston, Idaho 83501

Ref: W A PFH 158-1(2) Flowery Trail Road

Dear Brian;

We are forwarding the letter we received from the FHWA dated December 20, 2002. We would like DeAtley Crushing to respond to gradation and testing paragraphs. M.A.DeAtley will respond to the stockpile paragraph.

This should help prove your case since all the gradations have changed from last November when the material was produced. If you look at the production gradations from last November and compare them to the gradations taken off the roadway there are differences in the upper gradations also. Hopefully with this research and documentation you can prove that the material broke down through the winter.

The FHWA did not address the issue that DeAtley Crushing addressed in your last correspondence. We had also asked for a meeting between DeAtley Crushing, M.A.DeAtley and the FHWA to discuss this potential claim with no response.

When you respond we will submitt both letters of response and request another meeting with the FHWA.

Sincerely,

M.A.DeAtley Construction Inc.

Craig T. Owens
Project Manager



115

# DeAtley Crushing Company

4307 Snake River Avenue • P.O. Box 759 • Lewiston, Idaho 83501 • 208-743-6550 • Fax 208-743-6474

December 23, 2002

M. A. DeAtley Construction Company
Attn: Mr. Craig T. Owens
P O Box 490
Clarkston, Wa. 99403

**RE: Flowery Trail / Project #DTFH70-01-C-00011**
**Agg Base "D" / WFLHD Source**

Dear Craig:

DeAtley Crushing Company is in receipt of a copy of the WFLHD letter of 12-19-02, authored by Linda Persoon, regarding the Aggregate Base Grading "D" produced last year for the above mentioned project. Again, Linda avoids the real area of concern, which is the source of the materials. This WFLHD provided source has failed the Sodium Sulfate Test (AASHTO T-104) which is a required source compliance test to insure quality materials are available to the contractor.

WFLHD has clearly acknowledged the fact that the materials produced by DeAtley Crushing Company from this source did, in fact, meet contract gradation specifications. WFLHD has also clearly acknowledged the fact that the materials have showed a considerable change over the winter with regards to the gradation of the materials. A look at the gradation of the materials initially placed on the roadway shows a change in the gradation of the material from the upper sieves on down. We do not have any knowledge of how M.A. DeAtley Construction may, or may not have, taken care of the stockpiles after we produced the materials. Of more concern is that WFLHD is again purposely avoiding the fact that the source they provided does not guarantee materials that assure M.A. DeAtley Construction the opportunity to meet contract specifications on the roadway.

You can reach me at our Lewiston office should you have any questions.

Sincerely,
DeAtley Crushing Company

Greg Graybill
Administrator

116

# DeAtley Crushing Company

4307 Snake River Avenue • P.O. Box 759 • Lewiston, Idaho 83501 • 208-743-6550 • Fax 208-743-6474

RECEIVED
DEC

December 23, 2002

M. A. DeAtley Construction Company
Attn: Mr. Craig T. Owens
P O Box 490
Clarkston, Wa. 99403

RE: Flowery Trail / Project #DTFH70-01-C-00011
Agg Base "D" / WFLHD Source

Dear Craig:

DeAtley Crushing Company is in receipt of a copy of the WFLHD letter of 12-19-02, authored by Linda Persoon, regarding the Aggregate Base Grading "D" produced last year for the above mentioned project. Again, Linda avoids the real area of concern, which is the source of the materials. This WFLHD provided source has failed the Sodium Sulfate Test (AASHTO T-104) which is a required source compliance test to insure quality materials are available to the contractor.

WFLHD has clearly acknowledged the fact that the materials produced by DeAtley Crushing Company from this source did, in fact, meet contract gradation specifications. WFLHD has also clearly acknowledged the fact that the materials have showed a considerable change over the winter with regards to the gradation of the materials. A look at the gradation of the materials initially placed on the roadway shows a change in the gradation of the material from the upper sieves on down. We do not have any knowledge of how M.A. DeAtley Construction may, or may not have, taken care of the stockpiles after we produced the materials. Of more concern is that WFLHD is again purposely avoiding the fact that the source they provided does not guarantee materials that assure M.A. DeAtley Construction the opportunity to meet contract specifications on the roadway.

You can reach me at our Lewiston office should you have any questions.

Sincerely,
DeAtley Crushing Company

Greg Graybill
Administrator

117

**M.A. DEATLEY**
**CONSTRUCTION, INC.**

P.O. Box 490 • Clarkston, WA 99403 • 509-751-1580 • Fax 509-751-1922

January 13, 2003

Linda M Persoon, Project Engineer
Federal Highway Administration
P.O. Box 1220
107 W. Main
Chewelah, WA 99109

Ref: W A PFH 158-1(2) Flowery Trail Road

Dear Linda,

We are forwarding a letter M.A.DeAtley received on December 23, 2002 from DeAtley Crushing with concerns to the letter from WFLHD Dated 12/19/02 Source Compliance Testing. M.A.DeAtley shares the same concerns addressed in DeAtley Crushing's letter.

In reference to your letter dated December 19, 2002 the WFLHD stated that because of poor stockpiling techniques resulting in contamination after the material was crushed in the upper range of the maximum allowable gradations. Even if conditions were extreme in the area the stockpiles were placed the samples we took from the stockpiles along the roadway and at station 18+600 were from the middle of the stockpile, which was uncontaminated. This showed the same results that both Budinger and the WFLHD test showed. The gradation changed through the nine month time period from when it was manufactured until placed on roadway.

The test results M.A.DeAtley, Budinger and DeAtley crushing took from the source clearly shows the sodium sulfate soundness test (AASHTO T- 104) failing. The material was taken from the source using an excavator and supervised by M.A.DeAtley, Budinger and DeAtley crushing, WFLHD chose not to have a representative watch the sample being pulled. Budinger did pull and split the sample, which the WFLHD refused the split and said they will use the aggregate D material that was crushed for their samples.

We are still asking for compensation for our subcontractor DeAtley Crushing and the hardships M.A.DeAtley construction encountered due to the 30301 Aggregate base D breaking down.

We would like to set up a meeting with WFLHD and DeAtley Crushing to follow up with the potential claim and questions that arise on the source compliance issue. Our goal as a contractor would be to reach an agreement that benefits both parties without filing a claim.

M.A.DeAtley would like a response by January 17, 2003. We can be reached in Clarkston at (509-751-1580) if you have any questions.

Sincerely,

M.A.DeAtley Construction Inc.

Craig T. Owens
Project Manager

Cc: Brent Coe

119

U.S. Department
of Transportation
**Federal Highway
Administration**

FLOWERY TRAIL ROAD
WA PFH 158-1(2)
105 S 3rd St East
Chewelah, WA 99109
(509) 935-7175
FAX (509) 935-7188

Facsimile:

Date: January 22, 2003

Refer to: DAC 156
Crushing claim, 1/22/03

Craig Owens, Project Manager
M. A. DeAtley Construction, Inc.
P.O. Box 490
Clarkston, WA 99403

WA PFH 158-1(2)
Flowery Trail Road
Contract Number DTFH70-01-C-00011

RE: DeAtley Crushing claim

Dear Mr. Owens:

On January 16, 2003 I received your letter dated January 13, 2003 along with the attached letter from Greg Graybill dated December 23, 2002. DeAtley Crushing's letter of December 23, 2002 states: "*WFLHD has clearly acknowledged the fact that the materials produced by DeAtley Crushing Company from this source did, in fact meet contract gradation specifications.*" I do not agree with this statement.

Gradation test results during crushing were highly variable. Inputting your production test results (Buddinger) into QL Pay resulted in rejected material with a pay factor of 0.82 (see attached). While WFLHD expressed concern to you with the test results at the time, since acceptance is based on testing during placement of the material, no action was taken by the Government.

Later, when the issue of material source quality was raised, the Government took representative samples from the actual material crushed (production sample splits) and tested for sodium sulfate soundness loss. None of the samples tested by the Government showed a problem nor did they confirm the failing test result that you received. Since the samples the Government took were taken from the produced material, the test results are reflective of the quality of the

120

material you produced. Your one sample was taken from material ~~that~~ was not used to produce the aggregate and since the Government was not given the opportunity to witness the taking of the sample, we do not really know where it came from. Therefore, we do not have confidence in your one test result.

You have asked us to pay for the additional costs associated to remove the 30101 material and reproduce and place new 30101. At this time you have not presented any information that would cause us to agree with your request. I do not want to mislead you into thinking that we can reach a settlement, however if you would still like to meet to discuss this issue please contact me at 360-619-7929.

Linda Persoon
Linda Persoon
Project Engineer

cc: Central files, Brent Coe
Project files

QL-PAY 4.00 QUALITY LEVEL ANALYSIS & PAY FACTOR COMPUTATIONS Page 1

Mon Dec 16 09:56:19 2002 Western Federal Lands Highway Division

Project Name: Flowery Trail (2) Item Number: claim
Project Number: WA PFH 158-1(2) Lot Number: 1
Project ID: DTFH70-01-C-00011 Lab: Engr's Field Lab

| Quality Charac-teristic | TV | Allowable Devia-tion | Category | Mean | Standard Devia-tion | Est. no. Samples | Actual no. Samples | Quality Level | Current Pay Factor |
|---|---|---|---|---|---|---|---|---|---|
| 9.5mm | 63.73 | 7 | 1 | 63.73 | 7.376 | 18 | 18 | 34 | 0.84 |
| 4.75mm | 40.59 | 6 | 1 | 40.59 | 6.482 | 18 | 18 | 36 | 0.82 |
| 425µm | 15.80 | 4 | 2 | 15.80 | 2.957 | 18 | 18 | 18 | 1.00 |
| 75µm | 10 | max | | 7.93 | 1.526 | 18 | 18 | 9 | 1.01 |

TESTING COMPLETED
FINAL PAY FACTOR: 0.82

Lot Terminated: Corrective Action Required

Production – Process Control
DeAtley testing
2001

122

Mon Dec 16 09:56:19 2002 Wes[illegible]h Federal Lands Highway Division

Project Name: Flowery Trail (2) Item Number: claim
Project Number: WA PFH 158-1(2) Lot Number: 1
[illegible]ject ID: DTFH70-01-C-00011 Lab: Engr's Field Lab

** ACCEPTANCE PARAMETERS **

| Quality Characteristic: | 9.5mm | 4.75mm | 425µm | 75µm |
|---|---|---|---|---|
| Target Values: | 63.73 | 40.59 | 15.80 | 10 |
| Allowable Deviation: | 7 | 6 | 4 | max |
| Est. No. Tests: | 18 | 18 | 18 | 18 |
| Category: | 1 | 1 | 2 | |
| Actual No. Samples: | 18 | 18 | 18 | 18 |

** TEST RESULTS **

| Sample [illegible]mber | 9.5mm | 4.75mm | 425µm | 75µm |
|---|---|---|---|---|
| 1 | 55.7 | 34.2 | 13.7 | 6.9 |
| 2 | 57.8 | 38.8 | 18.5 | 9.0 |
| 3 | 73.1 | 45.4 | 16.8 | 8.0 |
| 4 | 51.5 | 29.7 | 12.8 | 6.3 |
| 5 | 65.8 | 40.2 | 13.0 | 6.4 |
| 6 | 79.7 | 57.3 | 24.2 | 12.1 |
| 7 | 64.9 | 41.8 | 15.9 | 8.1 |
| 8 | 76.8 | 51.9 | 19.8 | 10.2 |
| 9 | 61.0 | 36.8 | 14.0 | 7.1 |
| 10 | 61.6 | 39.1 | 15.5 | 7.2 |
| 11 | 65.9 | 40.8 | 15.8 | 8.1 |
| 12 | 59.0 | 43.1 | 18.6 | 9.4 |
| 13 | 64.9 | 39.5 | 14.0 | 6.9 |
| 14 | 56.3 | 33.6 | 13.2 | 7.0 |
| 15 | 57.6 | 34.6 | 12.9 | 6.3 |
| 16 | 67.2 | 42.4 | 14.2 | 7.0 |
| 17 | 61.9 | 38.8 | 15.3 | 7.8 |
| 18 | 66.5 | 42.7 | 16.2 | 8.9 |

123

# DeAtley Crushing Company

4307 Snake River Avenue • P.O. Box 759 • Lewiston, Idaho 83501 • 208-743-6550 • Fax 208-743-6474

February 26, 2003

M. A. DeAtley Construction Company
Attn: Mr. Craig T. Owens
P O Box 490
Clarkston, Wa. 99403

**RE: Flowery Trail / Project #DTFH70-01-C-00011**
**Agg Base "D" / WFLHD Source**

Dear Craig:

After our joint meeting with WFLHD on in Chewelah on the 14th, we would offer some follow up comments. We'd like to thank M.A. DeAtley Construction for setting up the meeting and allowing both M.A. DeAtley Construction and DeAtley Crushing Company the opportunity to show WFLHD the evidence regarding the source face to face. Sadly, we are not surprised at the outcome of this meeting. It has become apparent that the WFLHD staff operates under the guise that they can use as they see fit, or ignore when it's to their benefit, the contract guidelines and clear Special Contract Requirements, as well as the Federal Highway Administration Field Materials Manual. Mr. Coe flatly refused to answer direct questions put to him on numerous occasions. As was stated previously by DeAtley Crushing Company, we do not believe that WFLHD will acknowledge the truth or treat the contractor fairly unless forced to do so through a claim by M.A. DeAtley Construction.

We would like to recap the meeting points that we see as all important. All parties are in agreement that the stockpiled materials have broken down since being produced and stockpiled. Quite simply, the gradation has changed throughout the sieve ranges. This is evidenced by the comparison of the gradation verification tests done during or shortly after production, and the battery of tests performed on the same materials a year later. While Brent Coe did not appear to want to hear the proof, he admitted himself at the meeting that the aggregates in pile had broken down. This was heard by all in attendance. WFLHD was provided with the reasons why testing finished products by use of the Sulfate Soundness test method as a way to determine if the source meets contract requirements is not reliable or proper procedure, not the least important of which would be the fact

124

that the Special Contract Requirements clearly identify that the material is to be taken from the source and NOT from stockpiles of finished product. A representative from Buddinger and Associates, an independent laboratory, provided a clear analogy of the differences between "source testing" and testing of finished products.

After the discussion about what materials were to be used, and where the materials should be retrieved from, to ensure proper source testing, WFLHD then changed its position somewhat. At that point, Linda and Brent stated that WFLHD was "hanging its hat on the test results from the two test borings of the source". These test results apparently sufficiently indicated to WFLHD that the materials did meet, and would continue to meet, all contract source compliance requirements. After WFLHD said they were hanging their hat on the previous boring results, Brent was asked directly if WFLHD is absolutely responsible for making sure that the source met all contract requirements all the way through production of aggregates. Mr. Coe then correctly replied that "yes, WFLHD is responsible for the entire source". One fact has not changed since this debate started. The Source failed the Sodium Sulfate Soundness test.

We would like to offer M.A. DeAtley the following information derived from and quoted exactly as stated in the Federal Highway Administration Field Materials Manual.

*"1.0 POLICY STATEMENT*

***.......The sampling and testing methods contained in this manual will be used for all projects awarded under the Standard Specifications for Construction of Roads and Bridges on Federal Highway Projects, (FP-85 and later editions), unless otherwise specified in the Special Contract Requirements."***

*"4.0 MATERIAL SOURCES*

***......When the material source is shown on the plans or described in the special contract requirements, the Government assumes responsibility that, with reasonable performance, the Contractor will be able to obtain sufficient acceptable material.....***

***......The Government assumes the responsibilities for such characteristics as soundness, abrasion, stripping resistance of the aggregate and the quantity of the source.....***

***......During crushing operations the Project Engineer should submit samples of aggregate to confirm the quality of the material and to make certain that the material still meets the requirements for soundness, abrasion, stripping, etc.....***

***......If a designated source does not contain a sufficient quantity of quality material, the Government is responsible for providing another source.....***

125

*……The Contractor will be compensated for increased costs incurred in producing material from a new source upon failure of the designated source. This additional compensation may include the cost of equipment moves and setups, additional haul, ~~and~~ additional costs, if any, producing the material……*

As you know, WFLHD's engineers did not retrieve and test any source materials during crushing operations as is required to ensure that the source provides quality material throughout. What is more alarming is the fact that WFLHD didn't follow through with its own self imposed obligation to ensure availability of quality source material even after it was reported to them that the source had failed a source compliance test. The situation degrades from alarming to unbelievable when a person understands that after being notified that the source failed, and then being requested, in writing, to jointly sample the source on numerous occasions, WFLHD has refused to do just that for over six months.

It is clear that WFLHD is not operating within its own rules, guidelines, or contract requirements. We see no reason to believe that WFLHD will willingly change its course in this instance; therefore we believe the only way that the contractors will be fairly compensated will be through the filing of a claim by M.A. DeAtley.

You can reach me at our Lewiston office should you have any questions.

Sincerely,
DeAtley Crushing Company

Greg Graybill
Administrator

126

# DeAtley Crushing Company

4307 Snake River Avenue • P.O. Box 759 • Lewiston, Idaho 83501 • 208-743-6550 • Fax 208-743-6474

January 29, 2003

M. A. DeAtley Construction Company
Attn: Mr. Craig T. Owens
P O Box 490
Clarkston, Wa. 99403

**RE: Flowery Trail / Project #DTFH70-01-C-00011**
**Agg Base "D" / WFLHD Source**

Dear Craig:

DeAtley Crushing Company is in receipt of a copy of the WFLHD letter of 1-22-2003, authored by Linda Persoon, regarding the Aggregate Base Grading "D" produced in 2001 for the above mentioned project. Again, WFLHD conveniently avoids the problem. Linda states that WFLHD did not have the opportunity to witness the retrieval of the source samples. This, as we all know, is absolutely untrue. WFLHD was asked to be there to take splits and WFLHD refused to acknowledge what was taking place. WFLHD Project Engineers, including Linda, actually drove by and saw the samples being taken and kept going so that they could not be held to witnessing the samples being taken from the source. WFLHD has also conveniently stated again that they can rely on the test results from Sodium Sulfate Tests run on aggregates a year after production and refuses to acknowledge that this is a SOURCE TEST. WFLHD, for months now, has refused to meet at the SOURCE to take samples of the source materials in the area that was mined. M.A. DeAtley might ask WFLHD to explain exactly how the Sodium Sulfate test works and exactly what is occurring during the test. DeAtley Crushing Company pointed out some of the reasons that this is designed and shown in the Contract Specifications as a SOURCE TEST only, with materials for testing being taken from the SOURCE. It seems that WFLHD only adheres to the contract requirements when they feel it is beneficial for them to do so. This WFLHD provided source has failed the Sodium Sulfate Test (AASHTO T-104) which is a required source compliance test to insure quality materials are available to the contractor, period.

127

Linda states that the fluctuations which occurred on two sieves created an overall pay factor of .82, using the Statistical Analysis for payment, and follows with a statement about WFLHD being concerned at that time but no action was taken. We would ask what "action" might she be referring to that the government would have taken? These materials were ~~within~~ contract guidelines and tolerances. We would point out that production testing is not the point of statistical analysis for pay factor as we are sure Linda is aware. Should WFLHD decide that they wish to change the statistical analysis of aggregates for pay factor to the crusher belt rather than off of the road for future contracts, we would be inclined to agree with that move, and in fact, would welcome it. That, however, is not the case here and WFLHD's comments about the .82 pay factor have no meaning in this situation. WFLHD has all of the information in hand, in the form of Process Quality Control tests that Linda alluded to in her letter, to identify factually that the material was produced within the contract allowable broadband tolerance specifications. In eighteen tests performed by Buddinger there were only two instances where any broadband limits were exceeded, with only one screen exceeding limits. It should be noted as well that the same tests that Linda alludes to in her letter clearly show that the amount passing the #200 screen is, without doubt, within contract requirements. The materials were produced and supplied to M.A. DeAtley within the contract specifications; therefore DeAtley Crushing Company had fulfilled its contract.

WFLHD has provided M.A. DeAtley Construction a faulty source and has refused to prove otherwise. WFLHD has now indicated that the areas used for stockpiles and the fact that the stockpiles were not protected over the winter is the reason for the aggregate failure. Neither of these issues is the responsibility of DeAtley Crushing Company. M.A. DeAtley Construction gave DeAtley Crushing Company the order to crush where we did and what material to crush. We provided materials that met the contract specifications when the materials left the crushing plant. If the stockpiled materials became contaminated due to the fact that M.A. DeAtley Construction could not utilize the stockpile area that it had planned to use and had to use less attractive stockpiling areas, this is of no fault of DeAtley Crushing Company, and we will not be held responsible.

It is our belief that WFLHD will continue to stonewall M.A. DeAtley Construction while refusing to acknowledge the facts. It is our belief that WFLHD will not treat the contractor fairly in this instance unless forced to do so through a claim by M.A. DeAtley Construction against the government. We have strongly urged M.A. DeAtley Construction to, at the very least, seek comments and advice from legal council, whether it is in house or out, because of our belief that WFLHD will not act fairly unless forced to do so. We are not interested in further discussions involving WFLHD on the issue as we believe it is pointless.

To summarize, we contracted with M.A. DeAtley to provide crushing services that would provide M.A. DeAtley Construction aggregates that meet the contract gradation specifications when produced and provided to M.A. DeAtley. M.A. DeAtley Construction is, per our contract, responsible for ALL stockpile site preparation. M.A. DeAtley did not provide DeAtley Crushing Company adequate room for stockpiling at the crusher, nor did it provide proper preparation of stockpile area. The materials were "provided" to M.A. DeAtley when they left the final belt as M.A. DeAtley was responsible for the materials from that point on. It was M.A. DeAtley

128

Constructions responsibility to exercise proper care of the materials after they were produced and supplied by DeAtley Crushing Company. To ensure that M.A. Deatley Construction's project could be completed without delay, DeAtley Crushing Company interrupted its schedule in 2002 to move a crushing plant back in to produce additional aggregates at the request of M.A. DeAtley. We notified M.A. DeAtley, on July 30, 2002, that we were not responsible for any changes occurring in M.A. DeAtley's stockpiles that were left open and unprotected over the winter. DeAtley Crushing Company fulfilled its contract when initial crushing services were completed in 2001 and must now demand full payment in the amount of $113,610.00 which was invoiced for our Re-Crushing services.

M.A. DeAtley contracted with Buddinger and Associates to provide testing services for this project. We would assume that M.A. DeAtley Construction has in its possession the test summaries from Buddinger that provide a clear comparison of the gradation of the aggregates when produced compared to the gradation of the aggregates over a year later. It is very clear that the entire pile has broken down to a significant degree.

You can reach me at our Lewiston office should you have any questions.

Sincerely,
DeAtley Crushing Company

Greg Graybill
Administrator

129

WESTERN FEDERA[illegible]ANDS HIGHWAY DIVISION
610 E[illegible] FIFTH STREET
VANCOUVER, WA 98661-3801

U.S. Department
of Transportation

Federal Highway
Administration

March 7, 2003

FAX 509-751-1922

Attn: Mr. Lou Ruchert
M. A. DeAtley Construction, Inc.
P.O. Box 490
Clarkston, WA 99403

Phone # ~~503-399-5275~~
~~399-5749~~
360-619-7744
7700

RE: WA PFH 158-1(2)
Flowery Trail Road
Contract Number DTFH70-01-C-00011

Mr. Ruchert,

On February 14, 2003 Linda Persoon and I met with you, Craig Owens, Steve Smithermen (all of MA Deatley, Inc.) Greg Graybill, Mike Osbon and Brian Wilseyfrom DeAtley Crushing and Scott Walters from Budinger and Associates to discuss Item 30101, Aggregate base grading D material, specifically the aggregate that was crushed in November 2001 and rejected in 2002 during acceptance testing on the project. During the meeting we discussed the merit and value of the source samples that Budinger obtained and tested for Sodium Sulfate Soundness in August 2002, after crushing for the project was completed, and the splits of the production samples that FHWA tested for Sodium Sulfate Soundness. At the meeting FHWA was provided with a summary of the production, stockpile and acceptance sample test results for gradation.

As discussed in the meeting, representatives from MA DeAtley, DeAtley Crushing and Budinger obtained four samples, two from the north side and two from the south side of the finished rock cut from Station 18+700 to 18+900 on August 23 and 30, 2002 (approximately nine months after the excavation and crushing was completed). The two north samples were combined into a composite sample (north #3) and the two south samples were combined into a composite sample (south #2). For the north #3 sample you received a Sodium Sulfate Soundness loss result of 1.1% on the course aggregate and 10.2% on the fine aggregate. For the south #2 sample you received a Sodium Sulfate Soundness loss result of 7.8% on the course aggregate and 19.1% on the fine aggregate.

From the February 14, 2003 meeting and all the information you have provided to date, your position, as I understand it, is that the material source listed in the contract (name or location of source) does not consistently provide quality material. This position is primarily based on the Sodium Sulfate Soundness loss of 19.1% for the fine aggregate portion of the south #2 sample. You have further substantiated your position by the change in gradation of the production and acceptance samples.

130

The Governments position is that a 19.1% loss on one fine aggregate sample does not prove that the source is of a questionable quality or that the source produces crushed aggregate that is highly susceptible to degradation in the stockpile.

The basis for the Government's position is summarized below:

- During the crushing process, DeAtley Crushing was scalping approximately 70% of the fine material fed to the crusher. This scalping process would have removed a substantial portion of any fine material, the portion of the source that has the higher Sodium Sulfate Soundness loss.
- The Government tested three production samples from various portions of the aggregate production run and the Sodium Sulfate Soundness loss results were 2.98%, 3.35% and 6.68%, significantly below the maximum loss of 12% allowed in the contract.

One issue that has been brought up in support of stockpile degradation is with regards to the 25 mm (1 inch) rock. You have asked, "what happened to the 1" rock?" The production test results averaged 99.81% passing the 25 mm sieve. The acceptance test results averaged 100% passing the 25 mm sieve. The percent passing the 25 mm sieve does not differ significantly between the production and acceptance test results.

Below is a table that summarizes the results of the Government's verification testing of the acceptance sample splits for lots 1 and 2. Lot 1 averaged 99.86% passing the 25 mm sieve and lot 2 averaged 99.57% passing the 25 mm sieve. These results are well within allowable tolerances between two labs. These results are also comparable to the average production result (from DeAtley Crushing) of 99.81%. This does not provide evidence that the material is breaking down.

Item 30101, Aggregate base grading D
WFLHD Lab results of acceptance sample splits

Lot 1

| Sample No. | Sample Date | 37.5 mm | 25 mm | 9.5 mm | 4.75 mm | 425 um | 75 um | SE/P |
|---|---|---|---|---|---|---|---|---|
| 1 | 8/19/02 | 100.0 | 100.0 | 70.4 | 48.3 | 17.6 | 9.7 | 1.441 |
| 2 | 8/19/02 | 100.0 | 100.0 | 61.4 | 48.6 | 18.3 | 10.3 | 1.331 |
| 3 | 8/20/02 | 100.0 | 99.8 | 67.9 | 47.0 | 19.5 | 10.8 | 1.173 |
| 4 | 8/20/02 | 100.0 | 99.6 | 62.1 | 41.7 | 18.0 | 9.9 | 1.145 |
| 5 | 8/21/02 | 100.0 | 99.9 | 71.8 | 51.5 | 22.7 | 12.2 | 1.022 |
| | Average = | 100 | 99.86 | 66.72 | 47.42 | 19.22 | 10.59 | 1.222 |

Lot 2

| Sample No. | Sample Date | 37.5 mm | 25 mm | 9.5 mm | 4.75 mm | 425 um | 75 um | SE/P |
|---|---|---|---|---|---|---|---|---|
| 1 | 8/21/02 | 100.0 | 98.6 | 58.9 | 39.2 | 17.0 | 9.4 | 1.163 |
| 2 | 8/22/02 | 100.0 | 99.5 | 56.6 | 38.0 | 17.1 | 9.4 | 1.105 |
| 3 | 8/22/02 | 100.0 | 100.0 | 70.6 | 49.5 | 19.8 | 10.8 | 1.229 |
| 4 | 8/22/02 | 100.0 | 99.8 | 70.1 | 49.1 | 19.7 | 10.8 | 1.201 |
| 5 | 8/27/02 | 100.0 | 99.6 | 66.0 | 46.5 | 21.8 | 12.2 | 0.941 |
| 6 | 8/27/02 | 100.0 | 99.9 | 63.9 | 43.5 | 21.2 | 12.2 | 0.833 |
| | Average = | 100 | 99.57 | 64.35 | 44.30 | 19.43 | 10.80 | 1.079 |

Upon review of the information you have provided and the concerns you have raised we do not agree that the gradation problems were caused by the quality of the rock in the material source. The percent of fines can be controlled in the crushing and screening process. The tests we have do not support a conclusion that the high amount of fines were caused by degradation of the rock. Other factors, such as the handling of the crushed and screened product and the addition of fines from road use over the winter appear as more likely reasons for the high percent of fines.

Accordingly, we do not believe that an additional equitable adjustment payment is due. If you have any questions please contact me at 360-619-7744.

Brent L. Coe
Brent L. Coe
Construction Operations Engineer

cc: Central files
Project Engineer
Construction Engineer

132

WESTERN FEDERAL LANDS HIGHWAY DIVISION
610 EAST FIFTH STREET
VANCOUVER, WA 98661-3801

U.S. Department
of Transportation

Federal Highway
Administration

May 6, 2003

FAX 509-751-1922

Attn: Mr. Craig Owens
M. A. DeAtley Construction, Inc.
P.O. Box 490
Clarkston, WA 99403

RE: WA PFH 158-1(2)
Flowery Trail Road
Contract Number DTFH70-01-C-00011

Mr. Owens,

I received your April 30, 2003 letter requesting additional compensation for extra work incurred to replace the item 30101 aggregate base, grading D material that was rejected in 2001. While your letter is addressed to me your subject line is "Request for Contracting Officer decision" and you state "The Contracting Officers decision on or prior to May 16, 2003 would be appreciated." Because of these statements I need further clarification as to whether you want me to review the issue again or if you are requesting a Contracting Officers decision under FAR Clause 52.233-1 DISPUTES (DEC 1998) ALTERNATE I (DECEMBER 1991).

If you are requesting a Contracting Officers decision you need to address your request to Mr. William Parsons, Contracting Officer, 610 East Fifth Street, Vancouver, Washington 98661. Since the amount you are claiming is over $100,000 you also need to include in that request the certification statement and support data as outlined in FAR Clause 52.233-1 (page C-60&61 of the contract).

If you have any questions please contact me at 360-619-7744.

Brent L. Coe

Brent L. Coe
Construction Operations Engineer

cc: Project files
Linda Persoon, Project Engineer
David K. Heckman, Construction Engineer
William Parsons, Contracting Officer

133

WESTERN FEDERAL LANDS HIGHWAY DIVISION
610 EAST FIFTH STREET
VANCOUVER, WA 98661-3801
(360) 619-7700 FAX: (360) 619-7846

U.S. Department of Transportation
Federal Highway Administration

June 2, 2003

Faxed to 509 751 1922
2:10pm 6/2/03 EMF

Mr. Craig Owens
Project Manager
M.A. DeAtley Construction, Inc.
P.O. Box 490
Clarkston, WA 99403

Re: Request for Contracting Officer's Decision on
WA PFH 158-1(2) Flowery Trail Road

Dear Mr. Owens:

We have received your May 16, 2003 "Request of Contracting Officers Decision" on the above noted project. The subject line of your letter states a request for a contracting officer's decision and the end of your letter states your goal to resolve this issue and not file a claim. As we discussed May 29, 2003 you feel you are past the point of resolving this issue within the Construction Branch of our office and do intend to file a claim asking for a Final Contracting Officer's Decision.

Since your claim is over $100,000.00 you will need to certify the claim. The necessary certification can be found in the Disputes clause of the FAR, specifically at FAR 52.233-1 Disputes (Dec 1998) Alternate 1 (December 1991). This clause can be found on pages C-60 and C-61 of the Special Contract Requirements of the contract.

As we discussed, your claim submittal should include the facts of the issue you are claiming for and the support of those facts. You had asked for a copy of a claim filed by another contractor (with names blacked out) to use as an example in the preparation of your claim. I sorry to say I am unable to provide this. How you choose to present your claim is up to you. There is no set format or requirement for specific information. The claim needs to specify what the claim is, indicate the dollar amount that is being requested and include the support for the claim.

Your claim certification and the claim itself should be addressed to the Contracting Officer, William Parsons at the address in the letterhead. If you have any questions, please call me at 360-619-7931.

Sincerely yours,

Elizabeth M. Firestone
Contract Administration Engineer

cc (via e-mail): Linda Persoon, WFLHD
Brent Coe, WFLHD
William Parsons, WFLHD

BUCKLE UP AMERICA

134

August 11, 2003

Dorothy Adesko, FOIA Officer

Western Federal Lands Highway Division
610 East Fifth Street
Vancouver, WA 98661-3801

Ref: W A PFH 158-1(2) Flowery Trail Road

Dear Dorothy,

M.A.DeAtley Construction, Inc. is making a request for all testing reports for the above mentioned project locations boring log 28 station 18+850 11.5 m RT and boring log 29 station 11+850 5m LT. Under the Federal Freedom of Information Act. We will pay for any and all cost needed to receive this information.

M.A.DeAtley would like to be contacted as soon as possible to let us know how soon this information will be available. Please call Craig T. Owens at (509)-751-1580 ext. 40.

Sincerely,

Craig T. Owens
Project Manager
M.A.DeAtley Construction, Inc.

135