IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M.A. DeATLEY CONSTRUCTION, INC., | ) | Case No.: 041052C |
| | ) | (Judge Edward J. Damich) |
| | ) | |
| Plaintiff, | ) | **M.A. DEATLEY'S** |
| | ) | **RESPONSE TO** |
| vs. | ) | **DEFENDANT'S MOTION TO** |
| | ) | **DISMISS** |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

The Government has requested dismissal of a portion of M.A. DeAtley Construction, Inc.'s ("M.A. DeAtley") count one (good faith and fair dealing) and all of M.A. DeAtley's counts two (defective specifications), four (constructive change) and five (economic waste) for lack of jurisdiction. The crux of its argument is that M.A. DeAtley failed to specifically present these legal theories to the contracting officer for final decision. Contrary to this assertion, however, this Court has jurisdiction over these counts because the underlying operative facts were presented to the contracting officer. Therefore, Defendant's Motion to Dismiss must be denied.

## I. FACTS

The following facts are relevant to the response to the motion to dismiss. These facts were set forth in DeAtley's claim to the contracting officer.

1. On February 9, 2001, M.A. DeAtley was awarded Contract No. DTFH70-01-C-00011 to reconstruct a portion of Flowery Trail Road in Washington State. The Contract required crushing of 21,500 metric tons of Aggregate D base for the Project. To perform this crushing, M.A. DeAtley entered into a subcontract with DeAtley Crushing Company ("DeAtley Crushing"). (Complaint, ¶¶ 4-5); (Project Timeline in M.A. DeAtley's Certified Claim, p. 20-22 of **Exhibit A** to the Affidavit of Mark DeAtley In Support Of M.A. DeAtley's Motion For Summary Judgment, filed September 13, 2006).

2. The Class D aggregate source was selected by the Government and it was designated in the contract as an optional source for the contractors to use. (§ 105.05; Special Contract Requirements). For Government designated sources, the contract requires the Government to perform testing on the material to determine the quality and durability of the rock. (§ 703.05 Standard Specifications).

3. The contract further contains a Government-provided design for aggregate size and gradation. (§ 703-5, Table 703-2, Special Contract Requirements). The Standard Specifications contain a mix design range for each sieve size of aggregate. The Standard Specifications further contain tolerances outside of each sieve range. These tolerances provide that the material will still be accepted based upon statistical deviation

calculations, although the contractor's payment would be reduced. (§ 106.5 Standard Specifications, FP-96).

4. The Government revised the Standard Specification for the Flowery Trail Project. With respect to the fine material (i.e., the #200/75 micron sieve), the Government deleted the typical design range. Instead, the Government provided that the allowable amount of fine material would be capped at 10% maximum. There were no tolerances specifically stated for this specification requirement. Thus, the Government's specifications were defective because it failed to have criteria which would allow for normal degradation of this material after the crushing operation. (*Table 703-2A; Special Contract Requirements*); (Project Timeline in M.A. DeAtley's Certified Claim, p. 20-22 of **Exh. A** to the Aff. of DeAtley, filed September 13, 2006).

5. The Government approved the source and certified that the source "has been found to meet the materials requirements under Sections 301 and 309". (§105.05 Special Contract Requirements). See also (Project Timeline in M.A. DeAtley's Certified Claim, p. 20-22 of **Exh. A** to the Aff. of DeAtley, filed September 13, 2006).

6. In reliance upon Mr. Cook's observations and the assumption that the Government had performed the proper tests, M.A. DeAtley proceeded to crush over 20,000 tons of Class D aggregate material from the designated source. During crushing, the material was sampled and tested by an independent laboratory, which confirmed that the crushed sample met the contract gradation requirements. The material was placed in stockpiles for placement the following spring. (Complaint, ¶ 7); (Project Timeline in

M.A. DeAtley's Certified Claim, p. 20-22 of **Exh. A** to the Aff. of DeAtley, filed September 13, 2006).

7. Unfortunately, when the contractor returned to the project the following year, the contractor discovered that the material had degraded. When DeAtley began placing the material on the roadway, test results revealed that the material gradations had changed. The percentage of material in all sieve sizes, except the largest sieve had increased. The material had simply degraded to the point that the #200 sieve material was greater than the 10% maximum requirement. (Complaint, ¶ 8-10); (Project Timeline in M.A. DeAtley's Certified Claim, p. 20-22 of **Exh. A** to the Aff. of DeAtley, filed September 13, 2006).

8. In an exhibit to the Certified Claim, DeAtley Crushing summarized the situation as follows:

> *We would like to recap the meeting points that we see as all important. All parties are in agreement that the stockpiled materials have broken down since being produced and stockpiled. Quite simply, the gradation has changed throughout the sieve ranges. This is evidenced by the comparison of the gradation verification tests done during or shortly after production, and the battery of tests performed on the same materials a year later. While Brent Coe did not appear to want to hear the proof, he admitted himself at the meeting that the aggregates in pile had broken down. This was heard by all in attendance.*
>
> * * *
>
> *After WFLHD said they were hanging their hat on the previous boring results, Brent was asked directly if WFLHD is absolutely responsible for making sure that the source met all contract requirements all the way through production of aggregates. Mr. Coe then correctly replied that "yes, WFLHD is responsible for the entire source". One fact has not*

> *changed since this debate started. The Source failed the Sodium Sulfate Soundness test.*
>
> * * *
>
> *As you know, WFLHD's engineers did not retrieve and test any source materials during crushing operations as is required to ensure that the source provides quality material throughout. What is more alarming is the fact that WFLHD didn't follow through with its own self imposed obligation to ensure availability of quality source material even after it was reported to them that the source had failed a source compliance test. The situation degrades from alarming to unbelievable when a person understands that after being notified that the source failed, and then being requested, in writing, to jointly sample the source on numerous occasions, WFLHD has refused to do just that for over six months.*
>
> *It is clear that WFLHD is not operating within its own rules, guidelines, or contract requirements.*
>
> (**Exh. A,** p. 124-26 to Aff. of DeAtley, filed September 13, 2006).

9. The United States required M.A. DeAtley and DeAtley Crushing to remove the aggregate placed upon the roadway and to deliver new material. *(Complaint, ¶ 10).* Before doing so, the contractors offered to provide a credit to the Government for the Government to accept the material in place. The Government rejected the same. *(Complaint, ¶ 10).* Thus, the Government constructively changed the contract requirements. (Project Timeline in M.A. DeAtley's Certified Claim, p. 20-22 of **Exh. A** to the Aff. DeAtley, filed September 13, 2006).

10. On August 22, 2002, the Government issued a stop work order to the contractor's operation because of the failing tests. Faced with no viable option to bring the subject material into specification, the contractor was forced to remove the material

from the roadway and to move to a new material source and recrush. *(Complaint, ¶ 9-12)*. It is these recrushing costs and the costs of removing the degraded material which were incurred because the Government unreasonably insisted on strict compliance with the defective specifications. (Project Timeline in M.A. DeAtley's Certified Claim, p. 20-22 of **Exh. A** to the Aff. of DeAtley, filed September 13, 2006).

11. On September 18, 2003, M.A. DeAtley presented all the operative facts that formed the basis of its claim to the contracting officer in its certified claim and the accompanying exhibits. (**Exh. A** to the Aff. of DeAtley, filed September 13, 2006). When M.A. DeAtley filed its Complaint it asserted legal theories associate with its claim that were based on the same operative facts presented to the Contracting Officer. Therefore, this Court has jurisdiction over counts one, two, four and five.

## II. <u>ARGUMENT</u>

The Government fails to provide any legal authority that would support its argument that this Court does not have jurisdiction over M.A. DeAtley's counts one (good faith and fair dealing only), two (defective specifications), four (constructive change) and five (economic waste). In fact, this Court has jurisdiction over all claims and additional legal theories not specifically set forth in the claim to the contracting officer as along as the claims are similar to those presented and would rely on the same type of proof. Therefore, the Government's motion must fail.

It is true that this Court can only adjudicate claims over which it has jurisdiction. In order for this Court to have jurisdiction, the contractor must submit in writing to the

contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim. Croman Corp. v. United States, 44 Fed.Cl. 796, 800 (1999) citing Contract Cleaning Maintenance, Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987). This court has jurisdiction as long as the claim presented to the court and the claims presented to the contracting officer "arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery." Scott Timber Co. v. United States, 333 F.3d 1358, 1365 (Fed. Cir. 2003). This court has looked to whether the claims before it are similar to those presented to the contracting officer and would rely on the same type of proof. Timothy D. Peterson v. United States, 68 Fed.Cl.773, 777 (2005); Armour of America v. United States, 69 Fed. Cl. 587, 591 (2006).

In Scott Timber, a timber contractor brought suit contending that the Government breached timber sales contracts when the Government suspended the company's performance. Id. at 1360. In discussing jurisdiction under the Contracts Dispute Act, the Court held that jurisdiction existed over the timber company's claims even though it presented different legal theories of recovery. Id. at 1365. While the court recognized that an action brought under the CDA must be based on the same claim previously presented and denied by the contracting officer, it determined that it was not deprived of jurisdiction simply because the contractor asserts different legal theories for recovery. Id.

The Court of Federal Claims has reached the same conclusion in several other cases where the government has sought dismissal of arguments that may not have been

clearly raised in the contractor's claim. In Cerberonics, Inc. v. United States, 13 Cl. Ct. 415, 417-19 (1987), for instance, the court determined that it had jurisdiction over counts in complaint that were based on contract provisions not alleged in claim because all of contractor's claims before the court were based on same operative facts presented to contracting officer. Similarly, in ACE Constructors, Inc. v. United States, 70 Fed. Cl. 253, 266 (2006), the court found that it had jurisdiction over claims presented in the complaint that the government alleged were not presented in the claim because the contracting officer was on notice of issues; the theories were referenced, although not clearly, in requests for equitable adjustment; and the theories arose out of same operative facts and sought same relief as those presented in the claim.

The court has also found that it has jurisdiction over claims for which the facts were alleged in the claim even though the contractor's legal arguments may not have used the correct term of art. See Manuel Brothers, Inc. v. United States, 55 Fed. Cl. 8, 34 (2002) (court had jurisdiction over contractor's superior knowledge claims where it had alleged facts in claim to support theory even though it did not clearly articulate legal argument). c.f. Armour of America v. United States, 69 Fed. Cl. at 591 (where court found it had no jurisdiction over affirmative claims for breach of contract damages on the theory that government breached contract by issuing defective specifications or acting in bad faith when contractor claim only challenged government's default termination and requested conversion to termination for convenience) and Peterson v. United States, 68

Fed. Cl. at 777 (where the additional cause of action at the court was based on different facts and sought different relief.).

Here, M.A. DeAtley's counts one (good faith and fair dealing only), two (defective specifications), four (constructive change) and five (economic waste) meet the Scott Timber test in that they "arise from the same set of operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery." Put another way, they are similar to those presented to the contracting officer and would rely on the same type of proof. All of the counts stem from the same problems on the project relating to the crushed aggregate that were the subject of numerous meetings with the government and which were set forth in detail in M.A. DeAtley's certified claim and the attachments thereto. Accordingly, M.A. DeAtley's counts all arise from these operative facts that were presented to the Contracting officer in September of 2003. (See **Exh. A** to the Aff. DeAtley, filed September 13, 2006) and the different legal theories alleged in M.A. DeAtley's Complaint are all based upon these facts.

Defendant even acknowledges that M.A. DeAtley's allegation that the Government failed to provide a suitable source which is a basis for Count I was alleged in the claim. See Def. Motion at 6. Likewise, the claim set forth the facts on which M.A. DeAtley seeks recovery under Counts II, IV, and V. While DeAtley may not have specifically set forth those legal arguments in the claim, the essence of the claim -- that the Government failed to provide aggregate material as promised that met certain specifications and DeAtley suffered damages because of it -- is the same. The

contracting officer was on notice of those basic facts regardless of the precise nature of the legal argument in the claim. Accordingly, just as in Scott Timber, the Court should not be deprived of jurisdiction simply because the contractor asserts different legal theories in its Complaint. Indeed, the Court of Federal Claims recognizes that a contractor's legal theories might "sharpen between the time of the original claim and the time of trial." ACE Constructors, 70 Fed. Cl. at 267. In this case, DeAtley gave the contracting officer the factual basis to decide whether it was entitled to an adjustment in its claim. Thus, this Court has jurisdiction and the Government's Motion to Dismiss should be denied.

## III. CONCLUSION

Pursuant to the foregoing, Defendant's Motion to Dismiss should be denied.

DATED this 2nd day of October, 2006.

s/ JOHN C. BLACK
JOHN C. BLACK
10 N. Post Street, Suite 200
Spokane, WA 99201-0653
Telephone: (509) 455-8711
Fax: (509) 455-8734

Of Counsel:
J. Michael Littlejohn
Akerman Senterfitt Wickwire Gavin
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1801- fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of October, 2006, a copy of the foregoing *M.A. DeAtley's Response to Defendant's Motion to Dismiss* was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

/s/ JOHN C. BLACK
JOHN C. BLACK

wpdocs/1806/Rsp.MtnDismiss