IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M.A. DEATLEY CONSTRUCTION, INC., Plaintiff, | ) | |
| v. | ) | No. 04-1052C (Chief Judge Edward J. Damich) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Pursuant to Rules 1 and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully submits the following response in opposition to the motion for summary judgement filed by M. A. DeAtley Construction, Inc. In support of our response in opposition, we rely upon our proposed findings of uncontroverted facts, the declaration of Brent Coe, and the following brief. In summary, DeAtley's motion should be denied because genuine issues of material fact exist as to whether DeAtley included in its certified claim amounts for which it had already been paid, thereby rendering its certified claim false, and whether DeAtley, in filing its false certified claim, acted with the requisite intent.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUE

Whether the summary dismissal of the Government's counterclaims is warranted.

STATEMENT OF THE CASE

I. Nature of the Case

The case arises out of a February 9, 2001 contract awarded by the Western Federal Lands Highway ("WFL") Division of the Federal Highway Administration ("FWA") to M. A. DeAtley Construction, Inc. ("DeAtley") for work on the Flowery Trail Road project. The contract

required DeAtley to place a layer of aggregate base grading D ("aggregate") on the prepared surface of the roadbed, prior to paving the road with asphalt. The gravamen of DeAtley's complaint is that the rock crushed for that aggregate, from the Government-provided source, was not suitable for its intended purpose.

On January 4, 2006, after being granted leave to do so, the Government filed an amended answer to DeAtley's complaint, asserting affirmative defenses and counterclaims based upon the False Claims Act, 31. U.S. C. § 3729 et seq., the antifraud provision of the Contract Disputes Act ("CDA"), 41 U.S.C. § 604, and the Special Pleas in Fraud, pursuant to 28 U.S.C. § 2514.

On September 13, 2006, DeAtley filed a motion for summary judgment, seeking the dismissal of the Government's counterclaims.

II. Statement of Facts

For our statement of facts, we rely upon our proposed findings of uncontroverted facts, filed under separate cover.

## ARGUMENT

Summary Judgment Is Not Warranted Because There Are Disputed Issues Of Material Facts Regarding Whether DeAtley Overstated Its Damages In Its Certified Claim And Whether DeAtley In Certifying Its Claim Acted With The Requisite Intent

Summary disposition is appropriate only where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-52 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1837, 1390 (Fed. Cir. 1987. A material fact is one "that might affect the outcome of the suit under governing law." Anderson, 477 U. S. at 248. If the non-moving party produces sufficient evidence to raise a question as to the outcome of the case, the motion for summary judgment should be denied. Supermax, Inc. v United States, 35

Fed. Cl. 29, 37 (1996).

I. DeAtley Included Costs In Its Certified Claim For Which DeAtley Had Been Paid

DeAtley seeks dismissal of the Government's counterclaims based upon its contention that the Government has no evidence that DeAtley submitted a false or fraudulent claim. DeAtley's position is not well taken.

When confronted with a differing site condition, such as DeAtley claims it was, a contractor is only entitled to the additional amount it cost the contractor to perform the work caused by the existence of that condition. See FAR Clause 52.236-2.[1] Costs incurred for work that is required irrespective of the differing site condition is not compensable under that clause. That is, the differing site condition must cause the increase in the contractor's cost, in order for compensation to be allowed. See also, CEMS v. United States, 59 Fed. Cl. 168, 227 (2003) ("The calculation of the equitable adjustment is based upon the difference between the reasonable cost for performing the work as changed and the reasonable cost for performing the work according to the original contract specifications."). DeAtley's claim, that it is entitled to recover both its costs for the original work and for the replacement, or additional, work is "implausible in light of the unambiguous terms of the contract and other evidence" and may lead to liability under the False Claims Act and the Contract Disputes Act. See Commercial Contractors, Inc. v. United States, 154 F.3d 1357, 1366 (Fed. Cir. 1998).

DeAtley, in its summary judgment motion, has failed to demonstrate that there is no material issue of fact in dispute, so as to warrant summary judgement with respect to the

[1] FAR Clause 52.236-2(b) was incorporated into the contract at page C-2 of the contract, docket entries 62, 63, and 64

Government's counterclaims. On the contrary, we dispute the factual allegation made in DeAtley's motion that the claimed amount is accurate. In fact, we clearly demonstrated in our motion to amend our answer to the complaint, that DeAtley's own records, that were made part of its certified claim, provide unequivocal evidence that DeAtley improperly included costs it incurred in performing work that was required under the contract, work that was performed before the alleged differing site condition was discovered, and costs for which DeAtley had already been compensated.[2]

In our motion to amend, we clearly set forth the bases upon which we rely to prove that DeAtley overstated its claimed damages. For example, we demonstrated that DeAtley included amounts for both the initial production and placement of the rejected aggregate, and for the production and placement of the replacement aggregate. Specifically, DeAtley included costs for equipment and labor that were incurred for hauling and stockpiling in connection with the the initial crushing of the aggregate, that is, costs incurred between November 2, 2001, and November 13, 2001. The same types of costs are claimed for the additional work that was required to be performed in September 2002 in connection with the re-crushing of the aggregate to replace the rejected aggregate, aggregate that was rejected according to DeAtley because it had been produced from the unsuitable source provided to DeAtley by the Government.

DeAtley also included in its certified claim labor and equipment costs for placing aggregate on sections of the roadbed on which none of the rejected aggregate had been placed. It is clear that the work involved in removing the rejected aggregate from the roadbed upon which it

---

[2] See Defendant's December 23, 2005 Motion For Leave To Amend Its Answer To Assert Affirmative Defenses And Counterclaims , docket entry 27.

had been placed, and the placing of the replacement aggregate on that same section of the roadbed, constitutes "additional work" for which DeAtley would be entitled to compensation if DeAtley prevails in this lawsuit. It is, however, equally clear that the placement of aggregate on those sections of the roadbed upon which the rejected aggregate had never been placed does not constitute "additional work." That work had nothing to do with the placement and removal of the rejected aggregate from certain portions of the roadbed. Moreover, that work was paid for under the contract, because that work was performed under the contract. The only extra or additional work performed by DeAtley was the removal of the rejected aggregate from that portion of the roadbed on which it had been placed, and the placing of the replacement aggregate on that same section.

In addition, DeAtley included testing costs that were already paid for by the Government under the contract, and testing costs incurred solely to establish its claim. Specifically, DeAtley used Budginger and Associates to perform the gradation testing of the aggregate to determine whether it met the gradation specifications. Such testing was required to be performed under the contract and was paid for under the contract.[3]

According to the spreadsheet that documented the costs claimed by DeAtley in its certified claim, DeAtley included costs charged by Budginger for performing the gradation test on both the rejected aggregate and on the replacement aggregate. The additional work that DeAtley was required to perform was the testing of the aggregate the second time, that is, the testing of the

---

[3] The gradation testing is done when the aggregate is placed on the roadbed. If the aggregate passes the gradation tests, the Government then pays DeAtley the bid amount for the crushing, placement, and testing of the aggregate.

replacement aggregate. The initial tests were required to be performed under the contract and were paid for by the Government under the contract.

After the aggregate was rejected, DeAtley went back to the roadbed cut from which the rock used to produce the rejected aggregate was taken. DeAtley hired Budginger to take rock samples from that cut, and to perform quality tests on those samples. Such tests were not required to be performed under the contract. Such testing was performed by DeAtley in an attempt to support its differing site condition claim. In fact, those test results were relied upon by DeAtley, in its differing site condition claim, as evidence that the Government-provided source for the production of aggregate was unsuitable. According to the spreadsheet that documented the costs claimed by DeAtley in its certified claim, DeAtley included costs for Budginger performing those tests.

It is clear beyond cavil that the alleged differing site condition did not cause DeAtley to incur costs to haul and stockpile the aggregate in November of 2001, nor did it cause DeAtley to remove that aggregate from the stockpiles and place it on the roadbed in August of 2002. Work required to be performed under the contract, that was performed prior to the Government's suspension of work due to the failure of the placed aggregate to pass the contractually required gradation tests, can not constitute additional work under FAR Clause 52.236-2. Such work was performed as part of the underlying contract requirement.[4] Coe Declaration.

---

[4] It is interesting to note that DeAtley Crushing, DeAtley's subcontractor on this contract, is not seeking, in its pass-through claim, the costs it incurred in crushing the aggregate in November 2001. DeAtley Crushing is only claiming those costs that it incurred in connection with the additional work required to crush aggregate in September 2002, after the aggregate crushed in November 2001 had been rejected by the Government. Mark DeAtley, the president of M. A. DeAtley Construction, is the brother of Brian DeAtley, the president of DeAtley Crushing. Coe Decl. Mark DeAtley submitted the claim upon behalf of Brian DeAtley and is,

In short, the inclusion of costs for labor, materials, equipment, and testing, that were already paid for by the Government, and costs for work that was not required to be performed under the contract, is false and fraudulent.

II. DeAtley Acted With Reckless Disregard Or Deliberate Ignorance When It Included Coats In Its Certified Claim For Which DeAtley Had Been Paid Under The Contract.

DeAtley in its motion, asserts that with respect to the Government's counterclaims based upon the False Claims Act and the Anti-Fraud provision of the Contract Disputes Act, the Government has no evidence that DeAtley intended to defraud the Government.[5] On the contrary we contend that DeAtley acted with reckless disregard for the accuracy of its claim at the time it was submitted, and continues to act in reckless disregard, or with deliberate ignorance, of its falsity in the months since the overstating of its claimed damages was pointed out to DeAtley, and to DeAtley's attorneys, by the Government.

There can be no dispute that a contractor may not seek payment for amounts for which it already has been paid. As this Court has stated in another False Claims Act case,

> Plaintiff's submission of a claim for an amount already paid by the government, at the very least, constitutes recklessness with regard to the validity of the claim. Every party filing an action in this court has a duty to examine its records to determine what amounts the government already has paid. A failure to make this

---

therefore , presumably familiar with the parameters of DeAtley Crushing's claim.

[5] Intent, under the False Claims Act, is defined to include acting in "deliberate ignorance of the truth or falsity of the information," or "in reckless disregard of the truth or falsity of the information." As stated in Crane Helicopter Services, Inc. v. United States, 45 Fed. Cl. 410, 434 (1999), "[t]he case law stands for the proposition that a failure to make a minimal examination of records constitutes deliberate ignorance or reckless disregard, and a contractor that deliberately ignored false information submitted as part of a claim is liable under the False Claims Act."

> type of minimal examination is nothing more than deliberate ignorance. A party that is deliberately ignorant of a false claim is liable under the FCA.

Al Munford, Inc. v. United States, 34 Fed. Cl. 62, 67 (1995), separate order of dismissal vacated on other grounds, 86 F.3d 1178 (Fed. Cir. 1996); see also, Lamb Engineering & Construction Company v. United States, 58 Fed. Cl. 106, 110 (2003) ("[A] party] filing a claim before the contracting officer and this court has a duty to examine its records to determine what amounts the government already has paid… [A] failure to make a minimal examination of records constitutes deliberate ignorance or reckless disregard…"). A Government contractor has a duty in filing a certified claim to make at least a minimal level of inquiry to determine that the amounts sought have not been previously paid. Crane Helicopter Services, Inc. v. United States, 45 Fed. Cl. 410, 434 (1999) ("The case law stands for the proposition that a failure to make a minimal examination of records constitutes deliberate ignorance or reckless disregard, and a contractor that deliberately ignored false information submitted as part of a claim is liable under the False Claims Act.). As stated in UMC Electronics Co. v. United States, 43 Fed. Cl. 776, 794 (1999), aff'd, 249 F.3d 1337 (Fed. Cir. 2001), the Court will not "allow parties filing an action in this court to 'double-bill' the government and then hide behind a posture of feigned ignorance." Under these standards, it is clear that the Government can meet its burden to establish intent under both the False Claims Act and the CDA based upon the facts of this case. Intent can be inferred. Commercial Contractors, Inc., 154 F.2d at 1366. In fact, intent seldom is admitted and generally must be shown by circumstantial facts. United States v. DiVarco, 484 F.2d 670 (7th Cir. 1973), cert. denied, 415 U.S. 916 (1974) ("Evil motive, of course, was not admitted. It seldom is."); In re Steiker, 380 F.2d 765, 786 n.3 (3rd Cir. 1967). A contractor's failure to disclose, in some

circumstances, may indicate an intention to deceive. Commercial Contractors, 154 F.2d at 1366, quoting United States v. Aerodex, Inc., 469 F.2d 1003, 1008 (5th Cir. 1972).

In addition, the fact that in the more than two years since the complaint was filed, DeAtley has refused to amend the complaint to seek only those damages to which it would be entitled if it prevails, is highly relevant to the issue of intent. In our motion to amend, and in our amended answer asserting the counterclaims at issue here, as well as in our July 21, 2006 supplemental statement concerning plaintiff's motion to reopen discovery, docket entry 72, we provided an extremely detailed explanation of the bases upon which we base our counterclaims. Moreover, Government counsel offered DeAtley's counsel the opportunity to discuss the issue in depth with agency counsel, an offer DeAtley's counsel declined to take advantage of.

Finally, DeAtley filed two affidavits, in support of its motion for summary judgment, that provide no explanation, let alone a cogent and rational one, for including costs in its certified claim that clearly had already been paid for by the Government. Instead, both affiants simply aver that DeAtley is entitled to the full amount claimed. DeAtley's continued insistence that its certified claim amount is defensible provides additional evidence that DeAtley acted with, and continues to act with, the requisite intent. See, UMC Electronics, 43 Fed. Cl. at 816 (plaintiff's actions in response to government's counterclaim in fraud is relevant to demonstrate fraudulent intent with respect to its claim.); Riley Construction Company v. United States, 65 Fed. Cl. 264, 270 (2005) (plaintiff failed to check on the validity of its claim during the years the case was pending but continued to pursue its claim).

The affidavits provided by DeAtley simply contain conclusory statements that the claim was not false. Such statements do not comply with this Court's rule that the affidavit shall set

forth such facts as would be admissible. Statements of belief are not statements of fact. Royal Indem. Co. v. United States, 371 F.2d 462, 465; 178 Ct. Cl. 46, cert. denied, 389 U. S. 833 (1967). Moreover, conclusory affidavits are insufficient to support or oppose motions for summary judgment. Behm v. United States, 68 Fed. Cl. 395, 407 (2005); Impresa Construzioni Geom. Domenico Garufi v. United States, 61 Fed. Cl. 175, 181 (2004); appeal dismissed 125 F.3d 310 (Fed. Cir. 2005). The statement in Mark DeAtley's affidavit, that he had "painstakingly reviewed M.A. DeAtley's claim and it is accurate," is legally insufficient to support DeAtley's motion for summary judgment. Such statements are wholly insufficient to establish that there is no evidence, as DeAtley contends, that DeAtley's claim is false, and no evidence that DeAtley acted with the requisite intent. DeAtley has provided no explanation, let alone justification, for why, including in its certified claim amounts claimed for work performed in November 2001, work that was required to be performed under the contract, is not fraudulent.

In short, the issue of intent is intensely fact intensive and depends in large part upon the credibility of the witnesses. It is thus not appropriate for disposition by summary judgment. Accordingly, the Government submits that it has, and can at trial, sustains its burden of demonstrating that DeAtley presented a claim for payment; that the claim was false or fraudulent; that DeAtley knew that the claim was fraudulent; and that the Government suffered damages. See Young-Montenay, Inc. v. United States, 15 F.3d 1040,1043 (Fed. Cir. 1994) (quoting Miller v. United States, 550 F.2d 17, 23; 213 Ct. Cl. 59 (1977)).

## CONCLUSION

For the above reasons, the Government respectfully requests that the Court deny DeAtley 's motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit, Room 8012
1100 L Street, NW
Washington, D.C. 20530
(202) 307-0252
(202) 307-0972 (Fax)

Attorneys for Defendant

<u>OF COUNSEL</u>

TIMOTHY BINDER
Division Counsel
U.S. Dept. of Transportation
Federal Highway Administration
610 East Fifth Street
Vancouver, WA 98661-3801

October 12, 2006