IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M.A. DEATLEY CONSTRUCTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-1052C |
| | ) | (Chief Judge Edward J. Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF
UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANT'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1. On February 9, 2001, M. A. DeAtley Construction, Inc. ("DeAtley") was awarded a construction contract in the amount of $7,618,162.32, by the Western Federal Lands Highway Division ("WFLHD") of the Federal Highway Administration ("FHWA"). Declaration of Brent Coe in support of defendant's opposition to plaintiff's motion for summary judgment, ("Coe Decl."), ¶ 4.

2. The contract required that DeAtley place a layer of aggregate base grading D ("aggregate") on the prepared surface of the roadbed, prior to paving the road with asphalt. Id. at ¶ 9

3. DeAtley used a Government provided source of rock from which it crushed the aggregate. Id. at ¶ 10

4. DeAtley crushed aggregate from November 2, 2001, through November 12, 2001. Id. at ¶ 9.

5. DeAtley stockpiled the aggregate over the winter of 2001 -2002. Page 20 of Exhibit A to affidavit of Mark DeAtley, submitted in support of DeAtley's motion for summary judgment ("DeAtley Aff."); Coe Decl. at ¶ 12.

6. Gradation testing is performed on a sample of aggregate taken from the aggregate that has been placed on the roadbed. If the aggregate passes the gradation tests, the Government then accepts the aggregate, and pays the contract price for that portion of aggregate represented by the test. Such payment compensates the contractor for the crushing and placement of the aggregate. Id. at ¶ 13.

7. In August of 2002, DeAtley began to place the aggregate on the roadbed. Id. at ¶ 14.

8. On August 21, 2002, the Government suspended DeAtley's performance because the placed aggregate failed to meet one of the contractual specifications. Id. at ¶ 15.

9. On August 22, 2002, and again on August 27, 2002, the Government suspended DeAtley's performance because the placed aggregate failed to meet one of the contractual specifications. Id. at ¶ 16.

10. On August 29, 2002, DeAtley began removing the rejected aggregate, and hauling it to a waste area. Page 21 of Exhibit A to DeAtley Aff.; Coe Decl. at ¶ 17.

11. In September, 2002, DeAtley crushed replacement aggregate, and placed it on the roadbed. Coe Decl. at ¶ 18.

12. By September 18, 2002, DeAtley had finished the removal of the rejected aggregate and the crushing of the replacement aggregate. Id. at ¶ 19.

13. After the aggregate was rejected, DeAtley went back to the roadside cut from which the rock used to produce the rejected aggregate was taken. Id. at ¶ 20.

14. DeAtley hired Budginger and Associates to take rock samples from the cut and to perform aggregate quality tests on those samples. Id. at ¶ 21.

15. Such test were not required to be performed under the contract. Id. at ¶ 22.

16. According to the spreadsheet that documented the costs claimed by DeAtley in its certified claim, DeAtley included costs for Budginger performing the aggregate quality tests. Id. at ¶ 23.

16. By contract modifications, the contract value was increased by $668,722.36. Id. at ¶ 24.

17 After adjusting for underruns, the final contract value was $7,863,292.78. Id. at ¶ 25.

18. DeAtley was paid $7,863,292.78, the full contract value, by the Government. Id. at ¶ 48.

19. The $7,863,292.78 covered all work performed under the original contract, as modified by the contract modifications. Id. at ¶¶ 48 and 49.

20. On September 18, 2003, DeAtley filed a certified claim, with the contracting officer, seeking an additional $277,833.55. Id. at ¶ 26.

21. DeAtley certified it incurred $277,833.55 in additional or uncompensated costs and profit because of an alleged differing site condition. Page 2 of Exhibit A to DeAtley Aff.; Coe Decl. ¶ 27.

22. Of the $277,833.55, DeAtley sought $164,223.55. The remaining amount was sought upon behalf of DeAtley Crushing, DeAtley's subcontractor. Coe Decl. ¶ 28.

23. DeAtley Crushing, DeAtley's subcontractor, is not seeking in its pass-though claim, the costs it incurred in crushing the aggregate in November 2001. DeAtley Crushing is only claiming those costs incurred in connection with the additional work required to crush

aggregate in September 2002, after the aggregate crushed in November 2001 had been rejected by the Government. Mark DeAtley, the president of M. A. DeAtley Construction, is the brother of Brian DeAtley, the president of DeAtley Crushing. Id. at ¶ 29.

24. The $164,223.55 included labor costs of $42,865.66; equipment costs of $70,968.49,and material/rental costs of $50,389.41. All amounts included ten percent profit. Page 14 of Exhibit A to DeAtley Aff.; Coe Decl. at ¶ 30.

25. Attached, and made part of DeAtley's certified claim, was a spreadsheet labeled "Deatley Crushing Invoice Agg D" at the bottom of each page. Page 6-12 of Exhibit A to DeAtley Aff.; Coe Decl at ¶ 31.

26. The spreadsheet contained the following information: the names of DeAtley's employees who worked on the Flowery Trail project; the rates at which those employees were paid; the date those employees worked on the project; and the number of hours each employee worked on the date indicated. Id. at ¶ 32.

27. The period of time covered by the spreadsheet includes November 2, 2001, through September 18, 2002. Id. at ¶ 33.

28. The amount DeAtley claimed for additional labor incurred as the result of the allegedly differing site condition is based upon the amounts paid to each of the employees as indicated on the spreadsheet, plus ten percent profit. Pages 6-12 and 14 of Exhibit A to DeAtley Aff.; Coe Decl. at ¶ 34.

29. The amount claimed by DeAtley for additional labor costs, incurred as the result of the allegedly differing site condition, includes the cost of work performed by DeAtley from November 2, 2001, when DeAtley began crushing aggregate, until September 18, 2002, when

DeAtley finished the removal of the rejected aggregate and the crushing of the re-placement aggregate. Coe Decl. at ¶ 35.

30. The amount claimed by DeAtley for additional equipment costs incurred as the result of the allegedly differing site condition was derived from the same spreadsheet. Pages 6-12 of Exhibit A to DeAtley Aff.; Coe Decl. at ¶ 36.

31. The amount claimed by DeAtley for additional equipment costs incurred as the result of the allegedly differing site condition includes costs for equipment used from November 2, 2001, when DeAtley began crushing aggregate, until September 18, 2002, when DeAtley finished the removal of the rejected aggregate and the crushing of the replacement aggregate. Coe Decl. at ¶ 37.

32. The amount claimed by DeAtley for additional material/rental costs incurred as the result of the allegedly differing site condition was derived from the Materials/Rental Sheet included in the claim. Page 13 of Exhibit A to DeAtley Aff.; Coe Decl. at ¶ 38.

33. The amount claimed by DeAtley for additional material/rental costs incurred as the result of the allegedly differing site condition includes costs incurred by DeAtley from August 19, 200 , until September 23, 2002. Coe Decl. at ¶ 39.

34. DeAtley incurred costs for placing aggregate after September 2, 2002, that are not included in its claim. Such costs were compensated by the Government payment of the contract amount. Id. at ¶ 40.

35. Costs for labor, equipment, and material that were incurred by DeAtley before the Government suspended work on August 21, 2002, was for work DeAtley was required to perform under the contract Id. at ¶ 41.

36. Costs for labor, material, and equipment that were incurred by DeAtley before the Government suspended work on August 21, 2002, cannot be attributed to additional work due to a differing site condition.

37. The amount claimed by DeAtley under materials/rental includes costs for Budinger to test aggregate on August 19, 2002. DeAtley Claim, page 13 of Attachment A to DeAtley's Declaration; Coe Decl. at ¶ 42.

38. The testing performed by Budinger on August 19, 2002, was required to be performed under the contract and was performed prior to August 21, 2002, the date the Government suspended work. Coe Decl. at ¶ 43.

39. Included in the amount claimed by DeAtley under materials /rental includes the cost of hiring Budinger, after the aggregate was rejected, to test samples of rock obtained from the site from which the rock used to produce the aggregate was taken. Id. at ¶ 45.

40. That testing performed by Budinger was not work that DeAtley was required to performed under the contract and, therefore, does not constitute additional work that was required to be performed under the contract Id. at ¶ 46.

41. Because the Government denied DeAtley's certified claim based upon DeAtley's contention that the Government provided source for the aggregate constituted a differing site condition, the Government did not pay DeAtley any costs that DeAtley incurred for the additional work that DeAtley performed in removing that portion of the aggregate that DeAtley had placed before it was rejected, re-crushing the aggregate, placing the newly crushed aggregate on that portion of the roadbed from which the rejected aggregate had been removed, and performing the contractually required tests upon the newly crushed aggregate. Id. at ¶ 47.

42. On March 22, 2005, the Government and DeAtley participated in a settlement meeting held in Spokane, Washington, that was attended by representatives of DeAtley and DeAtley Crushing and their attorneys. Id. at ¶ 50.

43. During that meeting, DeAtley was informed that the Government considered that its claim contained false statements with respect to certain items because those costs were not incurred as the result of the alleged differing site condition. DeAtley has not revised the amount of its claim. Id. at ¶ 51.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit, Room 8012
1100 L Street, NW
Washington, D.C. 20530
(202) 307-0252
(202) 307-0972 (Fax)

Attorneys for Defendant

OF COUNSEL

TIMOTHY BINDER
Division Counsel
U.S. Dept. of Transportation
Federal Highway Administration
610 East Fifth Street
Vancouver, WA 98661-3801

October 12, 2006