IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M.A. DeATLEY CONSTRUCTION, INC., | ) | Case No.: 041052C |
| | ) | (Judge Edward J. Damich) |
| | ) | |
| Plaintiff, | ) | **M.A. DEATLEY'S REPLY TO** |
| | ) | **DEFENDANT'S OPPOSITION TO** |
| vs. | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**TABLE OF CONTENTS**

Page


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. The Government's Evidence In Support of Its Response Is Insufficient to Defeat Summary Judgment ..... 2

II. The Facts Show that There Was No Fraud or Fraudulent Intent. ..... 5

III. The Government's Counterclaims Must Be Dismissed ..... 12

1. The Government's Counterclaim Under The False Claims Act Must Be Dismissed. ..... 12

2. The Government's Counterclaim Under The Anti-Fraud Provision Of The Contract Disputes Act Must Be Dismissed. ..... 13

3. The Government's Counterclaim Under The Forfeiture Of Fraudulent Claims Act Must Be Denied. ..... 14

# TABLE OF AUTHORITIES

Page

**Cases**


Arnold M. Diamond, Inc. v. Dalton, 25 F.3d 1006, 1010 (Fed. Cir. 1994) ........ 14

Bill Strong Enter., Inc. v. Shannon, 49 F.3d 1541, 1549-51 (Fed. Cir. 1995) ........ 12

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ........ 5

Commercial Contractors, Inc. v. United States, 154 F.3d 1357, 136 ........ 14

Corkle v. United States, 94 F.Supp. 908, 910-11 (E.D. S.C. 1951) ........ 14, 15

Dairyland Power Co-op. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) ........ 5

First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 29) (1968) ........ 6

Gratkowski v. United States, 6 Cl. Ct. 458 (1984) ........ 5

Ingalls Shipbuilding, Inc. v. United States, 21 Cl. Ct. 117, 125 (1990) ........ 5

Larry D. Barnes, Inc. v. United States, 45 Fed. Appx. 907, 912 (Fed. Cir. 2002) ........ 15

McCarthy v. United States, 229 Ct. Cl. 361, 670 F.2d 996, 1004 (Ct. Cl. 1982) ........ 15

Miller v. United States, 550 F.2d 17, 22 (Ct. Cl. 1977) ........ 14, 15

P.J. Dick, Inc., GSBCA No. 12415, 96-2 BCA ¶ 28,307 ........ 12

Plano Builders Corp. v. United States, 40 Fed. Cl. 635 (1998) ........ 12

Pure Gold, Inc. v. Syntex (U.S.A.), Inc. 739 F.2d 624, 627 (Fed. Cir. 1984) ........ 6

SAB Construction, Inc. v. United States, 66 Fed. Cl. 77, 90-91 (2005) ........ 12

UMC Elecs. Co. v. United States, 249 F.3d 1337, 1339 (Fed. Cir. 2001) ........ 14


**Statutes**


28 U.S.C. § 2514 ........ 14

41 U.S.C. § 601(7) ........ 14


**Rules**


Fed. R. Civ. P. 56(e) ........ 3

Fed. R. Evid. 602 ........ 3

RCFC 56(e) ........ 3

Rule 56(e) ........ 3, 4, 5

## INTRODUCTION

In its response to Plaintiff's Motion for Summary Judgment, Defendant had ample opportunity to provide the Court with its best evidence and arguments to support its counterclaims in fraud. Defendant, however, provided not one scintilla of credible, reliable evidence that would meet any threshold showing that any part of Plaintiff's claim is overstated, much less that the claim is false or fraudulent. Moreover, Defendant has made absolutely no showing that, even if it could show that any part of the claim was overstated, it can elicit testimony at trial to show that Plaintiff had any intent to defraud the Government under any of the three statutes on which its counterclaims are based. Having been provided the opportunity to make a showing that its counterclaims should be heard at trial and failing utterly to produce any evidence, the Court should grant Plaintiff's Motion for Summary Judgment and dismiss all of the Government's counterclaims.

The Court should not read this reply to assume that Plaintiff relies only on "procedural" defenses. While the Government's failings in defending the counterclaims on summary judgment are sufficient for the Court to grant the motion, M.A. DeAtley addresses directly herein the Government's claims on a factual basis to show that there is no evidence to support any of the counterclaims. For this reason, the Court should grant the motion and dismiss the Government's counterclaims.

## ARGUMENT

### I. The Government's Evidence In Support of Its Response Is Insufficient to Defeat Summary Judgment.

The Government filed its counterclaims after the close of discovery which included conducting depositions of Plaintiff's employees and having the opportunity to pose interrogatories and requests for admission. Defendant has made repeated representations that its support for its counterclaims would come from plaintiff's witnesses and documents and not from Government witnesses. Strikingly, however, in its response to the Motion for Summary Judgment, the Government relies solely on one Government witness and his interpretation of Plaintiff's documents. This is not enough to defeat the motion for summary judgment.

Plaintiff is filing separately a Motion to Strike the Declaration of Mr. Coe since the Government repeatedly stated on the record it had no witnesses and because Plaintiff was never provided an opportunity to depose Mr. Coe on these issues. Even if the Court denies Plaintiff's motion to strike, the Coe declaration is still insufficient to overcome Plaintiff's motion for summary judgment.

Pursuant to RCFC 56(e), affidavits offered in support of a motion for summary judgment must contain facts that would be admissible in evidence and must affirmatively show that the witness is competent to testify to those facts. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be

admissible in evidence, and shall *show affirmatively that the affiant is competent to testify to the matters stated therein*. . . ." Fed. R. Civ. P. 56(e) (italics added). To meet this standard, the individual making the affidavit must have personal knowledge that would enable him to testify to the facts he personally observed, or he must be qualified as an expert witness so that he may testify as to his opinions on the subjects covered in the affidavit. See Fed. R. Evid. 602. Affidavits that do not meet this standard are insufficient to support a motion for summary judgment.

Important portions of Mr. Coe's declaration do not meet the Rule 56(e) standard, especially those portions in which he interprets the spreadsheets attached to DeAtley's claim. Mr. Coe has no personal knowledge of the documents in DeAtley's claims. Mr. Coe cites no familiarity with Plaintiff's accounting system or billing practices from which he can make conclusions about what the documents show. He has no personal insight into Plaintiff's relationships with its subcontractors or suppliers. There is no evidence that he reviewed other background documents to support or contradict his conclusions from the spreadsheets. Indeed, there is no evidence that he conducted any inquiry such as one a prudent accounting auditor might do to support such accusations. He did not prepare the documents and he has no other basis on which to conclude that the documents show evidence of misstatements in the claim. There is no basis on which this Government

witness can make statements that could support the Government's counterclaims.[1] Accordingly, the Court should disregard those portions of Mr. Coe's affidavit in which he interprets Plaintiff's documents. At the least, the Court should give very little weight to Mr. Coe's declaration.

Indeed, what is more troubling about Defendant's response is what is missing to support its counterclaims. Despite the fact that it deposed several of Plaintiff's witnesses that were involved in preparing the claim, Defendant cites to no deposition testimony that would establish that any charges were inappropriate or that there was any intent to defraud the Government. In fact, although it had the opportunity, Defendant elicited no testimony in the depositions of Plaintiff's witnesses that would lead any reasonable person to believe the claim was inaccurate. Moreover, despite the Government's allegedly grave concern with Plaintiff's claim, Defendant has neither requested nor conducted an audit of Plaintiff's claim.

---

[1] In this regard, the government cannot reasonably look to other cases discussing the consideration of affidavits in summary judgment cases. For instance, in United Medical Supply Co. v. United States, 63 Fed. Cl. 430, 436 (2005) (Allegra, J.), the court accepted a government affidavit opposing a motion for summary judgment brought by a contractor on a claim for which the contractor bore the burden of proof. Here, the government bears the burden of proving its fraud claims by clear-and-convincing evidence. In Boston Edison Co. v. United States, 64 Fed. Cl. 167, 180-82 (2005), the government attempted to limit the use of an affidavit that it contended failed to comply with the requirements of Rule 56(e). Although the court accepted the validity of the Rule 56(e) requirements, the court found that the plaintiff's affidavit was made on personal knowledge and presented facts that would be admissible in court. There is no indication in those cases that that the court should allow a Government witness to testify about a contractor's documents.

Without any other evidence, Defendant has not met its burden to defeat summary judgment. Rule 56(e) requires that a party opposing a motion for summary judgment set forth specific facts showing a genuine issue for trial. Ingalls Shipbuilding, Inc. v. United States, 21 Cl. Ct. 117, 125 (1990) (granting contractor motion for summary judgment on government counterclaim in fraud). A party opposing summary judgment "must do more than whet the curiosity of the court; he must support vague accusation and surmise with concrete particulars." Gratkowski v. United States, 6 Cl. Ct. 458 (1984). "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." Dairyland Power Co-op. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." Pure Gold, Inc. v. Syntex (U.S.A.), Inc. 739 F.2d 624, 627 (Fed. Cir. 1984) (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 29) (1968)).

## II. The Facts Show that There Was No Fraud or Fraudulent Intent.

Despite the Government's failure, DeAtley welcomes the opportunity to refute the Government's allegations made in its Proposed Findings of Uncontroverted Fact. Plaintiff's responses show that, even if the Government had proper support for its allegations, DeAtley

can clearly establish that each item claimed is accurate. Moreover, these facts specifically show why certain charges are claimed and why M.A. DeAtley is entitled to recover these costs from the Government. M.A. DeAtley hereby relies and incorporates its Responses to Government's Proposed Uncontroverted Facts.

***Accusation #1: Initial Placement of Aggregate: $23,767.34.***

In its brief, the Government infers that the costs that DeAtley seeks from November 2001 for the "costs of equipment and labor that were incurred for hauling and stockpiling in connection with the ***initial crushing of the aggregate incurred between November 2, 2001 and November 13, 2001***" in the amount of $23,767.34 were costs that the Government paid for in connection with the re-crushing of aggregate in 2002. The costs DeAtley seeks are properly included in the claim as an additional cost to DeAtley under its fixed price contract caused by the unanticipated amount of excess reject material that DeAtley had to transport from the designated quarry source to a stock pile location several miles from the quarry site in 2001. They are not costs that were paid by the Government. (Response to Government's Proposed Statement of Uncontroverted Facts).

On the Flowery Trail Project, the quarry source was designated by the Government. The Government tested and approved the source, as qualified for crushing and production of grade D aggregate. At bid time, M.A. DeAtley anticipated removing an overburden of only 3.5 meters based upon the contract documents. Based upon the geotechnical reports, M.A.

DeAtley also anticipated minimal reject material. (Response to Government's Proposed Statement of Uncontroverted Facts).

But when M.A. DeAtley began to pioneer the site in preparation for production of the aggregate in June 2001, M.A. DeAtley immediately began to question whether the quarry was a competent source. M.A. DeAtley's Project Superintendent, Sam Stamper, met at the Project site on June 5, 2001, with Linda Persoon, the Project Engineer representing the Government. The two were present to inspect 20 –foot deep test pits that M.A. DeAtley had dug to confirm the nature of the material. Ms. Persoon's daily report of June 5, 2001, confirms that the test pits showed little or no useable material. (Response to Government's Proposed Statement of Uncontroverted Facts).

On October 25, 2001, Mr. Cooper notified the Government of this changed condition:

> *Please note that with the excess material we have encountered we have had to haul to the 49 Degrees North ski area (refer to your letter of October 11, 2001). This added haul has caused M.A. DeAtley Construction, Inc. a significant delay in bringing in our crushing subcontractor. We have currently hauled over 21,000 m3 to the ski area with the majority of this material coming from the area where we had planned to place the crusher... .*

(Response to Government's Proposed Statement of Uncontroverted Facts).

After removing the overburden, M.A. DeAtley began to selectively feed material through the crusher. But the designated material was highly variable and weathered quartzite that basically disintegrated when it was fed into the crusher. This condition caused

M.A. DeAtley's crushing subcontractor additional work and delay by requiring a significant amount more material to be fed into the crusher in an effort to achieve an acceptable product. In turn, a large unanticipated volume of reject material was discarded into a stockpile which then needed to be hauled away from the project. (Response to Government's Proposed Statement of Uncontroverted Facts).

M.A. DeAtley informed the Government of the problems it was encountering. On November 7, 2001, M.A. DeAtley's daily report (which Federal Highways reviewed and approved) states: "***material source seems to be very dirty still. Crusher is producing a lot of rejects. Our trucks can hardly keep up!***" (Response to Government's Proposed Statement of Uncontroverted Facts).

During meetings with the Government, M.A. DeAtley estimated that it was rejecting approximately 70% of the material fed into the crusher. While M.A. DeAtley anticipated a small percentage of reject material, it never anticipated that 70% of the material M.A. DeAtley were feeding through the crusher would be rejected, and have to be hauled away. (Response to Government's Proposed Statement of Uncontroverted Facts).

This additional expense was not part of M.A. DeAtley's original scope, nor was M.A. DeAtley ever paid by the Government for this additional work. These additional hauling costs are an appropriate claim item because they arise directly from the inadequate quarry source designated by the Government. (Response to Government's Proposed Statement of Uncontroverted Facts). The Government did not pay M.A. DeAtley for this added change

in scope; thus, the Government's accusation that M.A. DeAtley has already been paid for this work is inaccurate. (Response to Government's Proposed Statement of Uncontroverted Facts).

***Accusation #2: Placement of New Material: $21,264.35.***

The Government's next contention is that DeAtley's claim includes labor and equipment costs for placing aggregate on sections of the road bed where rejected aggregate had not been placed. (Response to Government's Proposed Statement of Uncontroverted Facts). There are no costs included in M.A. DeAtley's claim for placing aggregate on sections of the road bed where none of the rejected aggregate had been placed. The only costs, however, that M.A. DeAtley seeks on the days in question are for the costs of **picking up and hauling the *reject* material** which had previously been placed on the roadway. DeAtley is entitled to be paid for this extra work because of the failure of the Government source. (Response to Government's Proposed Statement of Uncontroverted Facts). As shown in his declaration, Mr. Owens determined from the daily reports and from his understanding of the project that it used additional labor and equipment in September 2002 to haul rejected aggregate to the ski area on that day. Mr. Owens attributed the work of 6 of the 29 employees working on that day as extra work for picking up and removing the rock that had been rejected.

***Accusation #3: Budinger Testing Costs for Testing: $3,247.15.***

The Government's next contention is that M.A. DeAtley included testing costs that were already paid for by the Government under the contract. It claims that these costs amounted to $3,247.15. (This total is derived from the entries on the attached claim summary sheet with the date of September 3, 2002, labeled Budinger). Budinger was DeAtley's testing subcontractor during the project. (Response to Government's Proposed Statement of Uncontroverted Facts).

On September 3, 2002, M.A. DeAtley's crushing subcontractor had remobilized and had begun crushing the replacement material. The $3,247.15 Budinger expenses for September 3, 2002 are costs incurred by M.A. DeAtley for **testing the replacement material** starting on September 3, 2002. These tests were additional work to Budinger's original contract and M.A. DeAtley was required to pay Budinger extra for these tests. (Response to Government's Proposed Statement of Uncontroverted Facts).

***Accusation #4: Budinger Testing Costs – August 22: $4,129.75.***

The Government's last contention is that DeAtley is making claim for costs incurred to hire Budinger "to prove its differing site conditions claim." (Response to Government's Proposed Statement of Uncontroverted Facts).

On August 22, 2002, the Government rejected the Grade D aggregate material that M.A. DeAtley was placing on the roadway. M.A. DeAtley immediately asked Budinger to assist us in testing the material to help determine what the problem was and how M.A.

DeAtley could remedy the situation. On August 22, 2002, Budinger took tests on the stockpiled material as well as tests on the native material. (Response to Government's Proposed Statement of Uncontroverted Facts).

M.A. DeAtley notified the Government of M.A. DeAtley's intent to take these tests and it invited them to participate in the test to determine how to solve the problem in question. The Government refused. (Response to Government's Proposed Statement of Uncontroverted Facts).

The purpose of these tests was very straightforward. At that point in time, M.A. DeAtley was evaluating its options. One option was to crush new material to blend with the existing stockpile. However, there was a concern whether the existing material was somehow degrading when it was handled and, therefore, would potentially never pass even if M.A. DeAtley was to blend more material into the pile. (Response to Government's Proposed Statement of Uncontroverted Facts).

Budinger's tests actually confirmed M.A. DeAtley's worst fears. So M.A. DeAtley had no option but to move to another location and to crush all new material a second time. The cost of testing the material was never paid for by the Government and it is appropriate to include the claim because these tests were to determine a possible solution to the problem long before any claim existed. (Response to Government's Proposed Statement of Uncontroverted Facts).

Even if the Government could show that the testing was done to support DeAtley's position in asking for an adjustment to the contract, it is an allowable cost that could properly be included in the claim pursuant to Bill Strong Enter., Inc. v. Shannon, 49 F.3d 1541, 1549-51 (Fed. Cir. 1995). See also P.J. Dick, Inc., GSBCA No. 12415, 96-2 BCA ¶ 28,307. Professional and consulting costs incurred to assist the contractor in negotiations with the Government to resolve the issues before an actual CDA claim is filed are allowable direct costs of contract administration that can be recovered as part of the claim. See SAB Construction, Inc. v. United States, 66 Fed. Cl. 77, 90-91 (2005) (consultant work product used for negotiations with government before CDA claim filed was an allowable cost in claim); Plano Builders Corp. v. United States, 40 Fed. Cl. 635 (1998) (noting that consulting costs incurred in good faith before filing a CDA claim that are used in negotiations with the Government that "would facilitate pre-claim negotiations that could have prevented the necessity of ever filing a CDA claim" should be recoverable).

## III. The Government's Counterclaims Must Be Dismissed.

### 1. The Government's Counterclaim Under The False Claims Act Must Be Dismissed.

The Government has not shown why its claim under False Claims Act should not be dismissed. The Government goes to great lengths to argue that it is now not claiming that M.A. DeAtley intentionally defrauded the Government, but rather that it acted with reckless disregard of the truth or falsity of the information. Document 82 at 7, n.5. While such a

finding might provide the basis for a False Claim Act accusation, Defendant points to no proof that would support such a finding. It argues at length that M.A. DeAtley has not amended its certified claim and that shows disregard. One meeting in which Government officials questioned DeAtley's claim cannot suffice.

Indeed, the Government has no evidence to show that this claim is not accurate. Nor can the Government point to evidence that DeAtley failed to examine its records before filing the claim. Defendant found no evidence in discovery to support such arguments. Mr. Coe cannot competently testify to Plaintiff's intent, and he makes no showing in his affidavit that would support a showing of "reckless disregard." At the most, Mr. Coe shows that the Government and the Plaintiff may have disagreed on certain costs.

### 2. **The Government's Counterclaim Under The Anti-Fraud Provision Of The Contract Disputes Act Must Be Dismissed.**

The Government completely fails to address its burden of showing intent under the anti-fraud provisions of the Contracts Dispute Act. In order to prove its counterclaim under the CDA, The Government must that Plaintiff made a "false statement of substantive fact, or any conduct which leads to a belief of a substantive fact material to the proper understanding of the matter at hand, made with intent to deceive or mislead." 41 U.S.C. § 601(7). A contractor is not liable under this provision if it took reasonable steps to verify its claim. Arnold M. Diamond, Inc. v. Dalton, 25 F.3d 1006, 1010 (Fed. Cir. 1994).

Here, the Government has completely failed to introduce any credible evidence in support of this element. It cannot show that the claim is inaccurate and it has no factual evidence of an intent by the contractor to defraud the Government. Therefore, its counterclaim under the Anti-Fraud Provision of the Contracts Dispute Act must be dismissed.

**3. The Government's Counterclaim Under The Forfeiture Of Fraudulent Claims Act Must Be Denied.**

Under 28 U.S.C. § 2514, the Government must show fraud or an attempt at fraud by clear and convincing evidence. UMC Elecs. Co. v. United States, 249 F.3d 1337, 1339 (Fed. Cir. 2001). Mere discrepancies or exaggerated statements are not sufficient to constitute fraud under the forfeiture statute. Corkle v. United States, 94 F.Supp. 908, 910-11 (E.D. S.C. 1951). Neither is mere negligence. See Miller v. United States, 550 F.2d 17, 22 (Ct. Cl. 1977). Commercial Contractors, Inc. v. United States, 154 F.3d 1357, 136. "Inconsistencies, even if the discrepancy is large, do not rise to the level of fraud if there is a reasonable explanation for them." Larry D. Barnes, Inc. v. United States, 45 Fed. Appx. 907, 912 (Fed. Cir. 2002), citing, McCarthy v. United States, 229 Ct. Cl. 361, 670 F.2d 996, 1004 (Ct. Cl. 1982). In addition, even the fact that part of the claim is based upon a mistaken theory of recovery that is ultimately unsuccessful does not rise to the level sufficient to survive summary judgment. Corkle, 94 F. Supp. at 910-11. The affidavits

presented with this reply in response to the Government's additional findings of fact show that DeAtley has an explanation for every allegation made by the Government.[2]

Here, the Government cannot establish fraud as required or an attempt of fraud. M.A. DeAtley painstakingly reviewed its records and its certified claim is accurate. Even if the Court finds at trial that some of these items are not allowable as claims because they are made on a mistaken theory, it does not rise to the level sufficient to constitute fraud. Therefore, the Government's counterclaim under the Forfeiture of Fraudulent Claims Act must be dismissed.

[2] The Court should carefully review the Government's arguments and evidence. Even if the Government could meet the barest minimum to overcome summary judgment for certain claims, it may not be able to meet that standard for all of its counterclaims. The Federal Circuit has clearly established that "liability under one statute does not automatically trigger liability under the others." Larry D. Barnes, Inc. v. United States, 2002 U.S. App. LEXIS 16595 (Aug. 14, 2002), citing, for the proposition that a plaintiff might be liable under one statute but not under others, Miller v. United States, 213 Ct. Cl. 59, 550 F.2d 17, 22-23 (Ct. Cl. 1977); Little v. United States, 138 Ct. Cl. 773, 152 F.Supp. 84, 8788 (Ct. Cl. 1957); Young-Montenay v. United States, No. 90-3862 C, 1993 WL 721993 at *4 (Fed. Cl. Jan. 6, 1996).

**CONCLUSION**

Pursuant to the foregoing M.A. DeAtley's Motion for Summary Judgment should be granted.

DATED this 30th day of October, 2006.

s/ JOHN C. BLACK
JOHN C. BLACK
10 N. Post Street, Suite 200
Spokane, WA 99201-0653
Telephone: (509) 455-8711
Fax: (509) 455-8734

Of Counsel:
J. Michael Littlejohn
Akerman Senterfitt Wickwire Gavin
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1801- fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of October, 2006, a copy of the foregoing *M.A. DeAtley's Reply to Defendant's Opposition to Motion for Summary Judgment* was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

/s/ JOHN C. BLACK
JOHN C. BLACK

\wpdocs\1742\1806\Reply.Oppo.SJ