IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M.A. DeATLEY CONSTRUCTION, INC., | ) | |
| | ) | Case No.: 041052C |
| | ) | (Judge Edward J. Damich) |
| Plaintiff, | ) | |
| | ) | **AFFIDAVIT OF CRAIG T. OWENS** |
| vs. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

STATE OF WASHINGTON )
: ss
County of Spokane )

I, Craig T. Owens, being first sworn upon oath, depose and say:

1. I am over the age of 18, competent to testify to the matters contained herein and make this Affidavit based upon personal knowledge.

2. During the second year of the Flowery Trail Project, I was the Project Manager for M.A. DeAtley Construction, Inc. ("DeAtley"). I currently am the President and Owner of Owen's Construction, Inc.

3. In my capacity as project manager for DeAtley, I prepared DeAtley's claim, including the summary of expenses. I worked closely with M.A. DeAtley's accounting

department in an effort to make sure that we claimed only those expenses that we felt were caused by the Government's unsuitable quarry source. *A copy of the summary of DeAtley's expenses is attached to this Affidavit as **Exhibit A**.*

4. I have reviewed the Government's counterclaim. I have also gone back and reviewed DeAtley's claim summary and the supporting records. Based upon that review, I can categorically state that it was never our intent to include any expense for which DeAtley has been paid.

5. The Government's accusations about DeAtley's claim are false and the Government misunderstands DeAtley's claim.

6. Initially, it is important to point out that the claim which the Government bases its counter-claim on was submitted on September 18, 2003. However, this claim was not what DeAtley originally submitted as a change order request. Prior to submitting the claim document, DeAtley submitted a change order proposal containing a summary of expenses. We had several meetings with Federal Highway employees. The Government employees had certain suggestions concerning DeAtley's claims. In fact, they requested that DeAtley revise the expense summary to eliminate certain charges which were either duplicative or which they felt were inappropriate under the circumstances. Per the Government's request, we made significant revisions. The Government's new accusations about M.A. DeAtley's claim were never raised by the Government in these discussions.

7. On the Flowery Trail Project, the quarry source was designated by the Government. The Government tested and approved the source, as qualified for crushing and production of grade D aggregate. At bid time, we anticipated removing an overburden of only 3.5 meters based upon the contract documents. Based upon the geotechnical reports, we also anticipated minimal reject material. See **Exhibit B**, attached hereto.

***Accusation #1: Initial Placement of Aggregate: $23,767.34.***

8. The Government claims that DeAtley seeks costs for the "***initial crushing of the aggregate incurred between November 2, 2001 and November 13, 2001***" in the amount of $23,767.34. However, this accusation is untrue and apparently based upon false assumptions. The expense that the Government refers to is actually the additional cost incurred by DeAtley for hauling excess reject material for disposal from the designated quarry source to a stock pile location several miles from the quarry site. This additional expense was not part of our original scope, nor was DeAtley ever paid by the Government. These additional hauling costs are an appropriate claim item because they arise directly from the inadequate quarry source designated by the Government. However, it appears that the Government simply looked at the date of the expense and assumed the Government paid for it.

***Accusation #2: Placement of New Material: $21,264.35.***

9. The Government's next contention is that DeAtley's claim includes labor and equipment costs for placing aggregate on sections of the road bed where rejected aggregate had not been placed. This statement is untrue as well.

10. There are no costs included in our claim for placing aggregate on sections of the road bed, where none of the rejected aggregate had been placed. The Government's consultant identified the days of September 3-5, 10, 11, 16 and 18, 2002 as the days that he felt were days on which we improperly seek such money. However, the only costs that we seek on those days are for the costs of **picking up and hauling the *reject* material** which had previously been placed on the roadway. See **Exhibit C** attached. DeAtley is entitled to be paid for this extra work because of the failure of the Government source.

11. For example, the Government's own September 16, 2002 daily report shows that DeAtley was hauling reject aggregate to the ski area on that day. See **Exhibit C**. As noted in the Government's report, there were seven end dumps and pumps on the project on September 16, 2002. The daily report also reflects 29 employees employed by DeAtley on that particular day. However, DeAtley only seeks to recover for labor for the six employees that were hauling reject material away and the associated equipment costs. This represents only that expense for labor and equipment related to picking up and removing the rock which had previously been rejected.

***Accusation #3: Budinger Testing Costs for Testing: $3,247.15.***

12. The Government's next contention is that DeAtley included testing costs that were already paid for by the Government under the contract. It claims that these costs amounted to $3,247.15. (This total is derived from the entries on the attached claim summary sheet with the date of September 3, 2002, labeled Budinger). Budinger was DeAtley's testing subcontractor during the project. On September 3, 2002 our crushing subcontractor had remobilized and had begun crushing the replacement material. The $3,247.15 Budinger expenses for September 3, 2002 are costs incurred by DeAtley for **testing the replacement material** starting on September 3, 2002. These tests were additional work to Budinger's original contract and M.A. DeAtley was required to pay Budinger extra for these tests.

***Accusation #4: Budinger Testing Costs – August 22: $4,129.75.***

13. The Government's last contention is that DeAtley is making claim for costs incurred to hire Budinger "to prove its differing site conditions claim." Unfortunately, the Government's understanding of these tests is inaccurate.

14. On August 22, 2002, the Government rejected the Grade D aggregate material that we were placing on the roadway. The material had previously passed all testing prior to being placed and the rejection came as a complete surprise to us. We immediately asked Budinger to assist us in testing the material to help determine what the problem was and how we could remedy the situation. On August 22, 2002, Budinger took tests on the stockpiled material as well as tests on the native material.

15. We notified the Government of our intent to take these tests and we invited them to participate in the test to determine how to solve the problem in question. The Government refused. The purpose of these tests was very straightforward. At that point in time, we were evaluating our options. One option was to crush new material to blend with the existing stockpile. However, we were concerned whether the existing material was somehow degrading when it was handled and, therefore, would potentially never pass even if we were to blend more material into the pile. Budinger's tests actually confirmed our worst fears. So we had no option but to move to another location and to crush all new material a second time. The cost of testing the material was never paid for by the Government and it is appropriate to include our claim because these tests were to determine a possible solution to the problem long before any claim existed.

Craig T. Owens

CRAIG T. OWENS

SUBSCRIBED AND SWORN to before me this 27th day of October, 2006.

SHERRY A MORRISON
COMMISSION EXPIRES
NOTARY
PUBLIC
NOV. 04, 2009
STATE OF WASHINGTON

Sherry A. Morrison

Printed Name: Sherry A Morrison
Notary Public in and for the State
of Washington Residing at Spokane
My Appointment Expires: 11/4/09

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of October, 2006, a copy of the foregoing *Affidavit of Craig T. Owens* was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

/s/ JOHN C. BLACK
JOHN C. BLACK

wpdocs\1742\1806\Aff.Owens