# In the United States Court of Federal Claims

No. 04-1052 C
(Filed: February 28, 2007)

****************************************

**M.A. DeATLEY CONSTRUCTION, INC.**, Plaintiff,

v.

**THE UNITED STATES**, Defendant.

****************************************

Presentation of Claims to the Contracting Officer; Defective Specifications; Differing Site Conditions; Constructive Change; Economic Waste; Claims Arising From the Same Set of Operative Facts

## OPINION

*John C. Black*, Spokane, WA, counsel of record for Plaintiff.

*Leslie Cayer Ohta*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., counsel of record for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Bryant G. Snee*, Assistant Director.

**DAMICH**, Chief Judge.

This case comes before the Court on Defendant's Motion to Dismiss three of the five counts in Plaintiff's Complaint in their entirety and to dismiss one count in part. Plaintiff, M.A. DeAtley Construction, Inc. ("DeAtley"), seeks an equitable adjustment and/or damages for costs incurred in excess of the contract price for the Government's requiring it to replace crushed rock, laid as foundation for a road reconstruction project. Defendant requests partial dismissal for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), because the claims were not previously presented to the contracting

officer ("CO") for final decision. For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

**BACKGROUND**[1]

On February 9, 2001, the United States Department of Transportation, Federal Highway Administration, Western Federal Lands Highway Division ("Government"or "WFLHD"), awarded Plaintiff a contract (the "Contract") to reconstruct a portion of the Flowery Trail Road in the state of Washington. Compl. ¶ 4. As part of the reconstruction process, the contract required Plaintiff to crush rock and then to lay the crushed rock, known as "aggregate," to serve as a foundation for the road. Pl.'s Resp. at 2-4. The Government designated a source that Plaintiff had the option of using in the production of aggregate. *Id.* at 2. The Contract provided that the aggregate produced must meet certain standards to ensure a compacted and durable foundation for the pavement. *See id.* at 2-3.

Relying upon the Government's assurances that the designated aggregate source complied with contract specifications, Plaintiff utilized it and completed the rock crushing in the fall of 2001. *Id.* at 3-4. During the winter, Plaintiff alleges that it stored the aggregate in stockpiles in accordance with industry standards. Compl. ¶ 7. In August 2002, Plaintiff began laying the aggregate. *Id.* ¶ 8. While laying the aggregate, Plaintiff discovered that it had degraded to such an extent that it failed to satisfy contract standards. *Id.* ¶¶ 8-12. After informing the Government of the aggregate's deficiency, Plaintiff offered to provide the Government with a credit in the amount of $21,425.00, or 25% of the contract price, rather than replace the deficient aggregate. *Id.* ¶ 10. The Government declined Plaintiff's offer and instructed Plaintiff to remove the aggregate and replace it with new aggregate. *Id.* After completing the replacement, Plaintiff filed a certified claim with the contracting officer on September 18, 2003, seeking $277,833.55 in "additional compensation" for the costs associated with the added work.[2] Aff. of Mark DeAtley, App. A at 2-3. The CO denied Plaintiff's claim on December 11, 2003. Compl. ¶ 15.

On June 22, 2004, Plaintiff filed a six-count complaint against the Government seeking damages and/or an equitable adjustment of an amount to be determined at trial. Compl. ¶¶ 18-51. The Defendant filed its first Motion to Dismiss for failure to state a claim on November 28, 2005. The gravamen of Defendant's first Motion to Dismiss was that Plaintiff's claim was essentially a differing site conditions claim; therefore, all other claims should be dismissed. The

---

[1] The recitations that follow do not constitute findings of fact by the Court. Rather, the recited factual elements are taken from the parties' filings and are either undisputed or alleged and assumed to be true for the purposes of the pending motion.

[2] Plaintiff sought $164,223.55 for itself and additionally sponsored the claim of its subcontractor, DeAtley Crushing, for $113,610.00.

Court denied Defendant's Motion to Dismiss Counts I, II, IV, V, and VI. (Count VI, unjust enrichment, was denied as moot after Plaintiff's voluntary withdrawal of that cause of action.)[3]

Following extensive discovery, Plaintiff currently seeks to recover damages for breach of contract and breach of the duty of good faith and fair dealing (Count I). Additionally, Plaintiff desires an equitable adjustment pursuant to the Contract Disputes Act ("CDA") on three counts: defective specifications (Count II), differing site conditions (Count III), and constructive change (Count IV). Lastly, Plaintiff seeks damages based on its economic waste claim (Count V).

Defendant has now moved for partial dismissal of Plaintiff's claims under RCFC 12(b)(1), arguing that because Plaintiff merely presented a differing site condition claim to the CO, this Court does not possess subject matter jurisdiction over the claims of defective specifications (Count II), constructive change (Count IV), and economic waste (Count V). In addition, Defendant seeks dismissal of the claims in Count I of Defendant's alleged failure to conduct source testing and of breach of the implied covenant of good faith and fair dealing.[4]

Plaintiff counters that while its claim to the CO did not articulate its specific legal arguments, "the essence of the claim" was the same as the claims presented here. Pl.'s Resp. at 9. According to Plaintiff, its complaint merely "asserted [the] legal theories associate[d] with its claim that were based on the same operative facts presented to the Contracting Officer." *Id.* at 6.

## DISCUSSION

### I. Standard of Review

In considering Defendant's Motion to Dismiss under RCFC 12(b)(1), the allegations of the complaint must be construed favorably to the Plaintiff. *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Plaintiff, however, bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

---

[3] The Court also dismissed, without prejudice, Plaintiff's prayer for attorneys' fees as premature and Plaintiff's prayer for prejudgment interest to the extent that it seeks interest above the rate provided by law. *M.A. DeAtley Const., Inc. v. United States*, 71 Fed. Cl. 370 (2006).

[4] Defendant does not, however, seek dismissal of the portion of Plaintiff's breach of contract claim relating to the Government's alleged failure to provide a suitable source material for the aggregate (Count I) or its differing site conditions claim (Count III). Def.'s Mot. at 6.

## II. Analysis

The Tucker Act provides the Court of Federal Claims with jurisdiction over contract claims or disputes between contractors and the United States "arising under section 10(a)(1) of the Contract Disputes Act of 1978 ["CDA"] . . . [in] which a decision of the contracting officer has been issued under Section 6 of that Act." 28 U.S.C. § 1491(a)(2) (2000).[5] The CDA gives this Court jurisdiction over a particular claim only when the claim has first been presented to the CO for decision.[6] 41 U.S.C. § 605(a) (2002) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."). Accordingly, a contractor may not make a claim that was not previously presented to the CO for decision, *Santa Fe Eng'r v. United States*, 818 F.2d 856, 858 (Fed. Cir. 1987), because the CO's statutory purpose is "to receive and pass judgment on the contractor's entire claim." *Scott Timber Co. v. United States*, 333 F.3d 1358, 1366 (Fed. Cir. 2003). A contractor's claim to the CO need not be in "any particular form or use any particular wording," but it must provide "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987).

Where the contractor has not presented its claims to the CO in the exact terms of the complaint, the Federal Circuit instructs that a contractor has sufficiently established subject matter jurisdiction in this Court when its claims here "arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery" when compared with its claim presented to the CO. *Scott Timber*, 333 F.3d at 1365; *See also Cerebronics*, 13 Cl. Ct. at 418-419 (a contractor is entitled to "augment the legal theories underlying its claim," but not to "change the essence of the claim"). Typically the focus is on the "operative facts" of the claims submitted to the CO, *see, e.g., Cerberonics, Inc. v. United States*, 13 Cl. Ct. 415, 417 (1987), which are "the essential facts that give rise to the cause of action." *Kiewit Constr. Co. v. United States*, 56 Fed. Cl. 414, 420 (2003). Subject matter jurisdiction over a particular CDA claim is lacking, unless it "arise[s] from the same set of operative facts as the claim submitted to the contracting officer." *J. Cooper & Assoc., Inc. United* States, 47 Fed.

---

[5] Section 10(a)(1) of the Contract Disputes Act is codified at 41 U.S.C. § 609(a)(1), and section 6 is codified at 41 U.S.C. § 605.

[6] Where the claim is for more than $100,000, the contractor must certify it before the contracting officer. 41 U.S.C. § 605(c)(1) (2000). While the CDA does not define the term "claim," the Federal Acquisition Regulation ("FAR") defines the term as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 52.233-1(c) (2005); *see also Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc); *Garrett v. Gen. Elec. Co.*, 987 F.2d 747, 749 (Fed. Cir. 1993).

Cl. 280, 285 (2000) (*citing Tecom, Inc. v. United States*, 732 F.2d 935, 936-937 (Fed. Cir. 1984)).

For all of the counts considered below, the Plaintiff is claiming essentially the same relief as it did before the CO, and it did not present any specific legal theories to the CO. Therefore, the Court focuses on whether its claims here "arise from the same operative facts" as the previous claims made administratively to the CO.

**A. Count I: Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

The Defendant challenges two aspects of Plaintiff's breach of contract claim, the one based on Defendant's alleged failure to conduct source testing and the other alleging breach of the implied covenant of good faith and fair dealing.

Plaintiff's Complaint alleges that the Government breached its duty to test the source for aggregate that it designated in order to ensure that it met Contract specifications. Compl. ¶ 19-20. In Plaintiff's certified claim, the CO was put on notice of the following facts:

> • The Government "relied on the Geotechnical Report to represent source as acceptable for project aggregates."
>
> • The Government "waived the source qualification requirements for the second pit crushed in, which resulted in the ultimate materials that were placed and incorporated in the roadway" and also "conducted no testing of the source after it was opened up."
>
> • The Government's "personnel indicate that the FP-96 General Specifications tell them they can test any time in any way. This is absolutely incorrect . . . the FP-96 Specifications are General Specifications that are overridden by the contract[']s 'Special Contract Requirements' (SCR's)."

Aff. of Mark DeAtley, App. A at 24-25.

The Court finds that Plaintiff's breach of contract claim here arises from the same operative facts as its claim to the CO. Its recitation of these operative facts clearly and unequivocally put the CO on notice that Plaintiff's claim, at least in part, was that it suffered damages because Defendant breached a duty to conduct source testing pursuant to the Contract's "Special Contract Requirements." Accordingly, the Court DENIES Defendant's motion to dismiss regarding Plaintiff's breach of contract allegation that is premised upon Defendant's duty to conduct source testing.

Plaintiff's Complaint also alleges that the Government is "charged with the obligation to act in good faith and to cooperate with the contractor, so as not to interfere with the contractor's performance." Compl. ¶ 19. The Government breached its duty of good faith and fair dealing, Plaintiff contends, when it "wrongfully reject[ed]" the aggregate produced in accordance with the Contract. *See* Compl. ¶ 21. The Federal Circuit recognizes that "[e]very contract, as an aspect of the duty of good faith and fair dealing, imposes an implied obligation 'that neither party will do anything that will hinder or delay the other party in performance of the contract.'" *Essex Electro Eng'rs, Inc. v. Danzig*, 224 F.3d 1283, 1291 (Fed. Cir. 2000) (*quoting Luria Bros. & Co. v. United States*, 369 F.2d 701, 708 (Ct. Cl. 1966)); *see also Peter Kiewit Sons' Co. v. United States*, 151 F. Supp. 726, 731 (Ct. Cl. 1957) (explaining that in every government contract there is an implied obligation on the part of the government not to willfully or negligently interfere with a contractor's performance). In its claim to the CO, Plaintiff presented the following operative facts:

> [The Government's] rejection of this material [the aggregate] was unjust in its base . . . [because] the materials were clearly rejected by [the Government] for no other reason than the fact that the percent passing the #200 (75um) sieve averaged a 10.69% . . . . This rejection is very hard to fathom when you consider that the material is that close to the contract required 10% . . . . This is hardly material that should be rejected out of hand. *The fact that [the Government] decided to force the contractor to remove this material rather than just leave it in place as extra road base below the new material cannot be justified.*

Aff. of Mark DeAtley, App. A at 25-26 (emphasis added).

Here, Plaintiff's claim clearly articulates that Defendant hindered its performance under the Contract by requiring that Plaintiff remove the original aggregate. As Plaintiff explained in its certified claim to the CO, it should have been able simply to leave the original aggregate in place as "extra road base" beneath new aggregate that fully met contract specifications.

The inquiry here is merely whether the CO was presented with the same operative facts underlying its legal theory in the Complaint before the Court. The Court finds that Plaintiff's implied covenant of good faith and fair dealing cause of action does indeed arise from the same set of operative facts that was presented to the CO. The set of facts Plaintiff presented to the CO clearly and unequivocally conveyed its position that Defendant's wrongful rejection of the aggregate interfered with its performance under the Contract. The Court, therefore, DENIES Defendant's Motion to Dismiss regarding Plaintiff's implied covenant of good faith and fair dealing claim.

### B. Count II: Defective Specifications

While Plaintiff does not articulate in its Complaint how the design specifications are defective, light is shed on this issue by recurring to Plaintiff's arguments in its opposition to Defendant's first Motion to Dismiss. *See DeAtley*, 71 Fed. Cl. at 374. There, Plaintiff alleged that the specifications were defective not only because of Defendant's failure to disclose the deficient aggregate source, but because the Government "failed to have criteria which would allow for normal degradation of this material after the crushing operation." Pl.'s Resp. ¶ 4. The contract capped the gradation specifications at 10% with no tolerances, although Plaintiff alleges that it is customary to allow for tolerances in road-building. Had the specifications included tolerances of fine material, Plaintiff contends, the aggregate base would have met contract standards. *See id.* ¶¶ 3-4. This Court denied Defendant's previous Motion to Dismiss on this point; it found Plaintiff's defective specifications claim was distinct from its differing site conditions claim because of Plaintiff's contention that the specifications were defective due to a failure to permit a gradation tolerance.

The issue here, however, is whether this claim was presented to the CO. Unfortunately for Plaintiff, the Court has been presented with no indication that Plaintiff's claim to the CO asserted that the specifications were deficient because they did not allow for gradation tolerances–Plaintiff merely alleged that the *source* proved to be defective. Moreover, to the extent that the defective specification claim was based on the Defendant's failure to disclose the differing site condition (that is, the defective source), it should collapse into the latter count. *See Comtrol, Inc. v. United States*, 294 F.3d 1357, 1362 (Fed. Cir. 2002) ("Although differing site conditions and defective specifications claims are distinct in theory, they collapse into a single claim . . . where the alleged defect in the specification is the failure to disclose the alleged differing site condition"). Because the operative facts which distinguished the defective specifications claim from the differing site conditions claim were not presented to the CO, this Court lacks subject matter jurisdiction over this claim. Thus, the Court GRANTS Defendant's Motion to Dismiss regarding Plaintiff's defective specification claim.

### C. Count IV: Constructive Change

Plaintiff's Complaint alleges that the Government constructively changed the contract "when the project engineer instructed DeAtley to remove the stockpiled [aggregate] . . . and replace it with new material," which resulted in delays, disruptions, and additional costs to its planned performance. Compl. ¶¶ 35-36. A constructive change occurs "where a contractor performs work beyond the contract requirements, without a formal order under the Changes Clause, either due to an informal order from, or through the fault of, the government." *See Navcom Def. Elec., Inc. v. England*, 53 Fed. Appx. 897, 900 (Fed. Cir. 2002) (*citing Ets-Hokin Corp. v. United States*, 420 F.2d 716, 720 (Ct. Cl. 1970)).

Plaintiff explained to the CO that because Defendant "force[ed] the contractor to remove the material rather than just leave it in place," the former "incurred substantial costs from placing

the material the first time, then picking it up, hauling [the aggregate] to a waste site, hauling material to the Crusher to produce [aggregate] the second time, remobilizations, recrushing [the aggregate], retesting, hauling [the aggregate] back to the project, surveying, equipment time, and overhead." Aff. of Mark DeAtley, App. A at 25-26. The Court finds that Plaintiff's constructive change claim is based on the same set of operative facts presented to the CO in its certified claim because it alleged that the Government made an informal order to the Plaintiff and its compliance with that order exceeded the bounds of the contract. Accordingly, Defendant's Motion to Dismiss is hereby DENIED as to Plaintiff's constructive change claim.

**D. Count V: Economic Waste**

As stated in the "Background" section of this opinion, when the Plaintiff discovered that the aggregate derived from the government-designated source was deficient, Plaintiff offered to provide the Government with a credit in the amount of $21,425.00, or 25% of the contract price, rather than replace the deficient aggregate. Compl. ¶ 10. After declining Plaintiff's offer, the Government instructed Plaintiff to remove the aggregate and replace it with new aggregate. Plaintiff alleges in the Complaint that the Government "failed to mitigate damages by unreasonably rejecting the delivered material and ordering DeAtley to replace the material." *Id.* ¶ 40.

The economic waste doctrine is an exception to the general rule that "the government generally has the right to insist on performance in strict compliance with the contract specifications and may require a contractor to correct nonconforming work." *Granite Constr. Co. v. United States*, 962 F.2d 998, 1006-07 (Fed. Cir. 1992), *cert. denied*, 506 U.S. 1048 (1993) (citations omitted). The Federal Circuit has found that "the government should not be permitted to direct the replacement of work in situations where the cost of correction is economically wasteful and the work is otherwise adequate for its intended purpose. In such cases, the government is only entitled to a downward adjustment in the contract price." *Id.* at 1007. Ultimately, in order for Plaintiff to recover under a theory of economic waste, the Court must determine whether the aggregate "substantially complied with the specifications," the work performed was otherwise adequate for its intended purpose, and the cost of correction was economically wasteful. *Id.*

In its request to the CO, Plaintiff explained that when the aggregate produced in November 2001 came "within gradation tolerances," it offered a $21,425.00 credit to Defendant. After Defendant's refusal of the offer, Plaintiff removed, reproduced, and replaced the aggregate in order to strictly comply with the contract specifications. It then submitted a certified claim to the CO in the amount of $277,833.55, for costs it incurred for additional work performed. In its request to the CO, Plaintiff contended:

> [The Government's] rejection of this material [the aggregate] was unjust in its base . . . [because] the materials were clearly rejected by [the Government] for no other reason than the fact that the

> percent passing the #200 (75um) sieve averaged a 10.69% . . . . This rejection is very hard to fathom *when you consider that the material is that close to the contract required 10%* . . . . This is hardly material that should be rejected out of hand. The fact that [the Government] decided to force the contractor to remove this material rather than just leave it in place as extra road base below the new material cannot be justified . . . *one can only surmise that the road structure would have been better with it left in place.*

Aff. of Mark DeAtley, App. A at 25-26 (emphasis added). Plaintiff's certified claim to the CO clearly and unequivocally alleged that the aggregate substantially complied with the specifications, that it was otherwise adequate for its intended purpose, and that its replacement was economically wasteful. Accordingly, the operative facts in support of Plaintiff's economic waste claim were in fact presented to the CO. Defendant's Motion to Dismiss is, therefore, DENIED with respect to Plaintiff's economic waste claim.

## III. Conclusion

Defendant's Motion to Dismiss for lack of subject matter jurisdiction is GRANTED with respect to Count II and DENIED with respect to Counts I, IV, and V.

s/Edward J. Damich
EDWARD J. DAMICH
Chief Judge