IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M.A. DeATLEY CONSTRUCTION, INC., | ) | Case No.: 041052C |
| | ) | (Judge Edward J. Damich) |
| Plaintiff, | ) | |
| vs. | ) | **AFFIDAVIT OF JOHN C. BLACK** |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

STATE OF WASHINGTON )
) ss
County of Spokane )

I, JOHN C. BLACK, being first sworn upon oath, say as follows:

1. I am the attorney of record for M.A. DeAtley Construction, Inc. in this matter. I am over 18, competent to testify to the matters contained herein, and make this Affidavit based upon personal knowledge.

2. The parties arranged a settlement meeting in lieu of formal ADR proceedings. On December 13, 2004, Leslie Ohta, government counsel, sent an email to Dunn & Black detailing the terms of the settlement meeting. In that email Ms. Ohta states:

> *I would like to discuss settlement of this matter in Vancouver on January 27 and 28, 2005. I have attached a very preliminary draft agenda for your review and comments. This meeting is contingent upon your agreement that the meeting and all writings, conversations, and discussions leading up to it are conducted under the parameters of "settlement discussion" and as such are not subject to discovery or for impeachment purposes.*

Attached hereto as **Exhibit A** is a true and correct copy of Ms. Ohta's email.

3. M.A. DeAtley and the government agreed that all discussions and negotiations pursuant to Ms. Ohta's terms at the settlement meetings would be settlement negotiations and would be inadmissible under ER 408.

4. On March 23, 2005, the parties met and engaged in settlement negotiations.

5. After the government amended its Answer to allege fraud against M.A. DeAtley, I deposed Mr. Leathers. During that deposition, Ms. Ohta would not let me question Mr. Leathers about any settlement discussions.

//

//

//

6. Attached hereto as **Exhibit B** is a true and correct copy of an excerpt from Mr. Leathers' deposition, specifically pages 1-9, 38-57.

______________________________
JOHN C. BLACK

SUBSCRIBED AND SWORN to before me this *30th* day of May, 2007.

*Karen C. Van Hees*
Print Name: *Karen C. Van Hees*
Notary Public in and for the State of Washington, residing in *Spokane*.
My Commission expires: *04-04-09*

KAREN C. VAN HEES
STATE OF WASHINGTON
NOTARY --o-- PUBLIC
MY COMMISSION EXPIRES 4/4/2009

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 31st day of May, 2007, a copy of the foregoing *Affidavit of John C. Black* was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

/s/ JOHN C. BLACK
JOHN C. BLACK

**Jessica Johnson** DeAtley-1806

**From:** Lawyers [lawyers@dunnandblack.com]
**Sent:** Monday, December 13, 2004 9:46 AM
**To:** jjohnson@dunnandblack.com
**Subject:** FW: DeAtley, Settlement meeting

DeAtley, Settlement, Meeting, ...

I think this would be yours. Thanks, Betty

DUNN & BLACK, P.S.
10 North Post, Suite 200
Spokane, WA 99201

Telephone: (509) 455-8711
Fax: (509) 455-8734

The information contained in this email is confidential and protected by the attorney-client or attorney work product privilege. The privilige is not waived by virtue of sending this email. If you are not the intended recipient of this email, please reply to the sender that you received this message in error; then delete this email from your system. Thank you.

-----Original Message-----
From: Leslie.Ohta@usdoj.gov [mailto:Leslie.Ohta@usdoj.gov]
Sent: Monday, December 13, 2004 8:55 AM
To: 'lawyers@dunnandblack.com' (Receipt Notification Requested) (IPM Return Requested)
Subject: DeAtley, Settlement meeting

I would like to discuss settlement of this matter in Vancouver on January 27 and 28, 2005. I have attached a very preliminary draft agenda for your review and comments. This meeting is contingent upon your agreement that the meeting and all writings, conversations, and discussions leading up to it are conducted under the parameters of "settlement discussions: and as such are not subject to discovery or for impeachment purposes.

Leslie Ohta

EXHIBIT
A

UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - - -

RECEIVED
MAY 18 2006
DUNN & BLACK

M.A. DeATLEY CONSTRUCTION, INC.,

Plaintiff,

vs C.A. No. 041052C

THE UNITED STATES,

Defendant.

- - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF FRANCIS D. LEATHERS, P.E.,F. ASCE, called as a witness by counsel for the Plaintiff, pursuant to the provisions of Federal Rules of Civil Procedure, before Victoria S. Reade, Professional Court Reporter and Notary Public, in and for the Commonwealth of Massachusetts, taken at 101 Cambridge Street, Burlington, Massachusetts, on Thursday, April 27, 2006, commencing at 8:30 a.m.

EXHIBIT B



2

APPEARANCES:

DUNN & BLACK
BY: Mr. John C. Black, Esq.
Suite 200, Peyton Building
10 North Post
Spokane, Washington 99201
509-455-8711
jblack@dunnandblack.com
Counsel for the Plaintiff

U.S. Department of Justice
BY: Ms. Leslie Cayer Ohta, Esq.
1100 L. S N.W.
Washington, DC 20530
202-307-0252
leslie.ohta@usdoj.gov
Counsel for the Defendant

Also Present:
U.S. Department of Transportation
Timothy J. Binder, Attorney Advisor
Western Federal Lands Highway Division
610 East 5th Street
Vancouver, Washington 98661-3893



360-696-7976
tbinder@wfl.fha.dot.gov



INDEX


| Testimony of: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Francis D. Leathers, P.E. | | | | |
| by Mr. Black | 6 | | | |


EXHIBITS


| Exhibit No. | | Page |
|---|---|---|
| 1 | Objection of Francis D. Leathers to Subpoena Duces Tecum Served by the Plaintiff | 12 |
| 2 | E-Mail, 4/21/06 | 12 |
| 3 | Defendant's Responses to Plaintiff's Third Set of Interrogatories and Request for Production of Documents | 12 |
| 4 | Response of Rebuttal Report of Contractor's Expert Allen B. Gifford, P.E., February 13, 2006 | 17 |
| 5 | Suggested Topics and Questions for Gifford's Deposition, 3/14/06 | 17 |
| 6 | Response to M.A. DeAtley Construction, Inc.'s Geotechnical Expert Report | 18 |
| 7 | Summary Statement of Expert Opinions March 10, 2005 | 38 |
| 8 | Geotechnical Expert Report, 1/4/06 | 38 |
| 9 | Response to Rebuttal Report of Contractor's Expert, Stuart Schwotzer, LPG, CPG, 2/7/06 | 62 |
| 10 | Photocopy of Photographs of Site 5/15/02 | 117 |
| 11 | Correspondence, 2/26/03 | 226 |




EXHIBITS ATTACHED TO ORIGINAL TRANSCRIPT

PROCEEDINGS

FRANCIS D. LEATHERS, P.E., F. ASCE, having been satisfactorily identified by the production of his driver's license, and duly sworn by the Notary Public, was examined and testified as follows:

DIRECT EXAMINATION BY MR. BLACK:

Q. Will you state your full name and address, please.
A. Francis D. Leathers. My home address is 24 Tufts Road in Winchester, Massachusetts 01890.
Q. And your business address?
A. GEI Consultants, 1021 Main Street, Winchester, Massachusetts 01890.
Q. Have you had your deposition taken before?
A. Yes, I have.
Q. On how many occasions?
A. I believe six.
Q. Were those depositions in the context of providing testimony as an expert consultant?
A. Yes, they were.



Q. Have you provided testimony in an arbitration or a court action?
A. I have provided testimony in court three times.
Q. And were those three times the same cases that you had your deposition taken in as well?
A. Yes, I had my deposition taken in all three of those.
Q. So three of the six times went to trial?
A. Right.
Q. When were you retained by the United States Government in this case; do you recall?
A. In September of 2004.
Q. Who retained you?
A. Leslie Ohta from the United States Department of Justice.
Q. Have you worked for Ms. Ohta before?
A. No, I had not.
Q. Had you worked with the United States Justice Department before?
A. No, I have not.
Q. Have you ever been employed with the U.S.



Government as an expert consultant and/or witness?
A. No.
Q. Do you know how Ms. Ohta came to get or obtain your name?
A. I was referred to her through the firm Simpson Gumpertz, by the firm Simpson Gumbertz and Heger.
Q. And that's a law firm?
A. No, that's a consulting engineering firm.
Q. Can you tell me the nature of the six -- well, back up.

How many times have you been employed as an expert consultant in cases?
A. I don't know the precise number, I would say 12 to 15.
Q. The cases that went to trial, can you tell me what those cases were.
A. Yes. The first one was, the ones that went to trial, the first one was a personal injury claim related to a gas main explosion in Quincy, Illinois.

The second one was failure of a large diameter pipe at a power plant in



Baton Rouge, Louisiana, and the third one, I have to think for just a moment, I don't recall right offhand what the third one was.
Q. How did your expertise lend itself with the personal injury claim and the failure of the large diameter pipe?
A. The personal injury claim, the gas main explosion appeared to be related to some excavation and grouting work that was being performed on a construction site, and I was brought in as a geotechnical expert to evaluate whether or not the construction work led to the gas main break, led to the explosion.

In the pipe failure the apparent cause, again, of the pipe failure, this was a large diameter fiberglass pipe, was related to the placement and adequacy of the backfill around the pipe, and, again, I was evaluating the geotechnical work related to the installation of the pipe and the performance of the pipe.
Q. Can you recall the other three depositions





4

Page 38

MR. BLACK: Let's mark this next one, please.

(EXHIBIT NOS. 7-8 WERE MARKED FOR IDENTIFICATION.)

Q. I am going to hand you Exhibit No. 7 and Exhibit No. 8 and we have already introduced Exhibit No. 6.

Exhibit No. 6 was your rebuttal report and Exhibit No. 8 was your revised report provided at the deposition of Mr. Gifford prior to that and then Exhibit No. 7 is a document called Summary of Statement Opinions.

MS. OHTA: I object to the use of this document. This was prepared by Mr. Leathers for the purpose of the settlement meeting.

MR. BLACK: Objection noted.

Q. Mr. Leathers, Exhibit No. 7 is a document that you prepared and provided, I think, via Ms. Ohta to our office in March of 2005; do you recall that?

A. Yes.

MS. OHTA: Again, I am going to

Page 39

object. We had an agreement that all documents prepared for or used in preparation or during the settlement meeting were to be protected from further disclosure or use as having been provided for settlement purposes only.

Questioning Mr. Leathers about this document is a clear violation of that agreement.

MR. BLACK: Well, counsel, that agreement, first of all, you have violated that agreement. You have voilated all ethical rules concerning disclosing confidential settlement discussions to the Court.

You have accused my client of fraud based upon settlement discussions that occurred during the settlement meetings, so your objection is noted, but I am going to ask him about this.

MS. OHTA: And I will direct him not to answer any questions. It's a clear violation of our agreement.

MR. BLACK: Well, there was no

Page 40

such agreement in the way that you characterize it, it was just written documents; it was all discussions.

Counsel, you have alleged fraud against my client and you have based it upon discussions in the settlement conference, and, therefore, I am entitled to ask this witness concerning that.

MS. OHTA: You will have to bring it up with the Court and get a court order directing Mr. Leathers to answer questions.

MR. BLACK: Just for the record, I'll continue.

BY MR. BLACK:

Q. Now, Mr. Leathers, Exhibit No. 7 was a summary statement of your opinions in March of 2005, correct?

MS. OHTA: Mr. Leathers, although I am not your counsel, you are under contract with the Department of Justice and it is my position that Mr. Black asking any questions about the opinions that you expressed during that

Page 41

settlement conference is a clear violation of the understanding the parties had going into that meeting, and, therefore, I would ask you not to answer any questions until the Court orders otherwise.

MR. BLACK: Are you instructing him not to answer?

MS. OHTA: The record speaks for itself.

MR. BLACK: Counsel, are you instructing this witness not to answer the question?

MS. OHTA: I am not his attorney.

MR. BLACK: So you're not instructing him?

MS. OHTA: I am not his attorney.

MR. BLACK: You're asking him?

MS. OHTA: I am asking him not to answer any questions concerning this matter until the Court rules on it.

BY MR. BLACK:

Q. Mr. Leathers, let me repeat the question.

Page 42

Exhibit No. 7 is a summary statement of opinions you prepared on March 10, 2005, correct?
A. Yes, it is.
Q. Do you intend to testify at the time of trial to any of the opinions contained in Exhibit No. 7?
MS. OHTA: Again, I object to that question on the grounds it is my prerogative as the justice attorney representing the Government to determine what questions I will ask Mr. Leathers during his direct examination at the trial of this matter; it is not something Mr. Leathers is going to decide.
To the extent that he knows what I am going to him, he can answer the question.
Q. Go ahead and answer.
MS. OHTA: If you know what I am going to ask you to testify to.
A. I don't know.
Q. For example, Paragraph No. 1 of Exhibit No. 7 expresses that the Government

Page 43

exercised good engineering judgement in the course of performing appropriate and sufficient geotechnical explorations; do you see where it says that?
MS. OHTA: I am, again, going to interpose the same objection and suggest that if you do not cease asking questions about a clearly privileged document, I think we should try and contact the Court and see if we can have a telephone status conference regarding this matter.
MR. BLACK: Counsel, this is not a privileged document. This is a document prepared by this witness that relates to his opinions.
There is absolutely no privilege, and I am entitled to discovery, whether it's admissible or not is a different issue, therefore, I am going to continue this line of questioning.
I'm entitled to ask this witness whether any of these opinions are opinions he's going to testify to at trial.
MS. OHTA: It is clearly a

Page 44

privileged document based upon the parties agreeing that all discussions, all materials prepared for use during that settlement meeting were protected from further disclosure and further use on the grounds that it was prepared for settlement purposes only.
MR. BLACK: Then why did you assert to the Court as the basis for your motion to amend in the complaint asserting fraud against my client, discussions in the settlement negotiation?
MS. OHTA: Mr. Black, I am not aware much any representation that I made in that motion to the contents of any settlement negotiations.
The only representation I made in that motion had to do with the timeliness of the government filing the motion to amend and stated that it was brought to the attention of DeAtley, M.A. DeAtley Crushing that we believed that the claim was overstated.
That is not revealing the

Page 45

contents of the communications and if you believe that somehow my making that statement waived the privilege, you should have filed a motion or brought it my attention before this deposition commenced.
MR. BLACK: Counsel, there is no such privilege, No. 1; secondly, what you say there is absolutely incorrect.
You specifically stated that the information was brought to our attention at the settlement meeting and the information is contained in this document.
Counsel, I am going to ask this witness, and, in fact, even if there was any kind of privilege it was, in fact, waived by your assertion violating not only the agreement but ethically violating rules related to privileged settlement discussions.
MS. OHTA: There was nothing that was revealed in my motion to amend the complaint to assert a counter-claim in fraud that indicated in any way M.A.





6

Page 46

DeAtley or DeAtley's Crushing's position with respect to the settlement of this case.

MR. BLACK: Counsel, you not only asserted it in the motion, you asserted it in the complaint.

BY MR. BLACK:

Q. Now, Mr. Leathers, let me see if I can ask it this way: Exhibit No. 8 is your revised report, correct?

A. Let me take just a moment to look at it.

Q. I hope it is.

A. Yes, it is.

Q. It say revised?

A. I know it is, I am just making sure all the revised pages are there.

Q. Now, did you submitted an original report and then a revised report which made some corrections, correct?

A. Yes.

Q. Aside from the mathematical corrections, substantively there wasn't any additional information; is that accurate?

A. That's correct.

Page 47

Q. And the reason I ask that is, we can pretty much ignore your original report and just look at your revised report for your opinions?

A. That's correct.

Q. So you intend to testify concerning opinions contained in your report which is Exhibit No. 8?

MS. OHTA: Again, I object to that question. It is not Mr. Leathers' prerogative to decide what he is going testify about.

MR. BLACK: Counsel, you know the rule that he can only testify as to what's in the report.

Q. Do you intend to testify, Mr. Leathers, to any information or options other than what's contained in your report which is Exhibit No. 8 and your rebuttal report which is Exhibit No. 6?

MS. OHTA: Again, I object on the grounds that whatever Mr. Leathers' intentions are are irrelevant.

The issue is whether or not

Page 48

Mr. Leathers has opinions that are not contained in this report that he has indicated to the government that he is able to testify to.

Q. Go ahead and answer, if you can.

A. At this point I intend to testify to the opinions that are represented in this report.

Q. Which is Exhibit No. 8?

A. Exhibit No. 8.

Q. And also Exhibit No. 6, the rebuttal report?

A. Yes.

Q. Do you still hold the opinions that are set out in Exhibit No. 7, the summary statement of expert opinions?

MS. OHTA: Same objection. Would you read that question back, please.

(LAST QUESTION READ BACK AS REQUESTED.)

A. I do, except for No. 15, the amount may be different.

Q. Would you explain.

A. I am aware that during the settlement

Page 49

discussions and subsequent to that that some further evaluations had indicated that our initial evaluations of this amount of overstatement -- how do I want to say this -- let me start that over again.

I believe that the amount of overstatement that we say here is slightly too large. I don't have an exact number, but I think we felt that there were a few things that should not be included in the claim that subsequently information came to light that we felt should be validly included in the claim.

Q. So who did this analysis, was that you or someone that was working with you?

A. I worked on -- Jim Nickerson in our office did the bulk of the work. I worked on it to some degree and I have not really followed up on that, so I don't know other than I think as the result of the amount might be slightly different.

Q. But you do have knowledge of the calculations in terms of what you felt?

Page 50

A. I have knowledge of what went into this number.
Q. And you recall in March of 2005 discussing with M.A. DeAtley representatives that there was, that you felt that there was claim items that should not have been included; do you recall that?
A. I do recall that.
Q. And do you recall that M.A. DeAtley representatives took a look at that and gave explanations as to why they felt the claim items should be properly included following those discussions?
A. I don't recall them in detail, no.
Q. But in general?
A. I do remember that they had some responses, yes.
Q. Do you have any information that the claim items that M.A. DeAtley was including was overstated intentionally?
MS. OHTA: Objection, calls for a legal conclusion. He is not competent to answer that question.
Q. Go ahead and answer it.

Page 51

A. I have no knowledge or opinion as to the intent.
Q. Do you have any knowledge or information that M.A. DeAtley had intended to fraud the Government in including the amounts, any amounts that you felt were overstated?
MS. OHTA: I object on the grounds of competency. Mr. Leathers is not an attorney.
He is not competent to testify as to whether or not the actions of M.A. DeAtley were or were not fraudulent.
Q. You can go ahead and answer.
MS. OHTA: If you believe you're competent to answer.
A. I have made no evaluation of that.
MR. BLACK: Would you read the question back, please.
(LAST QUESTION READ BACK AS REQUESTED.)
Q. I appreciate you made no analysis of that, but my question was slightly different.
Do you have any information or evidence or that M.A. DeAtley intended to

Page 52

fraud the Government in including any items in its claim?
MS. OHTA: Same objection. He is not competent to answer whether or not M.A. DeAtley intended to act fraudulently in submitting an overstated claim to the government.
A. I have not looked at the information to determine that. I have no information.
Q. Thank you. Do you recall that M.A. DeAtley in the discussions with you and your personnel believed that the items in question which you have tabled as Item No. 15 were, in fact, properly claimed items?
A. I do remember that there was discussion about that. I don't remember specific items.
Q. Did you ever sit down with M.A. DeAtley and ask them to describe why they felt that the elements that make up Item No. 15 were properly claimed items?
MS. OHTA: Again, I am going to interpose the same objection that I have

Page 53

made repeatedly concerning all questions concerning the conduct of the settlement meeting that occurred in March of 2005.
Q. Go ahead and answer.
MS. OHTA: And I'd like to take a recess.
MR. BLACK: No, we have a pending question.
MS. OHTA: I asked to take a recess.
MR. BLACK: We have a pending question.
THE WITNESS: Repeat the question, please.
(LAST QUESTION READ BACK AS REQUESTED.)
A. No, I have not.
MS. OHTA: We're going to take a break.
(THEREUPON, THERE WAS A SHORT RECESS.)
MR. BLACK: Ms. Ohta and I have discussed Exhibit No. 7 and I indicated and I believe we were in agreement that if





8

she will stipulate that the opinions and/or statements that are contained in Exhibit No. 7 will not be offered at the time of trial and Mr. Leathers will not testify regarding the information in those opinions to the extent that they're not in his reports which are Exhibit No. 8 and Exhibit No. 6 that I can move on and she will not introduce that information at trial.

MS. OHTA: Just to clarify my understanding of our agreement, I will stipulate that Mr. Leathers will be asked to testify about those expert opinions that are contained in his report dated March 14, 2006.

In additional, Mr. Leathers will testify with respect to his opinions with regard Gifford's expert report and Mr. Gifford's expert rebuttal report and in addition he will testify about his opinions concerning Mr. Schwotzer's rebuttal report, but he will not be asked to give expert opinions in areas that are



not encompassed by what I just described.

MR. BLACK: And that would include any of the opinions or evidence that is in Exhibit No. 7 that you don't find in those reports, correct?

MS. OHTA: Only with the caveat that if either Mr. Gifford or Mr. Schwotzer renders any opinion with respect to any of those items that Mr. Leathers, if appropriate, will offer opinions contrary to those opinions.

MR. BLACK: On rebuttal, you're talking about?

MS. OHTA: Correct.

MR. BLACK: To the extent they're not in these reports, I would object to any attempt by Mr. Leathers to testify concerning anything that is not in these reports. I guess I am not following you.

MS. OHTA: As long as by anything you mean expert opinions.

Obviously, he didn't put every single factual detail in his expert



reports; it would have become tones, but just with respect to the expert opinions, those are the expert opinions which I will elicit testimony from Mr. Leathers concerning on his direct testimony.

MR. BLACK: Just so the record is clear, I will move on and not inquire about the opinions in Exhibit No. 7 based upon the stipulation that those opinions will not be disclosed at the time of trial, to the extent, not in these other reports.

MS. OHTA: Again, just to be very clear, I will elicit from Mr. Leathers on direct testimony those expert opinions that are reflected in his expert report.

In addition, I will ask Mr. Leathers his opinions regarding the opinions to which Mr. Gifford and Mr. Schwotzer will have presumably already testified to.

MR. BLACK: I don't want to belabor this any longer. I am concerned



that with your caveats that that guts the agreement.

For example, Mr. Leathers, is he going to testify to Item No. 15 of Exhibit No. 7, which is the damage calculations, if you will?

MS. OHTA: And I will stipulate that there is no mention in his expert report about damages and I will not elicit any testimony from Mr. Leathers concerning damages and I will not elict any testimony from Mr. Leathers concerning the government's counter claim.

MR. BLACK: Item No. 1 of Exhibit No. 7 talks about the Government exercising good engineering judgement in the course of performing the geotechnical explorations, I believe that that information is not in these reports, at least in that fashion.

MS. OHTA: Well, again, I believe your experts are going to offer expert opinions in this regard and if they offer expert opinions in this regard then