IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| M. A. DEATLEY CONSTRUCTION CO., Plaintiff, | ) | |
| v. | ) | No. 04-1052C (Chief Judge Edward J. Damich ) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF FACT AND DEFENDANT'S PROPOSED CONCLUSIONS OF LAW REGARDING THE COUNTERCLAIMS IN FRAUD

## DEFENDANT'S PROPOSED FINDINGS OF FACT

### A. M. A. DeAtley Construction Co. ("DeAtley") Submitted A Claim To The Government.

1. On February 9, 2001, the Federal Highway Administration awarded a contract to DeAtley to construct and re-pave a portion of the Flowery Trail in Washington state. The contract provided that rock at a specified location was suitable for the production of aggregate needed for the roadbed. Defendant's Amended Answer and Counterclaims (Amended Answer) ¶ 56; Plaintiff's Answer to Defendant's Counterclaims (Plaintiff's Answer) ¶ 4; Contract No. DTFH70-01-C-00011 (contract), Defendant's Exhibit ("Def. Ex.") 7; Standard Specifications for Construction of Roads and Bridges on Federal Highway Projects, FP-96 (Standard Specifications for the Contract) ("FP-96"), Def.'s Exh. 8; Plans for Contract No. DTFH70-01-C-00011 (Plans), Def. Ex. 9.

2. DeAtley hired DeAtley Crushing to crush the aggregate for the project using rock from the Government-provided source. Amended Answer, ¶ 57; Plaintiff's Answer, ¶ 5.

3. The aggregate was crushed by DeAtley Crushing and stockpiled by DeAtley and DeAtley Crushing in November 2001. In August 2002, DeAtley placed the aggregate from the stockpiles

on the roadbed. Amended Answer, ¶ 58; Plaintiff's Answer, ¶ 6.

4. The aggregate placed in the roadbed failed to meet the contract gradation specifications and was, therefore, rejected. The Government required that DeAtley remove the aggregate and replace it with aggregate that met the contract specifications, or submit a written request to have the aggregate accepted at a reduced price, or through corrective action brought into conformity with the contract specifications, supported by adequate documentation. Amended Answer, ¶ 59; Plaintiff's Answer, ¶ 7; FP-96, Def. Ex. 8.

5. In September 2002, DeAtley crushed aggregate from a different source. That aggregate, when placed upon the roadbed, met the contract specifications, and the project was completed. Amended Answer, ¶ 60; Plaintiff's Answer, ¶ 8.

6. The Governments paid DeAtley the full amount of the contract price. Plaintiff's Response to Government's Proposed Findings of Uncontroverted Facts (Document 91), ¶ 19; Contract, Exhibit 7; Final Pay Estimate, Def. Ex. 236.

7. On September 18, 2003, DeAtley submitted a certified claim to the contracting officer requesting $164,223.55 for DeAtley and $113,610.00 for DeAtley Crushing for damages due to the costs incurred to remove and replace the rejected aggregate. Amended Answer, ¶ 51, Plaintiff's Answer, ¶ 9; DeAtley's certified claim (Claim), Def. Ex. 238.

8. DeAtley's claim was denied on December 11, 2003. Amended Answer, ¶ 62; Plaintiff's Answer, ¶ 9.

B. Plaintiff's Claim Was False

9. The amount claimed by DeAtley is overstated to the extent that DeAtley included amounts for both the initial production and placement of the rejected aggregate totaling

$23,734.34, and for the production and placement of the replacement aggregate. Claim, Def. Ex. 238.

a. DeAtley included costs in its certified claim that were incurred during the initial crushing of the aggregate that was rejected, that is, costs incurred between November 2, 2001, and November 13, 2001. Contract, Def. Ex.7; FP-96, Def. Ex. 8, Plans, Def. Ex. 9, and Claim, Def. Ex. 238.

b. Such costs include costs for both equipment and labor totaling $23,734.34. Claim, Def. Ex. 238.

c. DeAtley also included costs in its certified claim that were incurred during the crushing of the replacement aggregate, that is, costs incurred from approximately September 1, 2002, and September 15, 2002. Such costs include costs for both equipment and labor. Claim, Def. Ex. 238.

d. Those costs incurred in September 2002 constitute added costs to which DeAtley would be entitled if DeAtley prevails upon its differing site condition claim. The inclusion of costs for work that was not additional work, however, that is, for work that DeAtley was required to perform under the contract, that is, the work performed in November 2001, is fraudulent. Contract, Def. Ex. 7; FP-96, Def. Ex. 8; Plans, Def. Ex. 9, and Claim, Def. Ex. 238.

e. In effect, DeAtley is claiming costs for work that the government paid for under the contract. To claim such costs was clearly done either intentionally or with reckless disregard since even a cursory review of DeAtley's spreadsheets categorizing the claimed costs by activity and amount, demonstrates that DeAtley is seeking the costs incurred during the twelve days in November during which the rejected aggregate was crushed, as well as for about the same

number of days in September during which the replacement aggregate was crushed. Contract, Def. Ex. 7; FP-96, Def. Ex. 8; Plans, Def. Ex. 9, and Claim, Def. Ex. 238.

10. DeAtley included testing costs that were already paid for by the Government under the contract. Contract, Def. Ex. 7; FP-96, Def. Ex. 8; Final Pay Estimate, Def. Ex. 236; and Claim, Def. Ex. 238.

a. DeAtley used Budginger and Associates to perform the gradation testing of the aggregate to determine whether it met the gradation specifications. Contract, Def. Ex. 7; FP-96, Def. Ex. 8; and Claim, Def. Ex. 238.

b. Such testing was required to be performed under the contract and was paid for under the contract. Contract, Def. Ex. 7; FP-96, Def. Ex. 8; and Final Pay Estimate, Def. Ex. 236.

c. The gradation testing is done when the aggregate is placed on the roadbed. Plaintiff's Response to Government's Proposed Findings of Uncontroverted Facts, ¶ 6.

d. If the aggregate passes the gradation tests, the government then pays for the costs incurred by DeAtley, and DeAtley Crushing, for the crushing, placement, and testing of the aggregate. Plaintiff's Response to Government's Proposed Findings of Uncontroverted Facts, ¶ 6.

e. According to the spreadsheet that documented the costs claimed by DeAtley in its certified claim, DeAtley included costs for Budginger performing the gradation test on both the rejected aggregate and on the replacement aggregate. The additional work that DeAtley was required to perform was the testing of the aggregate the second time, that is, the testing of the replacement aggregate. The initial test were required to be performed under the contract and

were paid for by the the government under the contract. To include costs that DeAtley knows were not costs for extra work and that were already paid for by the government, constitutes fraud or, at a minimum, reckless disregard for the truthfulness of the claim. The initial testing costs amount to $2,567.30. Contract, Def. Ex. 7; FP-96, Def. Ex. 8; Final Pay Estimate, Def. Ex. 236; and Claim, Def. Ex. 238.

11. DeAtley included testing costs that were incurred solely to establish its claim. Claim, Def. Ex. 238.

a. After the aggregate was rejected, DeAtley went back to the roadbed cut from which the rock used to produce the rejected aggregate was taken. Claim, Def. Ex. 238.

b. DeAtley hired Budginger and Associates to take rock samples from the cut and to perform a durability test on those samples. Claim, Def. Ex. 238.

c. Such test were not required to be performed under the contract; such testing was performed by DeAtley in an attempt to support its differing site condition claim. The durability test results were cited by DeAtley in its claim, and at our settlement meeting, as evidence that the government designated source for the production of aggregate was unsuitable and therefore constitutes a differing site condition. Contract, Def. Ex. 7; FP-96, Def. Ex. 8; Plans, Def. Ex. 9; and Claim, Def. Ex. 238.

d. According to the spreadsheet that documented the costs claimed by DeAtley in its certified claim, DeAtley included costs for Budginger performing the durability tests. The inclusion of the $4,997.34 for such testing was fraudulent or, at a minimum, demonstrates DeAtley's reckless disregard for the truthfulness of its the claim. Claim, Def. Ex. 238.

C. DeAtley Knew Its Claim Was False Or Acted In Reckless Disregard Of Its Truth

The Government relies upon the facts 9-11 to support this legal contention. In addition, the Government will rely upon the following facts:

12. On March 23, 2005, a settlement meeting was held in Spokane, Washington. Plaintiff's Response to Government's Proposed Findings of Uncontroverted Facts (Docket entry (Doc.")). 91), ¶ 43.

a. In attendance were representatives from DeAtley and DeAtley Crushing and their attorneys. Plaintiff's Response to Government's Proposed Findings of Uncontroverted Facts (Doc. 91), ¶ 43.

b. During that meeting, DeAtley was informed that we considered that its claim contained false statements with respect to certain items because those costs were not incurred as the result of the alleged differing site condition. Witness: Timothy J. Binder.

c. DeAtley has not revised the amount of its claim. Claim, Exhibit 238.

D. DeAtley Intended to Defraud the Government

The Government relies upon the facts 9-12 to support this legal contention.

DEFENDANT'S PROPOSED CONCLUSIONS OF LAW

1. The United States is entitled to judgement under the Anti-Fraud Section of the CDA.

2. The anti-fraud section of the Contract Disputes Act, 41 U.S.C. § 604, provides, in pertinent part:

> If a contractor is unable to support any part of his claim and it is determined that such inability is attributable to misrepresentation of fact or fraud on the part of the contractor, he shall be liable to the Government for an amount equal to such

> unsupported part of the claim in addition to all costs to the Government attributable to the cost of reviewing said part of his claim.

3. Pursuant to the anti-fraud section, the Government is entitled to recover the total amount of fraudulent claims submitted regardless of whether payment was made, in addition to the costs incurred in investigating the false claims.

4. Although the CDA does not prescribe a standard of proof, the preponderance of the evidence standard has been applied by this Court. See UMC Electronics v. United States, 43 Fed. Cl. 776, 795 (1999), aff'd, 249 F.3d 1337 (Fed. Cir. 2001)(citing Grogan v. Garner, 498 U.S. 279, 287-91 (1991) (establishing the preponderance standard in bankruptcy fraud cases)); Al Munford v. United States, 34 Fed. Cl. 62, 67 (1995), separate order of dismissal vacated on other grounds, 86 F.3d 1178 (Fed. Cir. 1996).

5. The CDA anti-fraud section remedy was enacted to complement the False Claims Act recovery to provide for affirmative recovery of amounts claimed in addition to the False Claims Act civil penalty in situations where no Government payment was made. See S. Rep. No. 1118, 95th Cong., 2d Sess. 20 (1978), reprinted in, 1978 U.S.C.C.A.N. 5235, 5254.

6. The Government has proved by preponderant evidence that pursuant to the CDA it is entitled to recover $32,660.39, that is, the unsupported part of DeAtley's claim, plus the Government's cost of reviewing the claim.

7. The United States is entitled to judgement under the Special Plea in Fraud.

8. Section 2514 of title 28, United States Code, provides:

> A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud

> against the United States in the proof, statement, establishment, or allowance thereof.
>
> In such cases the United States Court of Federal Claims shall specifically find such fraud or attempt and render judgment of forfeiture.

9. To prevail pursuant to this statute, the Government must prove by clear and convincing evidence that the "claimant (1) knew the claim was false and (2) intended to deceive the government by submitting it." Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1042 (Fed. Cir. 1994) (citing McCarthy v. United States, 670 F.2d 996, 1004 (Ct. Cl. 1982)).

10. Fraud pursuant to 28 U.S.C. § 2514 consists of "knowingly or recklessly making false statements with intent to deceive." Daff v. United States, 31 Fed. Cl. 682, 688 (1994), aff'd, 78 F.3d 1566 (1996) (citing Ingalls Shipbuilding, Inc. v. United States, 21 Cl. Ct. 117, 122 (1990)).

11. Although the clear and convincing standard is the rule of the Federal Circuit, the Supreme Court's rulings in Grogan v. Garner, 498 U.S. at 286, and Huddleston v. Herman & MacLean, 459 U.S. 375, 387-90 (1983), suggest that the proper standard is preponderance of the evidence. In these cases, the Court "decline[d] to depart from the preponderance-of-the-evidence standard generally applicable in civil actions," 459 U.S. at 390, in the context of the fraud provisions in the federal bankruptcy (Grogan) and securities (Huddleston) laws. "[I]mposition of even severe civil sanctions that do not implicate such interests [individual rights and liberties] has been permitted after proof by a preponderance of the evidence." 459 U.S. at 389.

12. Mistaken false statements do not warrant relief pursuant to the statute. However, a claimant's persistence in pursuing a claim it knows to be false removes any question of mistake and exposes the claimant's intent to deceive the Government. See Al Munford, Inc., 34 Fed. Cl.

at 62 (rejecting summary judgment because "plaintiff's subsequent admissions that it made a mistake and that the amounts contained in its claim were no longer valid provided some minimal evidence . . . that plaintiff did not actually intend to deceive the government").

13. The Federal Circuit in Long Island Savings Bank, FSB v. United States, 476 F.3d 917 (Fed. Cir. 2007), held that, under the special plea in frauds statute, 28 U.S.C. 2514, the Government needs to prove only that the contractor submitted claims that were false, and that the contractor intended to defraud the Government by submitting those claims, in order to prevail.

14. The fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing an adverse inference that there was a fraudulent intent; thus circumstantial evidence may permit an inference of intent. Id.

15. Even though the costs in question do not amount to the total of DeAtley's certified claim, 28 U.S.C. § 2514 requires that the entire claim be forfeited.

16. As the Court of Federal Claims held in Supermex, Inc. v. United States, 35 Fed. Cl. 29, 40 (1996), there is no suggestion in the statute that a contract can be divided up into performance sectors to allow payment of some claims on a corrupted contract while other claims on the same contract are forfeited.

17. The rule is set forth fully in Brown Construction Trades, Inc. v. United States, 23 Cl. Ct. 214, 216 (1991):

> The Court of Claims has ruled that where fraud is committed in the course of a contract to which the suit pertains, it may not isolate the affected part and allow suit to proceed on the remainder. The practice of a fraud on part of a contract condemns the whole. The rule is set out in Little v. United States, 138 Ct. Cl. 773, 778, 152 F. Supp. 84, 87-88

> (1957): It is true that the forfeiture statute [28 U.S.C. § 2514] was not intended to forfeit an otherwise valid claim of a claimant merely because, in some other unrelated transaction, he had defrauded the Government. But where, as in the present case, fraud was committed in regard to the very contract upon which the suit is brought, this court does not have the right to divide the contract and allow recovery on part of it. Since plaintiff's claims are based entirely upon contract V3020V-241, a contract under which he practiced fraud against the Government, all of his claims under that contract will be forfeited pursuant to 28 U.S.C. § 2514. Thus, 28 U.S.C. § 2514 requires the forfeiture of all claims arising under a contract tainted by fraud against the Government. See also New York Mkt. Gardeners' Ass'n v. United States, 43 Ct. Cl. 114, 136 (1908).

Id., quoted in Supermex, 35 Fed. Cl. at 40. See also, Ab-Tech Construction, Inc. v. United States, 31 Fed. Cl. 429, 435-36 (1994), aff'd, 57 F.3d 1084 (Fed. Cir. 1995).

18. The Government has proved by preponderant evidence that pursuant to the Special Plea In Fraud statute it is entitled to the forfeiture of $32,660.39, that is, the unsupported amount of DeAtley’s claim.

19. The United States is entitled to judgement under the False Claims Act.

20. The False Claims Act, as amended in 1999, provides civil penalties for each false claim submitted to the government, regardless of whether payment was made. The penalty amounts were increased from $5,000 to $10,000 to $5,500 to $11,000 pursuant to the Federal Civil Penalties Inflation Act of 1996, Pub. L. No. 104-410, as amended by the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134. See also, 28 CFR § 85.3(a)(9).

21. The False Claims Act, 31 U.S.C. § 3729(a), requires that the Government prove that

DeAtley knowingly presented a false or fraudulent claim for approval. See 31 U.S.C. § 3729 et seq., as amended by Debt Collection and Improvement Act of 1996, Pub. L. No. 104-134, Title 3, Ch. 10, Section 31001(s), April 26, 1996, 110 Stat. 1321-358 (effective September 29, 1999 for violations occurring after that date).

22. Pursuant to the False Claims Act, the filing of a false claim must have been "knowing." For purposes of the Act, "knowing" or "knowingly" means that a person (1) has actual knowledge of the information, (2) acts in deliberate ignorance of the truth or falsity of the information, or (3) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b).

23. The False Claims Act expressly provides that the Government need not prove specific intent to defraud. Pursuant to the False Claims Act, proof by a preponderance of the evidence is sufficient for the government to prevail. 31 U.S.C. §§ 3729, 3731.

24. The Government has proved by preponderant evidence that pursuant to the False Claims Act it is entitled to $11,000.

25. Recovery based upon all three statutes is cumulative.

26. The legislative history of the CDA makes clear that the Government's remedies pursuant to the Special Plea in Fraud, the False Claims Act, and the anti-fraud provision of the CDA are cumulative and not in the alternative. Specifically, the Senate report explaining the anti-fraud provision states:

> This provision is intended to be separate and distinct from the rights now possessed by the Government in legislation such as the False Claims Act . . . or the Forfeiture Statute . . . . That is, section 4(b) [the anti-fraud provision, codified at 41 U.S.C. § 604] is not intended in any way to diminish the rights now afforded to the Government under current legislation.

> . . . Section 4(b) will afford the Government a separate and additional remedy of recovering an amount equal to the fraudulent or misrepresented amount.

S. Rep. No. 95-1118, 95th Cong., 2d Sess. 20 (1978), reprinted in 1978 U.S.C.C.A.N. 5235, 5254 (emphasis added).

27. The Government is entitled to relief under all three statutes.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

OF COUNSEL

TIMOTHY BINDER
Division Counsel
U.S. Dept. of Transportation
Federal Highway Administration
610 East Fifth Street
Vancouver, WA 98661-3801

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
Attn: Classification Unit, Room 8012
1100 L Street, NW
Washington, D.C. 20530
(202) 307-0252
(202) 307-0972 (Fax)

June 29, 2007

Attorneys for Defendant